1  Jeffrey L. Kandel (CA Bar No. 115832)
   PACHULSKI STANG ZIEHL & JONES LLP
2  10100 Santa Monica Blvd., Suite 1300
   Los Angeles, CA  90067-4003
3  Telephone: 310/277-6910
   Facsimile: 310/201-0760
4  E-mail:    jkandel@pszjlaw.com

5  Attorneys for Richard M Kipperman,
   Liquidating Trustee

6

7

8                UNITED STATES BANKRUPTCY COURT

9             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

| 11 | In re | Case No. 13-01179-MM11 |
| 12 | | Chapter 11 |
| 13 | SAN DIEGO HOSPICE & PALLIATIVE CARE CORPORATION, | **LIQUIDATING TRUSTEE'S MOTION** |
| 14 | | **FOR ORDER ESTIMATING CLASS** |
| 15 | Debtor. | **CLAIM OF LEILANI ROSS FOR PURPOSES OF ALLOWANCE AND DISTRIBUTION; MEMORANDUM OF** |
| 16 | | **POINTS AND AUTHORITIES AND DECLARATIONS OF RICHARD M** |
| 17 | | **KIPPERMAN AND JEFFREY L. KANDEL IN SUPPORT THEREOF** |

18                                   **Hearing:**
                                     Date:    November 22, 2016
19                                   Time:    3:00 p.m. PST
                                     Place:   325 West F Street
20                                            Courtroom 1, Room 218
                                              San Diego, CA  92101-6989
21                                   Judge:   Hon. Margaret M. Mann

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:295766.7 76892/003

# TABLE OF CONTENTS

**Pages**

I. INTRODUCTION ........................................................................................................... 3

II. STATEMENT OF FACTS ............................................................................................ 5

    A.    Jurisdiction and Venue .................................................................................. 5

    B.    General Case Background and Status ............................................................ 5

    C.    The Extended Employee Claims Bar Date ................................................... 6

    D.    The Ross Emergency Motion, Draft Complaint and Ross Stipulation ......................... 7

    E.    The Class Action Complaint .......................................................................... 9

    F.    The Ross Proofs of Claim ............................................................................. 10

    G.    The Summary Judgement Order .................................................................... 10

III. RELIEF REQUESTED .............................................................................................. 11

IV. ARGUMENT ............................................................................................................. 11

    A.    Claim 237 is Contingent and Unliquidated ................................................. 11

    B.    The Failure to Estimate Highly Speculative Claim 237 Would Unduly Delay Administration of the Estate ........................................................................ 12

    C.    The Court Should Estimate Claim 237 Utilizing the Procedure to Resolve Contested Matters ....................................................................................... 13

    D.    The Court Should Estimate Claim 237 at Zero ($0) ................................... 14

V. CONCLUSION ............................................................................................................ 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Brockenbrough v. Commissioner*
61 B.R. 685 (W.D. Va. 1986) ....................................................................... 12

*Gentry v. Siegel*
668 F.3d 83 (4th Cir. 2012) ......................................................................... 19

*In re All Media Properties, Inc.*
5 B.R. 126 (Bankr. S.D. Tex. 1980), *aff'd per curiam*,
646 F.2d 193 (5th Cir. 1981) ........................................................................ 12

*In re Birting Fisheries, Inc.*
92 F.3d 939, 939 (9th Cir. 1996) .................................................................. 16

*In re Craft*
321 B.R. 189 (Bankr. N.D. Tex. 2005) ......................................................... 17

*In re Dynegy, Inc.*
770 F.3d 1064 (2d Cir. 2014) ....................................................................... 16

*In re Ephedra Products Liab. Litig.*
329 B.R. 1 (S.D.N.Y. 2005) ..................................................................... 16, 17

*In re Fostvedt*
823 F.2d 305 (9th Cir. 1987) ................................................................... 11, 12

*In re Hydrox Chemical Co.*
194 B.R. 617 (Bankr. N.D.Ill. 1996) ............................................................ 13

*In re Musicland Holding Corp.*
362 B.R. 644 (Bankr. S.D.N.Y. 2007) .......................................................... 17

*In re Ralph Lauren Womenswear, Inc.*
197 B.R. 771 (Bankr. S.D.N.Y. 1996) .......................................................... 13

*In re Thomson McKinnon Securities, Inc.*
191 B.R. 976 (Bankr. S.D.N.Y. 1996) .......................................................... 13

*In re Woodward & Lothrop Holdings, Inc.*
205 B.R. 365 (Bankr. S.D.N.Y. 1997) ..................................................... 17, 18

*Matter of American Reserve Corp.*
840 F.2d 487 (7th Cir. 1988) ....................................................................... 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Ryan v. Louis (In re Corey)*
    892 F.2d 829 (9th Cir. 1989) .................................................................................. 12

*Sylvester v. Dow Jones & Company, Inc. (In re Sylvester)*
    19 B.R. 671 (D.N.J. 1975) ........................................................................................ 12

*Westfall v. MII Liquidation Inc.*
    2007 WL 2700951, at *4 (S.D. Cal. Sept. 11, 2007) ............................................. 16

**Statutes**

11 U.S.C. § 502(c)(1) ................................................................................... 1, 5, 11

28 U.S.C. § 157 ................................................................................................... 5

28 U.S.C. § 157(b)(2) ......................................................................................... 5

28 U.S.C. § 1334 ................................................................................................ 5

28 U.S.C. § 1408 ................................................................................................ 5

28 U.S.C. § 1409 ................................................................................................ 5

California Labor Code
    §§ 1400, *et seq.* ........................................................................................... 3

Worker Adjustment and Retraining Notification Act
    29 U.S.C. §§ 2101, *et seq.* .......................................................................... 3

**Other Authorities**

1 McLaughlin on Class Actions § 2:10 (12th ed. 2015) ..................................... 16

Litigating Mass Tort Cases § 12:18.50; (updated June 2015), David J. Molton
    and Paul D. Rheingold, Mass Tort Issues in Bankruptcy Proceedings.......................... 16

**Rules**

Fed. R. Bankr. P. 7023 ................................................................... 4, 11, 13, 16, 17

Fed. R. Bankr. P. 9014 ................................................................... 4, 11, 13, 16, 17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE MARGARET MANN:**

Richard M Kipperman, the Liquidating Trustee (the "Liquidating Trustee") of the Liquidating Trust (the "Liquidating Trust") of San Diego Hospice & Palliative Care Corporation, the former debtor in possession (the "Debtor" or the "Hospice") in the above-captioned chapter 11 case (the "Case"), hereby moves the Court through this motion (the "Motion") for entry of an Order pursuant to section 502(c)(1) of title 11 of the United States Code (the "Bankruptcy Code") estimating Claim No. 237-3 ("Claim 237" ) filed in the Case by Leilani Ross ("Ross") "on behalf of herself and all similarly situated," in the amount of zero ($0) for purposes of allowance and distribution in connection with the *First Amended Liquidating Plan for San Diego Hospice and Palliative Corporation (June 24, 2013), as Modified on August 27, 2013 and September 18, 2013 Jointly Proposed by the Debtor and the Official Committee of Unsecured Creditors* (the "Plan") [Docket No. 609], on the basis that:

1.      Claim 237 is contingent and the administration of the Case will be unduly delayed without its estimation;

2.      Any claim awarded to Ross, individually, in pending state court litigation will almost certainly be covered by insurance;

3.      Ross in any event is unlikely to be granted an award in the state court litigation, as the Liquidating Trustee's motion for summary judgment against Ross has been granted;[1] and

4.      This Court should not permit Claim 237 to be prosecuted as a class action claim.

The Motion is based on this Motion, the concurrently-filed Notice of Hearing and Motion and the attached Memorandum of Points and Authorities and Declarations of Richard M Kipperman and Jeffrey L. Kandel (the "Kipperman Declaration" and the "Kandel Declaration", respectively), the arguments of counsel at the hearing on the Motion, and any other admissible evidence properly brought before the Court.  In addition, the Liquidating Trustee requests that the Court take judicial notice of all documents filed with the Court in the Case.

---

[1] More precisely, the motion was granted in part and denied in part.  However, as detailed in section II.G below, the portion of the motion which was not granted has no impact on the Liquidating Trust or the lack of validity of Ross' claims in this Case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**WHEREFORE**, the Liquidating Trustee respectfully requests that the Court (i) grant the Motion, (ii) estimate Claim 237 for all purposes, including distribution, in the amount of zero dollars ($0), and (iii) grant such other and further relief as is fair and equitable.

Dated:    October 21, 2016            PACHULSKI STANG ZIEHL & JONES LLP


                                      By    /s/ Jeffrey L. Kandel
                                            Jeffrey L. Kandel (CA Bar No. 118532)

                                            Attorneys for Richard M Kipperman,
                                            Liquidating Trustee of San Diego Hospice &
                                            Palliative Care Corporation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Plan providing for the liquidation of the Debtor's estate was confirmed September 23, 2013 [Docket. No. 615].  For the past three years, the Liquidating Trustee has worked to resolve serial class action claims by a number of the Debtor's former employees ("WARN Claimants") under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, *et seq.*, and its California counterpart, California Labor Code §§ 1400, *et seq.* (collectively, the "WARN Act"), reduced general unsecured claims by more than half, and pursued and collected significant additional assets for distribution to creditors.  The Liquidating Trustee is prepared to now make a distribution to unsecured creditors.  However, Claim 237 in an unspecified amount was filed by Ross "on behalf of herself and all similarly situated" only hours prior to the end of the so-called "Employees Bar Date" on September 4, 2014.  Claim 237, a copy of which is attached hereto as **Exhibit "1"**, demands that the Liquidating Trustee make "[n]o distributions to any general unsecured creditors until such time as Ross's claim is determined . . .".  Accordingly, the Liquidating Trustee is not prepared to make any such distributions without this Court estimating the amount of Claim 237 for purposes of distribution, presenting the classic case where administration of the case will be delayed unless the Claim 237 is estimated.  This Motion asks the Court to estimate Claim 237 at zero ($0).

Claim 237 further provides that "[a]fter the outcome of [Ross' state court] litigation is determined, Ross will return to this Court pursuant to" a stipulation for relief from the automatic stay and Plan injunction between Ross and the Liquidating Trustee filed May 2, 2014 [Docket No. 857] (the "Ross Stipulation").  A true and correct copy of the Ross Stipulation is attached to Claim 237 (Exhibit "1" hereto).  The Ross Stipulation allows Ross to assert a claim on behalf of Ross, individually, and only if and to the extent insurance proceeds are insufficient to pay any judgement obtained by Ross (the "Individual Ross Claim").  However, any such Individual Ross Claim is limited to a maximum of $2,950,000, which is below the $3 million coverage limit of the policy insuring against claims such as those asserted by Ross and only slightly in excess of the policy's

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    current balance of approximately $2,850,000.[2]  In addition, Ross' claim originally was filed in the

2    amount of $1,300,000, <u>far</u> below the policy limit.  *See* Ross Claim No. 237-2, filed September 12,

3    2013.

4         Further, the Liquidating Trustee's motion for summary judgment against Ross in pending

5    state court litigation has been granted in substance (the "<u>Summary Judgment Order</u>").  Among other

6    things, the state court found that Ross admitted "that she repeatedly violated the [Hospice's]

7    attendance policy", which "prevents her from establishing she performed her job satisfactorily and a

8    *prima facie* case of discrimination."  Thus, while Ross has filed a notice of appeal of the Summary

9    Judgment Order, the only court examining the substance of the Individual Ross Claim has held that

10   Ross cannot sustain a claim based on her own factual admissions.

11        Accordingly, the Court should estimate the Individual Ross Claim at $0.

12        The purported "class" aspect of Claim 237 (the "<u>Class Claim</u>") should also be estimated at

13   $0.  The Ross Stipulation expressly provides for the waiver of <u>all</u> claims by Ross other than the

14   Individual Ross Claim as carefully prescribed in the stipulation; the Class Claim was <u>not</u> among

15   those preserved by Ross.  Further, the Court should find that, even had Ross not waived all claims

16   other than those specifically preserved in the Ross Stipulation, this Court would <u>not</u> have granted

17   relief from the Plan injunction to pursue a putative class action suit on behalf of those allegedly

18   "similarly situated" to Ross, and would <u>not</u> have certified a class under either Rules 9014 or 7023 of

19   the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

20        Indeed, these are singularly inapt circumstances in which to grant such relief.  Among other

21   reasons detailed below, (1) no other former employee filed a claim making similar allegations

22   despite nineteen months in which they could do so, (2) the Class Claim allegations were added to an

23   already extant claim by Ross a mere four hours prior to the final deadline for employee claims

24   (which had been extended for well over a year past the bar date for other creditors in connection with

25   the certification of a class of WARN Claimants as part of a settlement of the WARN Act claims),

26

---

27   [2] Ironically, the insurance policy could only be insufficient to cover any judgement Ross might obtain in the state court <u>if</u>
28   the Court permits Claim 237 to go forward as a class action so that others would then make claims against the same policy.  Such an outcome would not only be contrary to the terms of the Ross Stipulation, but would also manifestly be against Ross' own best interest.

1  (3) the Class Claim appears to manifestly be against Ross' own interests, supporting an inference

2  that it is likely a mere "lawyer's vehicle", and (4) granting such relief and certifying a class would

3  further delay distributions to creditors and completion of the Case.

## II.

## STATEMENT OF FACTS

### A.    Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Section VIII.J of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue of the Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is section 502(c)(1) Bankruptcy Code.

### B.    General Case Background and Status

On February 4, 2013 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California (the "Court").   On February 14, 2013, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

On September 23, 2013, the Court entered its *Order Confirming First Amended Liquidating Plan for San Diego Hospice & Palliative Care Corporation (June 24, 2013), as Modified on August 27, 2013 and September 18, 2013, Jointly Proposed by the Debtor and the Official Committee of Unsecured Creditors* [Docket No. 615] (the "Confirmation Order"), confirming the Plan.  The Plan provides for the creation of the Liquidation Trust as successor in interest to the chapter 11 estate (the "Estate"), and the appointment of the Liquidating Trustee as its representative.

The Effective Date of the Plan was October 8, 2013 (the "Effective Date").  Pursuant to the Plan, on and after the Effective Date, the Liquidating Trust succeeded to the assets of the Estate and, *inter alia*, was charged with assessing, objecting to and compromising claims asserted in the Case, and continuing, instigating or responding to litigation and collecting assets.

Richard M Kipperman was selected to serve as the Liquidating Trustee of the Liquidating Trust.  Since the Effective Date, the Liquidating Trustee has, *inter alia*, (1) resolved two adversary proceedings brought under the WARN Act and related statutes (commonly referred to in the Case,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   and hereafter in this Motion, as "WARN I" and "WARN II"), (2) objected to numerous claims,

2   thereby reducing general unsecured claims (other than that of the U.S. government) by more than

3   half, and (3) liquidated and collected additional assets for ultimate distribution to general unsecured

4   creditors (including the U.S. government).[3]

5        Because the WARN Act litigation included allegations of substantial administrative claims,

6   the Liquidating Trustee was unable to make distributions to unsecured creditors until it was resolved.

7   Now, only one other obstacle remains preventing the distribution of funds to unsecured creditors:

8   Claim 237, which includes the Individual Ross Claim and the purported Class Claim (in an

9   unspecified and unknown amount), both governed by terms of the Ross Stipulation.

10   **C.**    **The Extended Employee Claims Bar Date**

11        On March 1, 2013, this Court entered an order [Docket No. 119] initially setting April 26,

12   2013 (later extended to June 27, 2013 only as to newly scheduled creditors and former patients of the

13   Debtor), as the deadline by which creditors were to file prepetition claims, other than claims filed by

14   governmental units, rejection damage claims, claims related to the WARN Act and claims arising

15   from the avoidance of transfers (the "Claims Bar Date").

16        By *ex parte* motion, counsel to the WARN Claimants in WARN I (later counsel to the

17   WARN Claimants in WARN II and current counsel to Ms. Ross), sought extension of the Claims

18   Bar Date for the Debtor's former employees, "until a reasonable time after the [WARN I]

19   Certification Motion is adjudicated. *See Ex Parte Motion of Employees for Order Extending Bar*

20   *Date for Filing Proofs of Claim; Declaration of Elaine V. Nguyen* filed April 5, 2013 [Docket

21   No. 257] (the "Employee Bar Date Motion") at p. 4, ll. 17-18.  While the Employee Bar Date

22   Motion sought an extension of the deadline to file claims for all employees for any reason,[4] the

23   request for extension was inextricably tied to the uncertainty inherent in the WARN I class

24   certification process.  As the Employee Bar Date Motion argued, an extension would "insure that

25

---

26   [3] Distributions to the U.S. government, on the one hand, and all other general unsecured creditors, on the other hand, are

27   controlled by the Court's order approving a settlement between the Liquidating Trust and the U.S. government entered August 1, 2014 [Docket No. 953].

28   [4] The Employee Bar Date Motion secondarily advanced other reasons (*e.g.,* the original Claims Bar Date had been set shortly after the Petition Date).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   any Employee expecting their rights to be advanced through the Class won't be left without the

2   ability to assert a claim in the unlikely event the Certification Motion is denied . . . [T]he request for

3   extension is predicated on the resolution of certification." *Id.* at ll. 20-22.

4        With certain conditions, neither the Debtor nor the Committee opposed the Employee Bar

5   Date Motion.  As negotiations regarding WARN I dragged on for many months, the bar date for

6   employees was further extended numerous times by agreement of the parties.  When WARN I was

7   finally settled, the order approving the settlement [Docket No. 954] set a deadline for former

8   employees of the Debtor who were not covered by the settlement to file claims of September 4,

9   2014--nineteen months following the Petition Date and fourteen months after the original Claims

10  Bar Date (the "Employee Claims Deadline").

11       Only two claims were filed in the thirty days between entry of the order approving the

12  WARN I settlement and the extended Employee Claims Deadline, both during the final few hours of

13  September 4, 2014:  the so-called WARN II class claim and, at 7:59 p.m. PDT, Claim 237.  Kandel

14  Declaration, at ¶5.

15  **D.      The Ross Emergency Motion, Draft Complaint and Ross Stipulation**

16       The Plan contains an injunction prohibiting all persons who have been, are, or may be

17  holders of claims against the Debtor from, *inter alia*: "commencing, conducting or continuing in any

18  manner, directly or indirectly any suit, action, or other proceeding of any kind against the

19  Debtor . . .." Plan at VIII.B (the "Plan Injunction").

20       On October 8, 2013, Ross filed her *Emergency Motion to (1) Modify the Automatic Stay* [sic]

21  *to Liquidate Claim in State Court or District Court and (2) for Relief From Plan Injunction to*

22  *Liquidate Claim in State Court or District Court*  [Docket No. 648] (the "Emergency Motion").  A

23  copy of the Emergency Motion is attached hereto as **Exhibit "2"**.  The Emergency Motion sought

24  relief from the automatic stay [sic] and Plan Injunction "so that [Ross] may proceed to adjudicate *her*

25  *claim*" (Emergency Motion, p. 3, l. 23) and "so that [Ross] can proceed in state court on *her pending*

26  *wrongful termination case*" (*id.*, p. 8) (emphases added).   Attached as an exhibit to the Emergency

27  Motion was Ross' draft complaint (the "Draft Complaint"), which asserted two causes of action and

28  which was not styled as a class action complaint.  The Emergency Motion further noted that the

1  Draft Complaint was subject only "to further edits, and the right to assert California causes of

2  action...." *Id.*, p. 3, ll. 18-19.

3      The Emergency Motion muddled the issue of whether Ross was looking only to insurance or

4  whether Ross wanted the right to assert a claim against the Liquidating Trust in excess of insurance.

5  Specifically, the Emergency Motion stated that Ross "will agree to limit her recovery to the limits of

6  the Debtor's insurance policy" and that her "primary source of recovery . . . will likely be the

7  Insurance Policy." Emergency Motion at p. 3, ll. 25-26, and p. 4, l. 18. While this appeared to leave

8  the door open for Ross to assert a claim against the Estate, to be paid from assets of the Liquidating

9  Trust, the Emergency Motion's "Legal Analysis" argued that the Court should grant the motion

10 because the Plan Injunction "is not intended to and does not protect third parties such as liability

11 insurers", *id.* at p. 4, l. 13, and that Ross' $1.3 million proof of claim "is well within the $3.0 million

12 limit of the Debtor's policy." Ross further suggested that she may nonetheless assert a claim against

13 the Liquidating Trust "[i]f the claim is determined not to be covered under the policy for Debtor's

14 employment practices . . . ." *Id.* at p. 6, ll. 14-15. Separately, Ross urged relief from the Plan

15 Injunction because her "claim is within the policy limits of Movant's asserted claim, and the Movant

16 has agreed to be bound by the limits of the policy. *This will not prejudice the claims or interests of*

17 *the other creditors in the case.*" *Id.* at p. 7, ll. 101-02 (emphasis added).

18      The Liquidating Trustee opposed the Emergency Motion [Docket Nos. 654 and 679], and the

19 hearing on the Emergency Motion was continued pursuant to stipulation [Docket Nos. 656 and 664]

20 in order to enable the Liquidating Trustee to review policies of insurance which may apply to the

21 claims raised by Ross, and to engage in negotiations with both the insurer and Ross to determine

22 whether the parties could reach a consensual resolution of the issues raised in the Emergency

23 Motion.

24      After determining that in fact insurance did cover Ross' claim and that no other party had

25 asserted any claim against the $3 million insurance policy for the year in question (*see* Kipperman

26 Declaration, ¶ 4), the Liquidating Trustee entered into the Ross Stipulation, whereby Ross was

27 relieved from the Plan Injunction "to commence litigation . . . as described in the Motion." Ross

28 Stipulation, at ¶1.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Ross Stipulation carefully limited the claim that Ross could assert against the Liquidating Trust, if any: "Any claim by Ross against the above-captioned chapter 11 estate and the Liquidating Trust shall be limited to the amount of any judgement obtained in the Litigation (up to a maximum of $2,950,000), less any amounts actually paid by the Insurer to Ross." *Id.,* at ¶3.[5] On May 8, 2014, the Court entered an order approving the Ross Stipulation [Docket No. 860].

Beyond the carefully circumscribed relief in the Ross Stipulation, Ross expressly waived any and all other claims she might have against the chapter 11 estate and the Liquidating Trust and its assets. *Id.*

E.    **The Class Action Complaint**

On May 16, 2014, Ross filed a seven-count class action complaint (the "Class Action Complaint") in the Superior Court of the State of California for the County of San Diego, Case No. 37-2014-00016055-CU-WT-CTL (the "State Court Litigation"), seeking relief on behalf of Ross and "all others similarly situated". Class Action Complaint, ¶22.

The Class Action Complaint, a copy of which is attached to Claim 237 (Exhibit "1" hereto), included claims that went radically beyond the scope of the claims in the Draft Complaint, the relief sought in the Emergency Motion, and the relief agreed to by the Liquidating Trustee in the Ross Stipulation, the latter of which had been carefully crafted to eliminate any liability of the Estate and the Liquidating Trust beyond that covered by insurance. Most notably, the Class Action Complaint included eleven paragraphs alleging "Class Allegations" which appear nowhere in the Draft Complaint attached to the Emergency Motion. *Id.,* ¶¶20-30.

On May 22, 2014, counsel for the Liquidating Trustee contacted counsel for Ross demanding dismissal of the Class Action Complaint or the filing of an amended complaint that complied with the limited relief granted in the Ross Stipulation and the order approving it. Kandel Declaration, attached hereto, ¶6. That demand was renewed on May 27, 2014. When Ross' counsel refused, the Liquidating Trustee threatened to seek sanctions against Ross for her willful violation of the Plan

---

[5] The insurance policy in question included a self-insured retention of $50,000; *i.e.*, the Liquidating Trustee would be liable for the first $50,000 of attorneys' fees and/or liability before the insurer's obligation kicked-in. The Liquidating Trustee was so insistent on limiting potential cost to unsecured creditors that the Ross Stipulation requires Ross to reimburse the Liquidating Trust for half of the $50,000 self-insured retention. Ross Stipulation, at ¶2; Kipperman Declaration, at ¶5.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Injunction by filing the Class Action Complaint asserting claims drastically beyond the relief granted

2    to Ross by the Ross Stipulation.  Ross finally conceded, agreeing to remove the class allegations

3    from the State Court Litigation and to move forward with a class action <u>only</u> upon approval of this

4    Court. *Id.*

5    **F.    The Ross Proofs of Claim**

6            On August 30, 2013, Ross, in *pro per*, filed Claim 237-1 in the Case in the amount of

7    $1.3 million, alleging "civil rights violations during employment."  An identical claim, designated

8    Claim 237-2, was filed on September 12, 2013, apparently in response to a notice of deficiency

9    issued by the Clerk's office.  No class allegations appear in Ross' Claims 237-1 or 237-2.

10           Almost a year later, at 7:59 p.m. on September 4, 2014, four hours and one minute prior to

11   the expiration of the long-extended Employees Bar Date, Ross' counsel filed Claim 237 as an

12   amended proof of claim.  Despite Ross' waiver of any claim against the Estate or the Liquidating

13   Trust by the Ross Stipulation other than that "limited to the amount of any judgment obtained in the

14   Litigation (up to a maximum of $2,950,000), less any amounts actually paid by the Insurer to Ross,"

15   Claim 237 now at issue in this Motion purports to assert not only the Individual Ross Claim on

16   behalf of Ross, but also the Class Claim on behalf of those "similarly situated".[6]

17   **G.    The Summary Judgement Order**

18           On January 29, 2016, counsel for the Liquidating Trustee filed a motion for summary

19   judgment or partial summary judgment in the State Court Litigation, which Ross opposed.   On

20   June 1, 2016, the state court entered its *Order Granting in Part and Denying in Part Defendants'*

21   *Motion for Summary Judgment* [Doc. No. 64 in the State Court Litigation], a copy of which is

22   attached hereto as **Exhibit "3"**.

23           The Summary Judgment Order denied the Liquidating Trustee's motion to the extent it

24   sought to dismiss allegations that the San Diego Foundation should be held liable as a "joint

---

[6] The filing of amended Claim 237 by Ross' counsel to add the Class Claim allegations (and their earlier attempt to bypass the terms of the Ross Stipulation by filing a Class Action Complaint) would in fact appear to be completely contrary to Ross' own interest.  As an individual claimant/litigant, Ross will be able to collect any judgement she obtains from the Debtor's insurer defending the individual action to a maximum of $2,950,000.  However, if the Court permits this to proceed as a class action, Ross' ability to collect insurance could be severely diluted. This apparent anomaly is relevant in determining under Bankruptcy Rule 9014 whether to permit a class claim to go forward as a class action.  *See* section IV. D.2, *infra*.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

employer" with the Hospice if and to the extent Ross was awarded a judgment against the Hospice. Summary Judgment Order, at pp. 7-9.  However, this ruling did not impact the Liquidating Trust, which never denied that the Hospice employed Ross.  Moreover, this denial became moot when the state court granted summary judgment as to the entire substance of the State Court Litigation, ruling that Ross could not maintain claims for race discrimination, retaliation or harassment.  *Id.*, at pp. 9-17.  Among the detailed holdings was that Ross admitted "that she repeatedly violated the [Hospice's] attendance policy", which "prevents her from establishing she performed her job satisfactorily . . .."  *Id.*, at p. 11.

### III.

### **RELIEF REQUESTED**

The Liquidating Trustee requests estimation of Claim 237 for distribution purposes in the amount of zero ($0).  With respect to the Individual Ross Claim, insurance coverage is available for almost the entirety of the Claim, and the only court to examine the substance of the claim has granted summary judgment with respect to it.  With respect to the Class Claim allegations in Claim 237, they contravene the Ross Stipulation and Ross' express waiver of any claims other than the individual, circumscribed, potential Individual Ross Claim.  Further, virtually all of the factors considered by courts in determining whether to permit class claims to go forward under Bankruptcy Rule 9014 militate against even considering the question under Bankruptcy Rule 7023 of whether a class should be certified.  In fact, the Class Claim allegations appear to be attorney-driven and to Ross' detriment, and will cause further significant delay in the administration of this Case if permitted to ripen into a class action.

### IV.

### **ARGUMENT**

A.    **Claim 237 is Contingent and Unliquidated**

The Bankruptcy Code authorizes the estimation of contingent and unliquidated claims for all purposes, which includes allowance and distribution.  Section 502(c)(1) of the Bankruptcy Code provides: "There *shall* be estimated for purpose of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

administration of the case." (emphasis added.)  A claim is contingent when "the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) citing *Brockenbrough v. Commissioner*, 61 B.R. 685, 686 (W.D. Va. 1986), quoting *In re All Media Properties, Inc.*, 5 B.R. 126, 132-3 (Bankr. S.D. Tex. 1980), *aff'd per curiam*, 646 F.2d 193 (5th Cir. 1981).  A claim is unliquidated if it is not subject to "ready determination and precision in computation of the amount due." *Fostvdt*, 823 F.2d at 306 (quoting *Sylvester v. Dow Jones & Company, Inc. (In re Sylvester)*, 19 B.R. 671, 673 (D.N.J. 1975)).

In the present case, Claim 237 is contingent upon:  (1) Ross obtaining a judgement in the State Court Litigation in her favor, and (2) the Debtor's insurance coverage being insufficient to pay any such judgment.  Claim 237 is also unliquidated by its own terms; in the language of the proof of claim, the amount is "TBD".

**B.      The Failure to Estimate Highly Speculative Claim 237 Would Unduly Delay Administration of the Estate**

The Ninth Circuit has endorsed the estimation of claims where (as here) the claims are highly speculative and the resolution of the claims would unduly delay the administration of the bankruptcy case.  "Given the highly speculative nature of appellants' claims, the district court correctly found estimation to be appropriate." *Ryan v. Louis (In re Corey)*, 892 F.2d 829, 834 (9th Cir. 1989).

Claim 237 is highly speculative.  As stated above, in order for the Individual Ross Claim to be an allowed claim against the Liquidating Trust, Ross must not only obtain a judgement in the State Court Litigation, but the policy insuring against such loss must be insufficient to pay any such judgement.  As explained below, this is a virtual impossibility—unless, ironically, Ross is permitted to go forward with a class action and assert the Class Claim, which could dilute her own ability to recover a judgment from the Debtor's insurance.

Failure to estimate Claim 237 will also unduly delay the administration of this Case.  Almost three years have passed since confirmation of the Plan and general unsecured creditors have yet to receive a distribution.  This delay was largely because of the pendency of the WARN I and WARN II class action suits, well known by this Court and by counsel for Ross (who was also

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    counsel to the WARN Claimants). During this time, the Liquidating Trustee has completed the

2    liquidation of the Debtor's assets, eliminated millions dollars of claims through objections and

3    settlements, and brought significant further assets into the Liquidating Trust. Kipperman

4    Declaration, ¶6.

5         The Liquidating Trustee is now, at long last, prepared to make a distribution to unsecured

6    creditors, but Claim 237 expressly demands that he not do so until the Claim -- including its alleged

7    Class Claim component -- is determined. Distributions and the administration of the Estate will

8    therefore be further delayed, perhaps for additional years, unless Claim 237 is estimated and the

9    Class Claim is not permitted to proceed. Kipperman Declaration, ¶8.

10   **C.    The Court Should Estimate Claim 237 Utilizing the Procedure to Resolve Contested**

11       **Matters**

12        The procedure to be utilized for estimation of a claim is within the sound discretion of the

13   Court. "Neither the Code nor the Rules prescribe any method for estimating a claim, and it is

14   therefore committed to the reasonable discretion of the court, *In re Hydrox Chemical Co.*, 194 B.R.

15   617, 623 (Bankr. N.D.Ill. 1996), which should employ whatever method is best suited to the

16   circumstances of the case. *Id.*; *In re Thomson McKinnon Securities, Inc.,* 191 B.R. 976, 979 (Bankr.

17   S.D.N.Y. 1996)." *In re Ralph Lauren Womenswear, Inc.,* 197 B.R. 771, 775 (Bankr. S.D.N.Y.

18   1996).

19        The Liquidating Trustee suggests that this Court can and should estimate Claim 237 at the

20   hearing on the Motion. The Court has sufficient evidence provided in support of this Motion, and

21   may further take judicial notice of its own files in this Case, to determine that: (1) should any

22   amount be awarded to Ross in the pending State Court Litigation on the Individual Ross Claim, it

23   will almost certainly be covered by insurance, and (2) the Court should not permit the Class Claim to

24   proceed as a class action based a bankruptcy-centric analysis pursuant to Bankruptcy Rule 9014,

25   even without reaching the class action considerations under Bankruptcy Rule 7023.[7]

26

27   _____
     [7] This Motion does not address the traditional, non-bankruptcy related analysis of whether to certify a class under
     Bankruptcy Rule 7023. The Liquidating Trustee does not believe that Ross can meet the threshold under Bankruptcy

28   Rule 9014 before a "Rule 23" analysis should take place. If the Court determines that Ross has met such threshold, the
     Liquidating Trustee requests that the parties be given an opportunity to brief the issues under Rule 7023.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**D.    The Court Should Estimate Claim 237 at Zero ($0)**

    **1.    Claim 237 is Contrary to the Limited Relief in the Ross Stipulation.**

The Individual Ross Claim portion of Claim 237 should be valued at $0. Pursuant to the Ross Stipulation, Ross can assert the Ross Individual Claim against the Liquidating Trust only to a maximum of $2,950,000, less any amounts paid by insurance. The policy covering Ross' claim is in the current amount of approximately $2,850,000, only slightly less than the absolute maximum Ross can assert under the Ross Stipulation. The Liquidating Trustee is aware of no other claims against the policy in question except, potentially, in the event Ross, contrary to the Ross Stipulation, is permitted to proceed with a class action against the Liquidating Trust. Finally, Ross' claim was originally filed in the amount of $1.3 million, and Ross' counsel urged this Court to grant relief from stay in part because such amount was well within the policy covering the claim; only eleven months later did Ross' counsel amend her claim to reflect an undefined amount, without any basis therefor.

The Class Claim portion of Claim 237 should also be estimated at $0 because this Court should determine that it will not permit the matter to go forward as a class action. First and foremost, the Class Claim allegations in Claim 237 are not encompassed within the limited claim reserved under the terms of the Ross Stipulation[8]; other than the Individual Ross Claim, Ross expressly waived any other claim in the Ross Stipulation.

The Ross Stipulation manifestly did not grant relief for Ross to file either the Class Claim or the Class Action Complaint. The Ross Stipulation only granted Ross relief from the automatic stay and the Plan Injunction "to commence litigation . . . as described in the [Emergency] Motion". Ross Stipulation at ¶1. The Draft Complaint attached to the Emergency Motion was not styled as a class action complaint. Beyond this circumscribed relief, *Ross waived any and all other claims she might have against the chapter 11 estate and the Liquidating Trust and its assets. Id.*, at ¶3. Filing the Class Action Complaint -- rather than an individual complaint subject to complete coverage by insurance -- is radically beyond the scope of the relief sought in the Emergency Motion and agreed

---

[8] Claim 237 itself conceded that "[a]fter the outcome of her litigation is determined", Ross was to "return to this Court pursuant to the [Ross] Stipulation" Claim 237, at p. 2. Indeed, as stated in Claim 237, Ross expressly agreed to "not seek class certification until such time as this issue [of whether the Ross Stipulation permits a class action to be brought] is resolved." *Id.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   to in the Ross Stipulation.

2        The limitation on the relief granted in the Ross Stipulation is evident on its face when read in

3   conjunction with the limited relief sought in the Emergency Motion.  Further, this limited relief had

4   been carefully crafted to eliminate liability of the Estate and the Liquidating Trust beyond that

5   covered by insurance.  As described above and in the attached Kipperman and Kandel Declarations,

6   the Liquidating Trustee, with Ross' full knowledge, structured the Ross Stipulation such that, should

7   Ross be successful in the State Court Litigation, the insurance proceeds would likely be sufficient to

8   pay all of any such judgement in full.  Kipperman Declaration at ¶3; Kandel Declaration at ¶4.

9        Specifically, the Liquidating Trustee assessed that no other employees had made any claims

10  similar to those of Ross for racial discrimination, and for the year in question no other claims of any

11  other kind subject to coverage under the $3 million policy had been made.  Kipperman Declaration

12  at ¶5.  This is also supported by the terms of the Ross Stipulation, which permitted Ross to only

13  assert a claim against the Liquidating Trust to a maximum of $2,950,000, less amounts paid by

14  insurance.  In fact, the Ross Stipulation seeks to protect the Estate and Liquidating Trust from a

15  potential claim to such an extent, that although the policy is in the nominal amount of $3 million, the

16  limitation was instead set at $2,950,000.  Kipperman Declaration at ¶6; Kandel Declaration at ¶4. [9]

17       Indeed, Ross urged the Court to grant relief from stay in large part because insurance would

18  very likely be more than sufficient to pay any claim she was awarded.  As argued by Ross in the

19  Emergency Motion,  "[b]ased upon the sum set forth in the Movant's proof of claim [$1.3 million],

20  that claim is well within the $3.0 Million limit of the Debtor's policy.  Relief from stay will result in

21  the liquidation of Movant's claim and payment from insurance proceeds."  Emergency Motion, at p.

22  6.  Only eleven months later did Ross's attorneys amend her claim to eliminate the $1.3 million

23  claim amount.

24      **2.**     **<u>The State Court Found that Ross Could Not Prove That She Performed Her Job</u>**

25  **<u>Satisfactorily.</u>**

26       Granting summary judgment with respect to Ross' claims, the state court found that Ross

27

---

28  [9] The current balance of such policy is approximately $2,850,000 following the granting of summary judgment in favor of the Liquidating Trustee.   Kipperman Declaration at ¶7.

1    admitted "that she repeatedly violated the [Hospice's] attendance policy", which "prevents her from

2    establishing she performed her job satisfactorily and a prima facie case of discrimination." Thus,

3    even to the extent the policy theoretically may be insufficient to pay the entirety of the Individual

4    Ross Claim,  the only court examining the substance of the Individual Ross Claim has found

5    summary judgment in favor of the Liquidating Trustee warranted in a detailed, seventeen page order.

6        **3.    Claim 237 Should Not Proceed as a Class Claim Pursuant to Bankruptcy Rule**

7    **9014.**

8        Independent of the fact that permitting Ross to assert the Class Claim and proceed with a

9    class action is prohibited by the Ross Stipulation, this Court should not permit a new class action to

10    proceed because it is manifestly inappropriate to do so in these circumstances.  Class claims are not

11    permitted in all Circuits.  *See* 1 McLaughlin on Class Actions § 2:10 (12th ed. 2015)  ("Courts are

12    divided, however, on whether a representative claimant may file a proof of claim on behalf of a class

13    of similarly situated creditors or whether each claimant must file its own proof of claim").  The

14    Ninth Circuit, though, following the majority rule, does recognize and allow class claims subject to

15    Bankruptcy Rule 9014(c).  *See In re Birting Fisheries, Inc.,* 92 F.3d 939, 939 (9th Cir. 1996).

16    "However, Bankruptcy Courts have broad discretion to allow or disallow such class claims."

17    *Westfall v. MII Liquidation Inc.,* 2007 WL 2700951, at *4 (S.D. Cal. Sept. 11, 2007).

18        "[A]bsent a successful motion under Rule 9014 requesting class representative status

19    under Rule 7023, Rule 23 cannot be invoked in bankruptcy proceedings." *In re Dynegy, Inc.,*

20    770 F.3d 1064, 1068-69 (2d Cir. 2014).  Some cases and commentators have stated that, in

21    making such a determination under Rule 9014, "bankruptcy significantly changes the balance of

22    factors to be considered in determining whether to allow a class action, and that class

23    certification may be 'less desirable in bankruptcy than in ordinary civil litigation'.  Litigating

24    Mass Tort Cases § 12:18.50; (updated June 2015), David J. Molton and Paul D. Rheingold, Mass

25    Tort Issues in Bankruptcy Proceedings,  quoting *Matter of American Reserve Corp.,* 840 F.2d

26    487, 493 (7th Cir. 1988).

27        Courts consider a variety of factors in determining whether to permit a class claim to go

28    forward as a class action in a bankruptcy case, virtually all of which strongly militate against

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

permitting the Class Claim to proceed as a class action, and which would significantly delay distributions to unsecured creditors and the administration of this Estate.

In exercising discretion under Bankruptcy Rule 9014 whether to even proceed to the next step—assessing class certification under the traditional class action considerations pursuant to Bankruptcy Rule 7023—"a pervasive theme is avoiding undue delay in the administration of the case." *In re Ephedra Products Liab. Litig.,* 329 B.R. 1, 5 (S.D.N.Y. 2005). In *Ephedra,* the Court determined that a class action was inappropriate because "granting of class action claims at this late juncture would wholly disrupt and undercut the expeditious execution of the Plan of Reorganization." *Ephedra,* 329 B.R. at 4. As the court explained at greater length:

> [T]he potential interference with timely distribution in itself presents sufficient grounds to expunge the class claims. The liquidating plan was already submitted for a vote of creditors before the Court was finally asked to decide whether or not to exercise its discretion under Rule 9014. Applying Rule 23 to the class claims now would initiate protracted litigation that might delay distribution of the estate for years.

*Id.*, 329 B.R. at 5. *See also, e.g., In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 376, 377 (Bankr. S.D.N.Y. 1997).

Primarily due to the time it took to resolve and get class approval of the settlement of WARN I, followed by the filing and lengthy process of resolving WARN II, unsecured creditors have waited three years since confirmation of the Plan to receive a distribution. During this time, the Liquidating Trustee has proceeded through the claims objection process, significantly reducing claims through objections and settlements, and has marshalled and liquidated significant assets for distribution. Also during this time, Ross has pursued the State Court Litigation and her Individual Ross Claim as permitted (and as circumscribed) by the Ross Stipulation. If the Class Claim allegations in Claim 237 are permitted to go forward as a class action suit, meaningful distributions to unsecured creditors could be delayed for years more.

The application of other factors discussed by courts also militate towards refusal to permit the Class Claim in Claim 237 to proceed as a class action:

1. Whether a class was certified prepetition (*see, e.g., In re Craft*, 321 B.R. 189, 198 (Bankr. N.D. Tex. 2005); *see* cases at *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

S.D.N.Y. 2007)): Of course, not only was no class certified prepetition, but we stand three years post-confirmation and Ross has not sought relief from the plan injunction (or, earlier, relief from stay) to bring a class action. Further, the Class Claim aspect of Claim 237 was asserted mere hours before the expiration of a bar date, which had already been extended for fourteen months longer than the bar date for all other creditors.

2.      Whether certification will deter further bad acts by management ("[T]he class claim will not deter an insolvent, non-operating debtor's management or shareholders, or induce them to police future conduct." *In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) (citation omitted)): Here, the Debtor, of course, is no longer in operation, so there is no management to deter.

3.      Whether the proposed class action appears to be a "lawyer's vehicle." (*Woodward,* 205 B.R. at 376-77): Ross filed her original proof of claim in the Case on August 30, 2013, only asserting the Individual Ross Claim now at issue and without any class allegations. The filing by Ross' counsel of the amended Claim 237 that included the Class Claim more than a year later, and four hours prior to the Employee Claims Deadline (and the earlier attempt to bypass the terms of the Ross Stipulation by filing a Class Action Complaint), appear to be completely contrary to Ross' own best interest. As an individual claimant, Ross, and Ross alone, will be able to collect any judgment she obtains on the Individual Ross Claim to a maximum of $2,850,000 from the Debtor's insurer. However, if the Court permits Claim 237 to proceed as a class action, Ross' ability to collect insurance on her Individual Ross Claim could be severely diluted. Further evidence that the Class Claim and concomitant proposed class action is merely a "lawyer's vehicle" is that (a) Ross initially filed her claim in *pro per* and it did not include class allegations, (b) Ross herself has been and continues to be adequately represented in the state court, as one would expect in connection with the Individual Ross Claim, which alleged $1.3 million in individual damages even before Ross' counsel modified it, (c) the inclusion of the Class Claim allegations by counsel appears to be to Ross' severe potential detriment, and (d) no other former employee filed a similar claim in the fourteen months of extended time for employees to file claims.

Whether bringing the class action is "employed in [an] attempt[] to engage in some kind of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

'gotcha' behavior designed to gain an unfair advantage." (*Gentry v. Siegel*, 668 F.3d 83, 92 (4th Cir. 2012): As discussed above, Ross filed the Emergency Motion seeking relief to sue the Debtor/Liquidating Trust in the state court in connection with the Individual Ross Claim allegations. The Draft Complaint, while subject to "edits," included no hint of any Class Claim allegations. The Liquidating Trustee and Ross engaged in lengthy negotiations in an effort to consensually resolve the Emergency Motion. In those negotiations the Liquidating Trustee, through counsel, stressed the Trustee's willingness to stipulate only if the Liquidating Trustee could be reasonably assured that Ross' recovery, if any, would be covered by insurance. As a result, the Ross Stipulation permits Ross to proceed in the State Court Litigation on the Individual Ross Claim, and permits her to assert a residual claim against the Liquidating Trust only to the extent the Liquidating Trustee's assessment of available insurance proceeds is incorrect (*i.e.*, up to $2,950,000 less amounts recovered by Ross from insurance). Ross explicitly waived "any other claim of any nature" against the Estate and the Liquidating Trust and its assets. Ross Stipulation, ¶3.

In violation of the terms of the Ross Stipulation, (a) Ross filed the Class Action Complaint, only agreeing to remove the class allegations (subject to this Court later permitting her to bring such an action) after repeated threats by the Liquidating Trustee to bring a contempt motion for Ross' willful violation of the Plan Injunction, and (b) filed the Class Claim as part of Claim 237, despite waiving all claims "of any nature" not specifically allowed to her in the Ross Stipulation. In sum, the Class Claim allegations in Claim 237, amended for this specific purpose four hours prior to the expiration of the Employees' Claims Bar Date (previously extended for fourteen months to allow employees to file or supplement claims in the event a class was not certified in WARN I), and which were not permitted under the Ross Stipulation, represent "gotcha" behavior and appear to be "designed to gain an unfair advantage."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## V.

## **CONCLUSION**

For all the foregoing reasons, the Liquidating Trustee respectfully requests that the Court enter an order (i) granting the Motion, (ii) estimating Claim 237 for all purposes including distribution in the amount of zero dollars ($0), and (iii) granting such other and further relief as is fair and equitable.

Dated:    October 21, 2016              PACHULSKI STANG ZIEHL & JONES LLP

By    */s/ Jeffrey L. Kandel*
Jeffrey L. Kandel
Attorneys for Richard M Kipperman,
Liquidating Trustee of the Liquidating
Trust of San Diego Hospice & Palliative
Care Corporation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### DECLARATION OF RICHARD M KIPPERMAN

I, Richard M Kipperman, declare as follows:

1.     I am over 18 years of age.  I am the Liquidating Trustee of the Liquidating Trust established in the above-captioned chapter 11 case.  I have personal knowledge of each of the facts stated in this declaration, except for those facts stated on information and belief, and as to those facts, I am informed and believe them to be true.  Some of the information presented below is based upon my review of documents and files maintained in the ordinary course of business by San Diego Hospice & Palliative Care Corporation.  If called as a witness, I could and would testify as to the truth of the matters set forth herein based upon my personal knowledge, except where otherwise indicated below.

2.     I submit this declaration in support of the *Liquidating Trustee's Motion For Order Estimating Class Claim Of Leilani Ross For Purposes Of Allowance And Distribution* (collectively, the "Motion").  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or in the memorandum of points and authorities submitted in support of the Motion attached thereto.

3.     The Ross Stipulation was structured such that, should Ross be successful in the State Court Litigation, the insurance proceeds would likely be sufficient to pay any such judgement in full.

4.     After determining that insurance did cover Ross' claim and that no other party had asserted any claim against the $3 million insurance policy for the year in question, I agreed to enter into the Ross Stipulation.

5.     Specifically, I assessed that no other employees had made any claims similar to those of Ross for racial discrimination, and for the year in question, no other claims of any other kind subject to coverage under the $3 million policy had been made.

6.     I was so insistent on limiting potential cost to unsecured creditors that the Ross Stipulation requires Ross to reimburse the Liquidating Trust for half of the $50,000 self-insured retention, and the limitation on Ross' claim was set at $2,950,000, below the policy amount.

7.     I am informed and believe that, following the granting of summary judgment in my favor in the State Court Litigation, the current balance of such policy is approximately $2,850,000.

8.      Three years have passed since confirmation of the Plan and general unsecured creditors have yet to receive a distribution.  This delay was largely because of the pendency of the WARN I and WARN II class action suits.  During this time, I have completed the liquidation of the Debtor's assets, eliminated millions dollars of claims through objections and settlements, and brought significant further assets into the Liquidating Trust.

9.      I am now prepared to make a distribution to unsecured creditors, but Claim 237 expressly demands that he not do so until the claim -- including its alleged Class Claim component -- is determined.  Distributions and the administration of the Estate will therefore be further delayed, perhaps for additional years, unless Claim 237 is estimated and the Class Claim is not permitted to proceed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _30th_ day of September, 2016, in _La Mesa_, California.

_Richard M Kipperman_

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**DECLARATION OF JEFFREY L. KANDEL**

I, Jeffrey L. Kandel, declare and state as follows:

1.    I am an attorney at law duly licensed to practice in the State of California.  I am of counsel to the law firm of Pachulski Stang Ziehl & Jones LLP, counsel to Richard M Kipperman, the Liquidating Trustee of the Liquidating Trust of San Diego Hospice & Palliative Care Corporation, the former debtor in possession in the above-captioned chapter 11 case.  I have personal knowledge of the facts set forth herein and if called as a witness I could and would competently testify thereto.

2.    All facts contained within this Declaration are based upon my personal knowledge.  If called upon as witness, I could and would competently testify as to all of the matters stated herein.

3.    I make this Declaration in support of *Liquidating Trustee's Motion For Order Estimating Class Claim Of Leilani Ross For Purposes Of Allowance And Distribution* (the "Motion").

4.    The Ross Stipulation was structured such that, should Ross be successful in the State Court Litigation, the insurance proceeds would likely be sufficient to pay any such judgement in full.  This goal was an integral part of the negotiations with, and was made clear to, Ross' counsel.  Among other things, this is the reason, made clear to Ross' counsel, that the Stipulation requires Ross to reimburse the Liquidating Trust for half of the $50,000 self-insured retention and the limitation on Ross' claim was set at $2,950,000, below the policy amount.

5.    Only two claims were filed in the thirty days between entry of the order approving the WARN I settlement and the extended Employee Claims Deadline, both during the final few hours of September 4, 2014:  the so-called WARN II class claim, and Claim 237--at 7:59 p.m. PDT.

6.    On May 22, 2014, I contacted counsel for Ross demanding dismissal of the Class Action Complaint or the filing of an amended complaint that complied with the limited relief granted in the Ross Stipulation and the order approving it.  That demand was renewed on May 27, 2014.  When Ross' counsel refused, I, on behalf of the Liquidating Trustee, threatened to seek sanctions against Ross for her willful violation of the Plan Injunction by filing the Class Action Complaint asserting claims drastically beyond the relief granted to Ross by the Ross Stipulation.  Ross finally conceded, agreeing to remove the class allegations from the State Court Litigation and to move

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  forward with a class action <u>only</u> upon approval of this Court.

2      I declare under penalty of perjury under the laws of the State of California and the United

3  States of America that the foregoing is true and correct.

4      Executed this 21st day of October, 2016, in Los Angeles, California.

6              /s/ Jeffrey L. Kandel
7              Jeffrey L. Kandel

# EXHIBIT 1

FORM B10 (Official Form 10) (12/03)

| United States Bankruptcy Court   Southern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>SAN DIEGO HOSPICE & PALLIATIVE CARE CORP | Case Number<br>13-01179 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
LEILANI ROSS, on behalf of herself and all similarly situated

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
Gail Higgins
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, CA 90069

Telephone number: 310-409-7080

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**This space is for Court Use Only**

Account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim ☑ amends    a previously filed claim, dated: __237-2__

**1. Basis for Claim**
- ☐ Goods sold
- ☑ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other _Wrongul Term___

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)

Last four digits of SS#:_____

Unpaid compensation for services performed

from _____ to _____
    (date)              (date)

**2. Date debt was incurred:** see attached

**3. If court judgment, date obtained:**

**4.** Total Amount of Claim at Time Case Filed: $___TBD___  _____  _____  _____TBD_____
                                            (unsecured)      (secured)        (priority)        (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate    ☐ Motor Vehicle
  ☐ Other_____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $

**6. Unsecured Nonpriority Claim** $_____
☐ Check this box if : a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier -11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.
**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space Is for Court Use Only

| Date<br>9/4/14 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>/s/ Gail Higgins |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## ATTACHMENT TO PROOF OF CLAIM

**Debtor**:     San Diego Hospice & Palliative Care Corporation
**Case No**:    13-01179-MM11

     Leilani Ross, an individual ("**Ross**") hereby submits this first amended proof of claim ("**Proof of Claim**") against San Diego Hospice & Palliative Care Corporation ("**Debtor**"), and as against its successor including the Liquidating Trust ("**Trust**"), in the above-captioned Chapter 11 case filed in the United States Bankruptcy Court for the Southern District of California.

I.

Basis For Amount of Claim

1.  EEOC determination letter ("**Letter**").
2.  Complaint against San Diego Hospice & Palliative Care et. al ("**Complaint**").
3.  Insurance Policy related to claim ("**Policy**").
4.  The stipulation between Ross and Richard Kipperman ("**Stipulation**")
5.  Any other document related to acts or occurrence against Leilani Ross and those similarly situated related to state and federal claims of racial discrimination, wrongful termination, and any other claim she may have against Debtor, Foundation, and any other Defendant.

II.

Schedule of Claim

Ross asserts the following claim:

<u>Claims based on discrimination, wrongful termination, harassment, retaliation and other employment claims as asserted in the Complaint which is currently before the Superior Court.  The claims include a request for compensatory damages, back wages, forward wages, punitive damages, and attorneys' fees</u>

**Total:**          **Unknown**[1]

---

[1]/  This estimate not include post-petition attorneys' fees, interest, and costs, and any other amount owed after the filing of this Claim.  Ross reserves the right to assert all these claims.

1

III.

<u>Dispute Between Ross And The Trustee Regarding The Extent Of Relief Ross Seeks In
State Court</u>

Ross obtained an order granting relief from the plan injunction based on a
stipulation she entered into with the Trustee.   See attached Complaint.  The Stipulation
nor Order on the Stipulation, limited the claims Ross could file in the State Action.  In
her motion for relief from the plan injunction, Ross believed she would need to amend
her Complaint and reserved this right, disclosing that the Complaint was only a draft.
The motion was filed on an emergency basis.  This reservation was incorporated into
the order on the stipulation, as the order indicates she could commence litigation as
described in the Motion (which incorporated the right to make amendments).

The Trustee now objects to certain of the amendments to Ross' Complaint in
State Court.  Ross has asserted derivative class action claims, but has not sought to
move for certification, which is the process whereby the derivative claims are certified
for group prosecution.  Elaine Mayol, another former employee obtained relief from the
Plan injunction so she could pursue her class action derivative claims, yet nowhere
does the Mayol order nor stipulation deny Mayol the right to bring derivative class
allegations, nor does it give relief from the Plan injunction to unknown class members.
That stipulation is identical to Ross' stipulation, yet upon information and belief, the
same demands are not being made upon Mayol to dismiss her class allegations.

Rather than seeking clarification on the Stipulation and order, the Trustee has
needlessly threatened sanctions when there is no motion to certify a class.   Ross has
permitted state counsel for the Liquidating Trustee additional time to respond to the
Complaint, and will not seek class certification until such time as this issue is resolved
via clarification or the parties have agreed to a proper discourse.   State Counsel has
also stated to Ross' counsel there is some development in the case, but has not
indicated what that development is. Ross does not oppose extending the deadline to
respond to the Complaint until such time as any clarification is determined or the parties
agree otherwise.

Ross is also considering the possibility of litigating the severable individual claims
in State Court and bringing the class claims pursuant to Fed. R. Bank. 7023 via this
claim.

After meeting and conferring, Ross hopes her litigation can proceed.  After the
outcome of her litigation is determined, Ross will return to this Court pursuant to the
Stipulation.

IV.

Reservation Of Rights

1.  Ross demands all sums that come due post-petition to her, and that continue to accrue, pursuant to the Bankruptcy Code and state law.

2.  In executing and submitting this Proof of Claim, Ross is not waiving any claim, action, or cause of action she may have against the Debtor, the Trust or any other person, including the right to assert different amounts from the amounts set forth herein, nor is Ross waiving any defense, offset, recoupment, counter-claim, cross-claim, right to injunctive relief, right to a receiver, or such a similar right or remedy Ross may now have, or at any time have against the Debtor, Trust or any other entity or person or with respect to any legal or equitable proceeding now existing or hereafter commenced.

3.  Ross reserves the right to amend or supplement this Proof of Claim in any respect thereto, but not limited to, the assertion, by proof of claim or other application to this Bankruptcy Court, for any amount that becomes due under any Policy by and among the Debtor, pursuant to Court order or otherwise, and continuing costs, fees, and expenses (including legal fees and disbursements) arising in relation to the claims asserted herein or any of the agreements and the assertion of an administrative expense priority and adequate protection for any such claim or claims.

4.  In submitting this Proof of Claim, Ross does not submit to the Bankruptcy Court's jurisdiction for resolving all matters related to the Proof of Claim, but reserves all rights accordingly.  Without limiting the foregoing, Ross, specifically reserves her right to: (a) have final orders in non-core matters entered only after *de novo* review by the State Court; (b) have a trial by jury on any matter so triable in the Debtor's case, or in any case, controversy, or proceeding related to Debtor's case; or (d) obtain an adjudication of rights in any applicable forum to which she may be entitled, of any other rights, claims, actions, defenses, set-offs, or recoupment

V.

Distributions And Notices

Any distribution on account of this Proof of Claim should be directed as follows:

Gail J. Higgins (CA Bar No. 164989)
*ghigginse@aol.com*
**Higgins Law Firm**
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California  90069
Telephone: 310.409.7080
Facsimile:   310.388.1018

All notices with respect to this Proof of Claim should be sent to:

Gail J. Higgins (CA Bar No. 164989)
*ghigginse@aol.com*
**Higgins Law Firm**
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California  90069
Telephone: 310.409.7080
Facsimile:   310.388.1018

VI.

Objection To Distributions

No distributions should be made to any general unsecured creditors until such time as Ross's claim is determined by the court hearing her lawsuit.  Ross therefore, objects to any distribution to any unsecured creditors until a determination has been made regarding her claims.

Gail J. Higgins (CA Bar No. 164989)
  *ghigginse@aol.com*
**Higgins Law Firm**
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California  90069
Telephone: 310.409.7080
Facsimile:   310.388.1018

Counsel To Plaintiff
*Leilani Ross, Individually And On Behalf*
*Of All Others Situated*

F I L E D
Clerk of the Superior Court

MAY 1 6 2014

**Original**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

MAY 16 '14 :~ 4:08

In re

LEILANI ROSS, individually and on behalf
of all others similarly situated,

                    Plaintiffs,

v.

SAN DIEGO HOSPICE & PALLIATIVE
CARE CORPORATION, a California
Corporation, SAN DIEGO HOSPICE
FOUNDATION, a California Corporation,
RICHARD M. KIPPERMAN, solely in his
capacity as liquidating trustee of the
Liquidating Trust of San Diego Hospice &
Palliative Care, and DOES 1-10,

                    Defendants.

Case No.:  **37-2014-00016055-CU-WT-CTL**

**PLAINTIFF LEILANI ROSS'S CLASS
ACTION COMPLAINT FOR DAMAGES
BASED ON:**

**(1) TITLE VII OF THE CIVIL RIGHTS ACT
(2) 42 U.S.C. SECTION 1981
(3) DISCRIMINATION ON THE BASIS OF
RACE, ANCESTRY, NATIONAL ORIGIN,
IN VIOLATION OF FEHA
(4) DISCRIMINATION ON THE BASIS OF
RACE, ANCESTRY, NATIONAL ORIGIN,
IN VIOLATION OF FEHA
(5) RETALIATION FOR COMPLAINING
OF DISCRIMINATION ON THE BASIS
OF RACE IN VIOLATION OF FEHA
(6) FAILURE TO PREVENT
DISCRIMINATION AND HARASSMENT
IN VIOLATION OF THE FEHA
(7) WRONGFUL TERMINATION IN
VIOLATION OF PUBLIC POLICY**

**JURY TRIAL DEMANDED**

**BY FAX**

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\ 3376771.1

1

CLASS ACTION COMPLAINT FOR DAMAGES

1    Plaintiff Leilani Ross ("**Ross**" or "**Plaintiff**"), by and through counsel, hereby files

2  the following Class Action Complaint and Jury Demand ("**Complaint**").

3                          **PRELIMINARY STATEMENT**

4    1.    This is an action for an award of damages, punitive damages, attorneys'

5  fees and other relief on behalf of former employee Plaintiff Leilani Ross against San

6  Diego Hospice & Palliative Care, Corporation ("**SDHP**") and other defendants

7  (collectively, the "**Defendants**"). Plaintiff Ross has been harmed by the Defendant's race

8  discrimination and harassment, and Defendant's retaliation and wrongful termination of

9  her based on her complaints about race and harassment. This action arises under Title

10  VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.

11  § 2000(e), et seq. ("**Title VII**"), the Civil Rights Act of 1866, as amended, 42 U.S.C. §

12  1981 ("**Section 1981**"), and the California Fair Employment and Housing Act et seq.

13  ("**FEHA**").  Ross, on behalf of herself and all others similarly situated, also seeks class

14  certification of her 1981 and the DFEH claim for failure to prevent discrimination, on the

15  basis that SDHP utilized policies to deny African Americans and other minorities their

16  shifts, opportunities, and promotions, based on the preference of patients for non-minority

17  caregivers.  This is reprehensible practice that the EEOC found to exist, and such should

18  not prevail in the San Diego community in any other facilities, hospitals, or any other

19  business.

20                          **JURISDICTIONAL STATEMENT**

21    2.    This Court has personal jurisdiction over the defendants as they regularly

22  transact business in this judicial district.

23    3.    Venue is proper in this judicial district because a substantial part of the events

24  giving rise to the causes of action occurred in this district.

25    4.    As for the federal causes of action asserted in the Complaint, the State Court

26  has authority to hear the claims.    *Robb v. Connolly*, 111 U.S. 624 (1884); *Claflin v.*

27  *Houseman*, 93 U.S. 130, 136 (1876); *Yellow Freight System, Inc. v. Donnelly*, 490 U.S. 820,

28  822 (1990) (State Court has concurrent jurisdiction to hear Title VII Claims); *DeHorney v.*

HIGGINS LAW FIRM
1017 N. La Cienega Blvd, Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\ 3376771.1                    2

                    CLASS ACTION COMPLAINT FOR DAMAGES

1  *Bank of America National Trust & Savings Association*, 879 F.2d 459, 463 (9th Cir. 1989)

2  (State Court has concurrent jurisdiction to hear Section 1981 claims).

3      5.      All conditions precedent to the institution of this suit have been fulfilled. On

4  July 2, 2013, the United States Equal Employment Opportunity Commission ("**EEOC**")

5  issued Notice of the Right to Sue ("**Notice**") to Plaintiff.  Plaintiff received the Notice on

6  July 16, 2013.   Plaintiff and Kipperman (as defined below) agreed to toll the statute of

7  limitations under the Notice.  Plaintiff and Kipperman entered subsequent agreement to

8  toll the statute of limitations approved by the Bankruptcy Court.  Thus, this action has

9  been filed timely.

10                 **PARTIES AND PROCEDURAL BACKGROUND**

11      6.      Plaintiff Leilani Ross is a forty-one (41) year-old African-American female

12  who resides in San Diego County.

13      7.      Defendant SDHP was, and is, a corporation duly organized and existing

14  under state law that acted as Plaintiff's employer that does significant business within

15  the Commonwealth of California and is engaged in an industry affecting commerce.

16  SDHP formerly provided patient and family care services.  Defendant Foundation

17  ("**Foundation**") was, and is, a corporation duly organized and existing under California

18  state law, and is liable for the allegations herein because Foundation was a joint

19  employer with SDHP, operated an integrated enterprise with SDHP, there was an

20  interrelation of operations between Foundation and SDHP, there was centralized control

21  of labor relations between Foundation and SDHP, there was common management with

22  SDHP and the Foundation, there was common ownership and financial control between

23  SDHP and the Foundation.  As for the California claims, Plaintiff also asserts the

24  Foundation and SDHP were alter egos, and alleges this for the purpose of this

25  Complaint.

26

27

28

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080 · FAX 310.388.1018

GHIGGINS\ 3376771.1                            3

CLASS ACTION COMPLAINT FOR DAMAGES

8.     SDHP has a location at 4311 Third Avenue, San Diego, CA 92103, ("**San Diego Facility**") where Plaintiff Ross was employed.   The Foundation has the same location.

9.     At all times material hereto, Defendant SDHP employed more than five hundred individuals.

10.    At all times material hereto, Defendant SDHP acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

11.    At all times relevant hereto, Defendant SDHP acted as a "person" and "employer" within the meaning of one or more of the anti-discrimination laws at issue in this suit and is accordingly subject to the provisions of said laws.   At all times relevant hereto, the San Diego Hospice Foundation, Corporation (the "**Foundation**") is liable for the allegations herein because Foundation was a joint employer with SDHP, operated an integrated enterprise with SDHP, there was an interrelation of operations between Foundation and SDHP, there was centralized control of labor relations between Foundation and SDHP, there was common management with SDHP and the Foundation, there was common ownership and financial control between SDHP and the Foundation. As for the California claims, Plaintiff also asserts the Foundation and SDHP were alter egos, and alleges this for the purpose of this Complaint.

12.    At all times relevant hereto, Plaintiff Leilani Ross was an "employee" of SDHP within the meaning of the anti-discrimination laws at issue in this suit and is accordingly entitled to the protections of said laws.

13.    On February 4, 2013, SDHP filed a voluntary petition under chapter 11 of Title 11, United States Code, commencing a bankruptcy case.

14.    On September 12, 2013, Plaintiff filed a proof of claim with the United States Bankruptcy Court.   Plaintiff will be filing an amended proof of claim.   Plaintiff had contacted attorneys representing the interests of the Committee of Unsecured Creditors ("**Committee**"), who became attorneys for the liquidating trust regarding her claim.

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL. 310.409.7080 · FAX 310.388.1018

GHIGGINS\3376771.1                                   4

CLASS ACTION COMPLAINT FOR DAMAGES

15. Ross contacted the Bankruptcy Court, SDHP's attorneys, and the Committee's attorney to discuss the procedural posture of her claim. For many months, Ross was in *pro se*. For a significant time, Debtor nor Committee's counsel responded to Ross, despite her attempts to resolve the procedural posture of her claim. When she finally did get in contact with Mr. Maizel, Committee Counsel, she was told to assert her claims against the estate and that based on the language of the confirmation order and Plan, her sole remedy would be in the Bankruptcy Court, even though this was not a true statement. She also subsequently asked Mr. Maizel, counsel to the Committee, to stipulate to relief from stay, but he would not agree to do so unless she had counsel. In addition, Ross believes any deadline would be deemed contractually tolled based on a stipulation extending bar date for all former employees. Adv. Case No. 13-90082-MM11, docket entry no. 5. This Order provides "[t]he deadline by which **any** former or current employee of the Debtor may file a proof of claim ("Bar Date") is extended to 30 days after the date the court actually issues its written ruling on the Certification Motion, Adv Dock. Entry No. 5,."

16. On September 23, 2013 (the "Confirmation Date"), the Court entered its Order confirming the *First Amended Liquidating Plan for San Diego Hospice and Palliative Corporation (June 24, 2013), as Modified on August 27, 2013 and September 18, 2013 Jointly Proposed by the Debtor and the Official Committee of Unsecured Creditors* (the "Plan") [Bank. 615]. The Effective Date of the Plan was October 8, 2013. Pursuant to the Plan, on or after the Effective Date, the Liquidating Trust succeeded to the assets of the Debtor and, *inter alia*, was charged with assessing, objecting to and compromising claims asserted in the Case. Richard M Kipperman ("**Kipperman**") was selected by the Committee and SDHP to serve as the Liquidating Trustee of the Liquidating Trust. Kipperman is named in this Complaint nominally, and solely in his capacity as trustee of the successor vehicle to SDHP.

17. On October 8, 2013, Ross filed her *Emergency Motion to (1) Modify the Automatic Stay to Liquidate Claim in State Court or District Court and (2) for Relief From*

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7090 · FAX 310.388.1018

GHIGGINS\ 3376771.1                    5

CLASS ACTION COMPLAINT FOR DAMAGES

*Plan Injunction to Liquidate Claim in State Court or District Court* [Bank. Docket No. 648]
(the "Emergency Motion"). Thereafter, (1) on October 9, 2013, the Liquidating Trustee
filed an opposition thereto [Bank. Docket No.654]; (2) on November 6, 2013, the
Liquidating Trustee filed a supplemental opposition thereto [Bank. Docket No. 679]; and
(3) on November 14, 2013, Ross filed a reply to the Liquidating Trustee's opposition and
supplemental opposition [Bank. Docket No.692].

18.    The hearing with respect to the Emergency Motion was originally scheduled
for October 10, 2013, and was continued pursuant to stipulation of the Parties [Bank.
Docket No. 656] and order of this Court [Bank. Docket No. 664] in order to enable the
Liquidating Trustee to review any policies of insurance which may apply to the claims
raised by Ross and, based thereon, to engage in negotiations with both the insurer and
Ross to determine whether the Parties can reach a consensual resolution of the issues
raised in the Motion.   Pursuant to various stipulations continuing the matter, the parties
agreed to toll all claims Ross had. Ross did this out of abundance of caution, even
though based on the stipulation, it appeared the statute of limitations was already being
tolled.

19.    The Motion was resolved with a new agreement and stipulation for tolling,
approved by the Bankruptcy Court on May 8, 2014, [Bank. Docket No. 860]. The Order
granted Ross relief from stay and embodied a new agreement to toll the statute of
limitations through May 19, 2014 with no limitations as to any allegation of SDHP of
infirmity, that had been reserved by SDHP in previous stipulations.

## V.

## CLASS ALLEGATIONS

20.    Plaintiff incorporates herein by reference each prior paragraph of this
Complaint as if fully set forth herein.

21.    Plaintiff seeks partial certification of class as to her claims pursuant to 42
U.S.C. § 1981, and the DFEH regarding the policy of denying African Americans and

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080- FAX 310.388.1018

CLASS ACTION COMPLAINT FOR DAMAGES

1   other minorities shifts, opportunities, and jobs, based on the preference of a patient.

2   Under the remaining claims Ross has, she does not seek certification.

3       22.   **Class Definitions**. Plaintiff brings this civil class action on behalf of

4   herself individually, and on behalf of all others similarly situated, consisting of all former

5   employees of SDHP who were discriminated against by a policy of SDHP to deny African

6   Americans and other minorities shifts, opportunities, and positions, and to make hiring

7   decisions, staffing decisions, and employment decisions, based on patient preferences

8   for non-minority caregivers.   Specifically excluded from the class are Defendants, any

9   entity in which they have a controlling interest, any of their parents, subsidiaries, and/or

10  affiliates of Defendant; and any members of their immediate family.

11      23.   This action may be properly be brought and maintained as a class action as

12  partially certified pursuant to section 382 of the California Code of Civil Procedure. This

13  class action satisfies the numerosity, typicality, adequacy, predominance, and superiority

14  requirements. Upon application by Plaintiffs' counsel for certification of the Plaintiffs'

15  Class, the Court may also be requested to utilize and certify subclasses in the interests of

16  ascertainibility, manageability, justice, and/or judicial economy.

17      24.   **Ascertainability**.   This action may be properly brought and maintained as

18  a class action because there is a well-defined community of interest in the litigation, and

19  the members of the proposed Class are clearly and easily ascertainable and identifiable.

20  The members of the Class can be readily ascertained from Defendants' business

21  records. The Class members can be readily located and notified of this class action.

22      25.   **Numerosity**. The number of persons within the Plaintiff Class is

23  substantial, believed to amount to at least 50 persons. It is, therefore, impractical to join

24  each member of the Class as a named Plaintiff. Utilization of the class action mechanism

25  is the most economically feasible means of determining and adjudicating the merits of

26  this litigation.

27      26.   **Typicality**. The claims of Plaintiff are typical of the claims of the

28

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080~ FAX 310.388.1018

GHIGGINS\ 3376771.1                    7

CLASS ACTION COMPLAINT FOR DAMAGES

1  members of the Class, and the Plaintiff's interests are consistent with and not

2  antagonistic to those of the other Class members Plaintiff seek to represent.

3    27.    **Adequacy**. The Plaintiff class representatives have no interests that are

4  adverse to, or which conflict with, the interests of the absent class members of the Class

5  and are able to fairly and adequately represent and  protect the interests of such Classes.

6  Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by

7  members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiff

8  may seek leave of this Court to amend this Complaint to include additional class

9  representatives to represent the Class or additional claims as may be appropriate.

10    28.    **Competency of Class Counsel**.  Plaintiffs has retained and are

11  represented by experienced, qualified, and competent counsel who are committed to

12  prosecuting the class action.  Counsel has experience in class action matters, and will

13  assert and protect the rights and interests of Plaintiffs and absent Class Members.

14    29.    **Commonality and Predominance.** Common questions of law and fact

15  exist as to all members of the Class that predominate over any questions affecting only

16  individual members of the Class.  These common issues can be jointly tried.  These

17  common legal and factual liability questions, which do not vary from Class member to

18  Class member, and which may be determined without reference to the individual

19  circumstances of any Class member include, but are not limited to, the following:

20    (a) Whether Defendants' action constitute a violation of Section 1981 based on

21  denying employees shifts and positions based on the racial preference of patients.

22    (b) **Superpriority**.  Class actions serve an important function in the judicial

23  system by providing a vehicle whereby the claims of many individuals can be resolved at

24  the same time.  The class action procedure both eliminates the possibility of repetitious

25  litigation and provides claimants who may not have the means to retain counsel but for

26  the mechanism of the class action, with redress.  A class action is superior to other

27  available methods for the fair and efficient adjudication of the controversy, since

28  individual litigation of the claims of all Class members is impracticable.  Even if every

GHIGGINS\3376771.1

8

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

**CLASS ACTION COMPLAINT FOR DAMAGES**

1   member of the Class could afford to pursue individual litigation, the Court system could

2   not. It would be unduly burdensome to the Courts in which individual litigation of

3   numerous cases would proceed. Individualized litigation would also present the potential

4   for varying, inconsistent, or contradictory judgments, and would magnify the delay and

5   expense to all parties and to the Court system resulting from multiple trials of the same

6   factual issues. By contrast, the maintenance of this action as a class action, with respect

7   to some or all of the issues presented herein, presents few management difficulties,

8   conserves the resources of the parties and of the Court system, and protects the rights of

9   each member of the Class. Plaintiffs anticipate no difficulty in the management of this

10  action as a class action.

11       30.     Additionally, the prosecution of separate actions by individual Class '

12  Members may create a risk of multiple adjudications that would, as a practical matter, be

13  dispositive of the interests of the other members of the Class not parties to such

14  adjudications or that would substantially impair or impede the ability of such nonparty

15  Class Members to protect their interests. The prosecution of individual actions by Class

16  members could establish inconsistent results and result in establishing in incompatible

17  standards of conduct for Defendants.

18                                    **FACTS**

19       31.     Plaintiff Ross began her employment with the Defendants when she was

20  hired on or about June 9, 2009 as a nurse, in the crisis care unit.

21       32.     At SDHP's San Diego facility, where Plaintiff Ross was most recently

22  employed, there is a culture of racial bias.

23       33.     That SDHP fosters and approves of a racially biased atmosphere is

24  supported by the fact that the overwhelming majority of its employees in its San Diego

25  Facility were Caucasian, and SDHP's hiring, retention, and promotion practices have

26  intentionally discriminated against Ross and other minorities and have had a disparate

27  impact on African Americans.

28

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080 · FAX 310.388.1018

GHIGGINS\ 3376771.1                          9

34.     During her employment, Plaintiff Ross would receive unfavorable
assignments, shifts, and tasks in the course of her employment.   Defendants would
change and deny Ross' assignments, shifts, and task, spontaneously and without
explanation to Plaintiff Ross. Other similarly situated persons were promoted, but SDHP
did not promote Plaintiff.

35.     On or about April of 2010, Ross learned of racially discriminatory policies
and practices SDHP had enacted.  Specifically, she was informed by calendaring
persons for SDHP not to show up for a shift with no explanation.  Ross learned that this
was based on Defendants' preference for "white" care providers and attendants, and
based on Defendants' discrimination and demeaning view of African Americans and other
minorities.  Plaintiff Ross also learned from personnel for SDHP that scheduled shifts,
that one of the outpatients of SDHP advised SDHP, "don't send that ni&*er here [for
treatment]."  On or about this same time, Ross learned that SDHP had created a physical
ledger book and other practices, acts and procedures whereby the racial preference for
caregivers was notated for certain patients, honored, adopted, and ratified.  The purpose
of this book was to ensure African Americans and other minorities were not assigned to
certain shifts, tasks, and assignments based on the racial preference of the patient and
SDHP.

36.     On or about May 3, 2010, Ross and a group of employees requested a
meeting with supervisor Kimberly Sendra ("**Sendra**") to discuss and report the
Defendants' discriminatory practices as it related to minorities at SDHP.  Carol Lovci
intervened and advised Ross and other employees they should meet individually with
management.   Employees felt intimidated by a request for individual meetings, and
stated this.  Human resources of SDHP advised Ross and certain employees that a
meeting would be held on May 11, 2010 to discuss the practices that Ross had reported
to Sendra.

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080· FAX 310.388.1018

CLASS ACTION COMPLAINT FOR DAMAGES

37. On May 10, 2010, Ross reported to HR of SDHP, the anxiety, stress, and emotional impact, the racial discrimination and practices of SDHP had caused her. Ross also reported and discussed with HR, SDHP's failure to address the discrimination.

38. SDHP responded with an email that it "didn't care", and that Ross was required to report to work. Ross presented Defendant's with a Doctor's note verifying her illness.

39 On May 11, 2010, Ross, caucasian co-employee Erica Cartier, African American Tracy McKay, hispanic co-employee Jennifer Leos, Sendra, and Human Resource representative Attie Smith ("**Smith**"), and an additional employee (to be named through discovery) participated in the meeting regarding the discrimination of minorities at SDHP. During the meeting Sendra and Smith advised the employees including Ross, that there was nothing Defendants could do about the racial preferences of patients for whites and non-minorities, that Defendants had to assign tasks and shifts based on patient preferences, and that Defendants would take no action to alter the *status quo*.

40. On May 17, 2010, Ross was terminated.

41. On June 10, 2010, Ross filed a claim with the Equal Employment Opportunity Commission, assigned charge number 488-2010-00734, which has a work sharing agreement with the DFEH.

42. Ross received unemployment benefits ("**UE Benefits**") based on SDHP's termination of her. On August 23, 2010, SDHP claimed termination based on "misconduct related to most recent work" and appealed Ross' entitlement to unemployment benefits.

43. SDHP appealed the UE benefits awarded to Ross. SDHP lost the appeal, and the panel affirmed Ross' right to UE benefits.

44. On March 13, 2013,The Equal Employment Opportunity Commission ("**EEOC**") issued a determination (the "**Determination**") providing: "that the evidence obtained in the [EEOC] investigation establishes reasonable cause to believe that Respondent subjected Charging Party [Movant] to disparate terms and conditions of

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL. 310.409.7080 · FAX 310.388.1018

GHIGGINS\ 3376771.1

11

CLASS ACTION COMPLAINT FOR DAMAGES

employment based on her race, Black, in violation of Title VII of the Civil Rights Act of 1964. More specifically, Respondent engaged in an unlawful employment practice by denying Charging Party job assignments based on race pursuant to practice of accommodating a customer's preference for an assigned employee based on race." The right to sue letter is appended hereto as Exhibit "A". The determination letter is appended hereto as Exhibit "B". The relief from stay order is appended hereto as Exhibit "C".

45. During her employment with SDHP, Plaintiff Ross performed her duties in a satisfactory and professional manner.

46. Despite her consistent performance, Plaintiff Ross was targeted by SDHP, which displayed a bias toward Plaintiff Ross on the basis of her race.

47. Ross was sent to the furthest locations away from her home based on her race and in an effort by SDHP to terminate her, and the patient preferences for non minority nurses.

48. That Plaintiff Ross's race was considered by SDHP in subjecting Ms. Ross to unwarranted criticism and discipline, in failing to promote her or give her periodic raises despite her qualifications, is evident from SDHP's actions.

49. Plaintiff Ross was retaliated against by SDHP as a result of her complaints, both written and verbal, regarding discrimination and harassment.

50. In addition to the actions and inactions of SDHP alleged herein, SDHP's policies, practices, and customs have a disparate impact on African-American workers.

51. Specifically, SDHP's policies with respect to promotion and discipline have a disparate impact on African-American employees in that African-American employees at SDHP are routinely denied promotions for which Caucasian employees are selected and are subjected to more frequent and harsher discipline than their Caucasian colleagues.

52. Further, SDHP routinely ignores complaints of discriminatory conduct and fails to enforce anti-discrimination, anti-harassment, and/or anti-retaliation policies.

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL. 310.409.7080• FAX 310.388.1018

GHIGGINS\3376771.1                    12

53. The treatment alleged herein that Plaintiff Ross was subjected to by SDHP was motivated by discrimination on the basis of race, and in retaliation for Plaintiff's complaints about discrimination.

54. SDHP discriminated against and harassed Plaintiff Ross in violation of Title VII of the Civil Rights Act of 1964, the FEHA, and Section 1981.

55. Instead of appropriately investigating and addressing Plaintiff Leilani Ross's complaints of race discrimination and harassment, SDHP retaliated against Plaintiff Ross in violation of Title VII of the Civil Rights Act of 1964, the FEHA, and Section 1981.

56. SDHP was aware of the discrimination, harassment, and retaliation suffered by Plaintiff Ross, but failed to take any action to address the situation or prevent further discrimination, harassment, and retaliation.

57. SDHP has encouraged, tolerated, ratified and been deliberately indifferent to a series of actionable patterns, practices, and customs relating to training, supervision, investigation and discipline.

58. As a result of the race and age discrimination, harassment, and retaliation suffered by Plaintiff Ross, Plaintiff Ross suffered, and continues to suffer severe emotional distress.

59. SDHP and its agents acted with the intent of causing, or in reckless disregard of the probability that their actions would cause Plaintiff Ross severe emotional distress.

## COUNT I

### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e))

### (As Against All Defendants)

60. Plaintiff Leilani Ross repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

61. Based on the foregoing, Defendant SDHP engaged in unlawful employment practices in violation of Title VII.

CLASS ACTION COMPLAINT FOR DAMAGES

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL. 310.409.7080· FAX 310.388.1018

62.     Title 2 of the CRA proscribes discrimination by a commercial entity yielding to the racial preferences of its customers.  In discriminating against, harassing, and retaliating against Plaintiff Ross because of her race and because of her complaints about race discrimination and harassment, Defendant SDHP violated Title VII of the Civil Rights Act of 1964.

63.     Defendant's policies, practices, and customs regarding promotions, discipline and the reporting and investigation of employee complaints of discrimination and harassment had a disparate impact on African-American employees and other minorities in violation of Title VII.

64.     Defendant's policies, practices, and customs of engaging in an unlawful employment practice by denying Plaintiff Ross job assignments based on race pursuant to practice of accommodating a customer's preference for an assigned employee based on race had a disparate impact on African-American employees and other minorities in violation of Title VII.

65.     Said violations were intentional and willful.

66.     Said violations warrant the imposition of punitive damages.

67.     As the direct and proximate result of Defendant's violations of Title VII, Plaintiff Leilani Ross has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon along with and/or in addition to the damages and losses set forth herein.

68.     Plaintiff Leilani Ross is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

**COUNT II**

**(Civil Rights Act of 1866, 42 U.S.C. § 1981)**

**(*Class Action Count* As Against All Defendants)**

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080 · FAX 310.388.1018

GHIGGINS\3376771.1

14

CLASS ACTION COMPLAINT FOR DAMAGES

69.     Plaintiff Leilani Ross repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

70.     Based on the foregoing, Defendant SDHP has engaged in unlawful employment practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

71.     In discriminating against, harassing and retaliating against Plaintiff Ross because of her race and because of her complaints about race discrimination and harassment, Defendant SDHP violated the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.  In discriminating against and denying minorities at SDHP opportunities, shifts, promotions, and fostering a culture of racism and discrimination, Defendants violated Section 1981 of Ross, and all others similarly situated.

72.     Said violations were intentional and willful.

73.     Said violations warrant the imposition of punitive damages.

74.     As the direct and proximate result of the Defendants' violation of Section 1981, Plaintiff Leilani Ross, and all others situated, have sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon along with and/or in addition to the damages and losses set forth herein.

75.     Plaintiff Leilani Ross is now suffering and will continue to suffer irreparable harm and monetary damages as a result of the Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT III

**(Discrimination On The Basis Of Race, Ancestry, And National Origin in Violation Of FEHA (Government Code ¶¶ 12900-12960) Against All Defendants**

76.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

77.     At all times herein mentioned, FEHA, Government Code sections 12900-12960, was in full force and effect and was binding on the defendant SDHP.  These

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080· FAX 310.388.1018

GHIGGINS\3376771.1                                            15

statutes require defendant to refrain from discriminating against any employee on the basis of his/her race, ancestry, or national origin. Within the time provided by law, Plaintiff filed a complaint with the EEOC who has a work-share agreement with the Department of Fair Employment and Housing ("DFEH"), and later received a right-to-sue letter.

78. During Plaintiff's employment with Defendants through their supervisors, managers, and directors, engaged in intentional actions that resulted in Plaintiff being treated less favorably because of her race, ancestry, and/or national origin. Specifically, defendants maintained a systematic and continuous policy and goal of firing and demoting African Americans and other minorities, and created policies that caused Ross and other minorities employees to be denied shifts, employment opportunities, and equal rights.

79. As a proximate result of Defendants' discriminatory behavior toward Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

80. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

81. Defendant's discrimination was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

82. Plaintiff has incurred, and continues to incur legal expenses and attorneys' fees in a sum according to proof.

## COUNT IV

**(Harassment On The Basis Of Race, Ancestry, And National Origin in Violation Of FEHA (Government Code ¶¶ 12900-12960) Against All Defendants**

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL. 310.409.7080· FAX 310.388.1018

GHIGGINS\ 3376771.1

16

CLASS ACTION COMPLAINT FOR DAMAGES

83. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

84. At all times herein mentioned, FEHA, Government Code sections 12900-12960, was in full force and effect and was binding on the defendant SDHP. These statutes require defendant to refrain from harassing any employee on the basis of his/her race, ancestry, or national origin. Within the time provided by law, Plaintiff filed a complaint with the EEOC who has a work-share agreement with the Department of Fair Employment and Housing ("**DFEH**"), and later received a right-to-sue letter.

85. During Plaintiff's employment with Defendants through their supervisors, managers, and directors, engaged in intentional actions that resulted in Plaintiff being treated less favorably because of her race, ancestry, and/or national origin. Specifically, defendants maintained a systematic and continuous policy and goal of firing and demoting African Americans and other minorities, and created policies that caused Ross and other minorities employees to be denied shifts, employment opportunities, and equal rights.

86. As a proximate result of Defendants' harassing behavior toward Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

87. As a proximate result of Defendants' willful, knowing, and intentional harassment against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

88. Defendant's harassment was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

89. Plaintiff has incurred, and continues to incur legal expenses and attorneys' fees in a sum according to proof.

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080· FAX 310.388.1018

CLASS ACTION COMPLAINT FOR DAMAGES

## COUNT V

**(Retaliation For Complaining Of Discrimination and Harassment On The Basis Of Race, Ancestry, And National Origin in Violation Of FEHA (Government Code ¶¶ 12900-12960) Against All Defendants**

90.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

91.     At all times herein mentioned, FEHA, Government Code sections 12900-12960, was in full force and effect and was binding on the defendant SDHP.  These statutes require defendant to refrain from harassing any employee on the basis of his/her race, ancestry, or national origin.  Within the time provided by law, Plaintiff filed a complaint with the EEOC who has a work-share agreement with the Department of Fair Employment and Housing ("**DFEH**"), and later received a right-to-sue letter.

92.     During Plaintiff's employment with Defendants through their supervisors, managers, and directors, engaged in intentional actions that resulted in Plaintiff being treated less favorably because of her race, ancestry, and/or national origin.  Specifically, defendants maintained a systematic and continuous policy and goal of firing and demoting African Americans and other minorities, and created policies that caused Ross and other minorities employees to be denied shifts, employment opportunities, and equal rights.

93.     After Plaintiff complained to Defendants repeatedly about being discriminated against and harassed in the work place because of her race, ancestry, and/or national origin, defendant constructively terminated her employment by allowing the mistreatment of Plaintiff to continue until Plaintiff was terminated.

94.     As a proximate result of Defendants' retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

95.     As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation,

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080~ FAX 310.388.1018

GHIGGINS\ 3376771.1

18

CLASS ACTION COMPLAINT FOR DAMAGES

1  emotional distress, and mental and physical pain and anguish, all to her damage in a

2  sum according to proof.

3       96.    Defendant's retaliation was done intentionally, in a malicious, oppressive

4  manner, entitling Plaintiff to punitive damages.

5       97.    Plaintiff has incurred, and continues to incur legal expenses and attorneys'

6  fees in a sum according to proof.

7  **COUNT VI**

8  **(Failure To Prevent Discrimination And Harassment in Violation of FEHA**

9  **(Government Code ¶ 12940k)** *Class Action Count* **Against All Defendants**

10       98.    The allegations set forth in the preceding paragraphs are re-alleged and

11  incorporated herein by reference.

12       99.    At all times herein mentioned, FEHA, Government Code section 12940(k),

13  was in full force and effect and was binding on the defendant SDHP.  The statute states

14  that it is an unlawful employment practice in California for an employer "to fail to take all

15  reasonable steps necessary to prevent discrimination and harassment from occurring."

16  Prior to filing the instant Complaint, plaintiff Ross filed a complaint with the EEOC who

17  has a work-share agreement with the Department of Fair Employment and Housing

18  ("**DFEH**"), and later received a right-to-sue letter.

19       100.    During the course of plaintiff's employment, Defendants failed to prevent

20  employees from engaging in intentional actions that resulted in Plaintiff and all other

21  situated, being treated less favorably because they are minorities.  During the course of

22  Plaintiff's employment, defendant failed to prevent its employees from engaging in

23  unjustified employment practices against African American employees and other minority

24  employees.  During the course of Plaintiff's employment, Defendants failed to prevent a

25  pattern and practice by its employees of intentional discrimination and harassment based

26  upon race, national origin, and ancestry.

27       101.·    Defendant encouraged, sanctioned, and advised HR and staff of SDHP to

28  create ledgers to deny persons shift positions based on their race, and to discuss with

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080· FAX 310.388.1018

GHIGGINS\ 3376771.1               19

CLASS ACTION COMPLAINT FOR DAMAGES

1  patients that such racial preferences would be honored accommodated, ratified and

2  adopted.

3      102.    As a proximate result of Defendants' willful, knowing, and intentional failure

4  to prevent discrimination against and harassment of plaintiff, plaintiff, and all those

5  similarly situated, have suffered and continues to suffer humiliation, emotional distress,

6  and mental and physical pain and anguish, all to her damage in a sum according to proof.

7      103.    As a proximate result of Defendants' willful, knowing, and intentional failure

8  to prevent discrimination against and harassment of plaintiff, Plaintiff and all others

9  similarly situated, have suffered and continues to suffer humiliation, emotional distress,

10  and mental and physical pain and anguish, all to her damage in a sum according to proof.

11      95.    Defendants' conduct was done intentionally, in a malicious, oppressive

12  manner, entitling Plaintiff to punitive damages.

13      96.    Plaintiff and all others similarly situated, have incurred, and continues to

14  incur legal expenses and attorneys' fees in a sum according to proof.

15  **COUNT VII**

16  **Wrongful Termination Against All Defendants**

17      97.    The allegations set forth in the preceding paragraphs are re-alleged and

18  incorporated herein by reference.

19      98.    The above-described conduct of defendants constitutes racial

20  discrimination, retaliation, and wrongful termination of Plaintiff in violation of public policy

21  embodied in the FEHA and Title VII.

22      99.    As a result of defendants' wrongful termination of her, Plaintiff has suffered

23  and continues to suffer damages, in the form of lost wages and other employment

24  benefits, and severe emotional and physical distress, the exact amount of which will be

25  proven at trial.

26      100.    Defendants, and each of them, acted for the purpose of causing Plaintiff to

27  suffer financial loss and severe emotional distress and physical distress and are guilty of

28  oppression and malice, justifying an award of exemplary and punitive damages.

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor, and those similarly situated, and against Defendant SDHP:

a. Declaring that the acts and practices complained of herein violate Title VII;

b. Declaring that the acts and practices complained of herein violate Section 1981 and violate the rights of all class members;

c. Declaring that the acts and practices complained of herein violate the FEHA;

d. Awarding compensatory damages to Plaintiff Leilani Ross, and those similarly situated, to make them whole for all past and future lost earnings, benefits and earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendant's conduct;

e. Awarding compensatory damages to Plaintiff Leilani Ross, and all those similarly situated, for past and future emotional upset, mental anguish, loss of reputation, humiliation, loss of life's pleasures and pain and suffering;

f. Awarding punitive damages to Plaintiff Leilani Ross and all those similarly situated;

g. Awarding liquidated damages to Plaintiff Leilani Ross;

h. Awarding the class costs of this action together with her reasonable attorneys' fees;

i. Awarding Plaintiff Leilani Ross, and those similarly situated, such other damages as are appropriate under Section 1981, and the FEHA; and

j. Awarding Plaintiff Leilani Ross, damages as appropriate under Title VII;

j. Granting such other and further relief as this Court deems just and proper.

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080 · FAX 310.388.1018

GHIGGINS\ 3376771.1

21

CLASS ACTION COMPLAINT FOR DAMAGES

By: _____

Gail Higgins

Dated: May 16, 2014

Counsel To Plaintiff
*Leilani Ross, on behalf of herself and all others similarly situated*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a jury trial on all issues so triable.

By: _____

Gail Higgins

Dated: May 16, 2014

Counsel To Plaintiff
*Leilani Ross, on behalf of herself and all others similarly situated*

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080 · FAX 310.388.1018

CLASS ACTION COMPLAINT FOR DAMAGES

EXHIBIT A

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Diego Local Office

555 W. Beech Street, Suite 504
San Diego, CA 92101
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
San Diego Status Line: (866) 408-8075
San Diego Direct Dial: (619) 557-7249
TTY (619) 557-5748
FAX (619) 557-7274
Website: www.eeoc.gov

Ms. Leilani Ross
228 Roanoke Road
El Cajon, CA 92020

Re:    Leilani L. Ross v. San Diego Hospice
       EEOC Charge No.: 488-2010-00734

Dear Ms. Ross:

The Equal Employment Opportunity Commission has determined that efforts to conciliate this
charge as required under Title VII of the Civil Rights Act of 1964, as amended, have been
unsuccessful. This letter constitutes the notice required by 1601.25 of the Equal Employment
Opportunity Commission's Procedural Regulations which provides that the Commission shall
notify the parties in writing when it determines that further conciliation efforts would be futile or
non-productive.

No further efforts to conciliate this case will be made by the Equal Employment Opportunity
Commission. The Commission has determined that it will not bring a lawsuit. The issuance of
the enclosed Notice of Right to Sue concludes the processing of your charge by the Commission.
If you decide to sue, you must file a complaint in Federal District Court within 90 days from the
receipt of the Notice of Right to Sue.

On Behalf of the Commission

7|2|13
_____
Date

_____
Marla B. Stern-Knowlton, Director
San Diego Local Office

cc:
Ms. Shauna L. Sinnott
ANDREWS LAGASSE BRANCH & BELL LLP
4365 Executive Drive, Ste. 950
San Diego, CA 92121

EEOC Form 161-A (11/09)   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To: | Leilani L. Ross<br>228 Roanoke Road<br>El Cajon, CA 92020 | From: | San Diego Local Office<br>555 W. Beech Street<br>Suite 504<br>San Diego, CA 92101 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2010-00734 | Marla B. Stern-Knowlton,<br>Local Office Director | (619) 557-7284 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marla B. Stern-Knowlton,
Local Office Director

7/2/13
*(Date Mailed)*

Enclosure(s)

cc:   Dana Bryce
      Human Resources Director
      **SAN DIEGO HOSPICE**
      4311 3rd Avenue
      San Diego, CA 92103

      Ms. Shauna L. Sinnott
      ANDREWS LAGASSE BRANCH & BELL LLP
      4365 Executive Drive, Ste. 950
      San Diego, CA 92121

# EXHIBIT B

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Diego Local Office

555 West Beech Street, Suite 504
San Diego, CA 92101
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
San Diego Status Line: (866) 408-8075
San Diego Direct Dial: (619) 557-7235
TTY (619) 557-5748
FAX (619) 557-7174

Charge No.: 488-2010-00734

Charging Party

Leilani Ross
228 Roanoke Road
El Cajon, CA 92020

Respondent

San Diego Hospice
404 Camino del Rio South
Suite 200
San Diego, CA 92108

## DETERMINATION

Under the authority vested in me by the Equal Employment Opportunity Commission (EEOC), I issue the following determination as to the merits of the subject charge filed under the Title VII of the Civil Rights Act of 1964, as amended. All requirements for coverage have been met.

Charging Party alleged that she was subjected to Respondent's discriminatory employment practice by denying her job assignments based on her race, Black, pursuant to a practice of accommodating customer preference for non-Black Nurses (LVNs). Charging Party further alleged that she was discharged in retaliation for having complained about this discriminatory employment practice.

Respondent denies Charging Party's allegations.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent subjected Charging Party to disparate terms and conditions of employment based on her race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended. More specifically, Respondent engaged in an unlawful employment practice by denying Charging Party job assignments based on race pursuant to a practice of accommodating a customer's preference for an assigned employee based on race.

No finding is made with respect to the retaliatory discharge allegation.

Respondent is reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigation is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

LETTER OF DETERMINATION
Leilani Ross v San Diego Hospice
EEOC No.: 488-2010-00734
Page 2 of 2 Pages

Upon finding there is reasonable cause to believe that violations have occurred the Commission attempts to eliminate the alleged unlawful practices by informal methods of conference, conciliation and persuasion. Having determined that there is reasonable cause to believe that the charge is true, the Commission now invites the parties to join with it in a collective effort toward a just resolution of this matter. The confidentiality provisions of Section 107 of the Title VII and Commission Regulations apply to information obtained during conciliation.

Where the Respondent declines to enter into settlement discussions or the Commission is unable to secure a settlement acceptable to the District Director, the Director shall so inform the parties in writing and advise them of the court enforcement alternative available to the EEOC.

A representative of the Commission will be in contact with you to determine your interest in participating in conciliation discussions.

On Behalf of the Commission:

8/13/13

Date

Marla Stern-Knowlton, Director
San Diego Local Office.

# EXHIBIT C

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.

Samuel R. Maizel (CA Bar No. 189301)
Scotta E. McFarland (CA Bar No. 165391)
Jeffrey L. Kandel (CA Bar No. 115832))
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: smaizel@pszjlaw.com
 smcfarland@pszjlaw.com
 jkandel@pszjlaw.com

Counsel for Richard Kipperman, the Liquidating Trustee

Order Entered on
May 8, 2014
by Clerk U.S. Bankruptcy Court
Southern District of California

### UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| In Re.<br>SAN DIEGO HOSPICE & PALLIATIVE<br>CARE CORPORATION,<br><br>Debtor. | BANKRUPTCY NO. 13-01179-MM11<br><br>TBG-1<br>Date of Hearing: June 5, 2014<br>Time of Hearing: 2:00 p.m.<br>Name of Judge: Judge Mann |
|---|---|

## ORDER APPROVING STIPULATION BY AND BETWEEN THE LIQUIDATING TRUST AND LEILANI ROSS RESOLVING MOTION FOR RELIEF FROM AUTOMATIC STAY

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through 2 or a total of 2 pages, is granted. Stipulation Docket Entry No. 857.

//

//

//

DATED: May 8, 2014

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Pachulski Stang Ziehl & Jones LLP

By:/s/ Jeffrey L. Kandel
 Attorney for ☒ Movant ☐ Respondent

CSD 1001A
DOCS_LA:277384.1 76892/003

1

American LegalNet, Inc.
www.USCourtForms.com

CSD 1001A [11/15/04] (Page 2)

**ORDER APPROVING STIPULATION BY AND BETWEEN THE LIQUIDATING TRUST AND  LEILANI
ROSS RESOLVING MOTION FOR RELIEF FROM AUTOMATIC STAY**

DEBTOR: San Diego Hospice and Palliative Care Corporation          CASE NO: 13-01179-MM11

---

The Court having considered the attached Stipulation By And Between The Liquidating Trust And Leilani Ross
Resolving Motion For Relief From Automatic Stay, (the "Stipulation") [Docket No. 857] and good cause appearing
therefor

    1.  The Stipulation is approved.

    2.  The Court retains jurisdiction to hear and determine all matters arising from or related to the
implementation, interpretation and/or enforcement of the Stipulation and this Order.

American LegalNet, Inc.
www.USCourtForms.com

CSD 1001A

DOCS_LA:277384.1 76892/003

2

Signed by Judge Margaret M. Mann May 8, 2014

1    Samuel R. Maizel (CA Bar No. 189301)
     Scotta E. McFarland (CA Bar No. 165391)
2    Jeffrey L. Kandel (CA Bar No. 115832)
     PACHULSKI STANG ZIEHL & JONES LLP
3    10100 Santa Monica Blvd., Suite 1300
     Los Angeles, CA 90067-4003
4    Telephone: 310/277-6910
     Facsimile: 310/201-0760
5    E-mail: smaizel@pszjlaw.com
           smcfarland@pszjlaw.com
6            jkandel@pszjlaw.com

7    Attorneys for Liquidating Trustee and SDH Trust
     Committee

8

               UNITED STATES BANKRUPTCY COURT

9

10         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11    In re:                         Case No.: 13-01179-MM11

12    SAN DIEGO HOSPICE & PALLIATIVE CARE
     CORPORATION,             **STIPULATION BY AND BETWEEN**
13                            **THE LIQUIDATING TRUST AND**
            Debtor and Debtor in Possession    **LEILANI ROSS RESOLVING**
14                            **MOTION FOR RELIEF FROM**
                                **AUTOMATIC STAY**
15

16                           <u>**Hearing:**</u>
                          Date:       June 5, 2014
17                           Time:       2:00 p.m.
                          Courtroom: 1
18                           Room:     218
                          Judge:     Hon. Margaret M. Mann
19

20         This Liquidating Trust (the "Liquidating Trust") of San Diego Hospice & Palliative Care

21    Corporation, the former debtor in possession (the "Debtor") in the above-captioned chapter 11 case

22    (the "Case"), through Richard M Kipperman, the Liquidating Trustee (the "Liquidating Trustee") of

23    the Liquidating Trust, and Leilani Ross ("Ross" and together with the Liquidating Trustee, the

24    "Parties"), hereby stipulate (the "Stipulation") and agree as follows in accordance with the following

25    facts and recitals:

26

27

28

                                          1

Signed by Judge Margaret M. Mann May 8, 2014

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Recitals

1

2    **WHEREAS,** on February 4, 2013, the Debtor filed a voluntary petition under chapter 11 of

3    Title 11, United States Code, commencing the Case.

4    **WHEREAS,** on September 23, 2013 (the "Confirmation Date"), the Court entered its Order

5    confirming the *First Amended Liquidating Plan for San Diego Hospice and Palliative Corporation*

6    *(June 24, 2013), as Modified on August 27, 2013 and September 18, 2013 Jointly Proposed by the*

7    *Debtor and the Official Committee of Unsecured Creditors* (the "Plan") [Docket No. 615]. The

8    Effective Date of the Plan was October 8, 2013. Pursuant to the Plan, on or after the Effective Date,

9    the Liquidating Trust succeeded to the assets of the Debtor and, *inter alia*, was charged with

10   assessing, objecting to and compromising claims asserted in the Case. Richard M Kipperman was

11   selected to serve as the Liquidating Trustee of the Liquidating Trust.

12   **WHEREAS,** on October 8, 2013, Ross filed her *Emergency Motion to (1) Modify the*

13   *Automatic Stay to Liquidate Claim in State Court or District Court and (2) for Relief From Plan*

14   *Injunction to Liquidate Claim in State Court or District Court* [Docket No. 648] (the "Emergency

15   Motion"). Thereafter, (1) on October 9, 2013, the Liquidating Trustee filed an opposition thereto

16   [Docket No.654]; (2) on November 6, 2013, the Liquidating Trustee filed a supplemental opposition

17   thereto [Docket No. 679]; and (3) on November 14, 2013, Ross filed a reply to the Liquidating

18   Trustee's supplemental opposition [Docket No.692].

19   **WHEREAS,** the hearing with respect to the Emergency Motion was originally scheduled for

20   October 10, 2013, and was continued pursuant to stipulation of the Parties [Docket No. 656] and

21   order of this Court [Docket No. 664] in order to enable the Liquidating Trustee to review any

22   policies of insurance which may apply to the claims raised by Ross and, based thereon, to engage in

23   negotiations with both the insurer and Ross to determine whether the Parties can reach a consensual

24   resolution of the issues raised in the Motion.

25   **WHEREAS,** the hearing with respect to the Emergency Motion is currently scheduled for

26   May 1, 2014 at 2:00 p.m. EDT.

27   **WHEREAS,** the Debtor's Directors and Officers Liability Policy issued by RSUI Indemnity

28   Company (the "Insurer") as Policy Number NHP633756 as a renewal of Policy Number

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

1  NHP629630 (the "Policy") contains a self-insured retention (the "Retention") of $50,000 per claim

2  at Item 4 of the Declarations (the "Retention Amount") and limits the Insurer's liability to

3  $3,000,000 at Item 3 of the Declarations (the "Policy Limit").

4      **WHEREAS,** the Liquidating Trustee and Ross agreed to toll all claims Ross asserts until ten

5  days after entry of an order resolving the Emergency Motion.

6      **WHEREAS,** the Liquidating Trustee and Ross have reached a settlement of the issues raised

7  in the Emergency Motion and the Liquidating Trustee has determined and believes that the

8  settlement set forth in this Stipulation in connection with the Motion is fair and reasonable and in the

9  best interests of creditors and beneficiaries of the Liquidating Trust.

10     **NOW, THEREFORE, IT IS STIPULATED** by the undersigned parties as follows:

11     1.     The Parties agree that Ross shall be relieved from the automatic stay of 11 U.S.C.

12  §362 and any injunction under the Plan to commence litigation outside of the Bankruptcy Court as

13  described in the Emergency Motion (the "Litigation"), subject to the following terms and conditions.

14     2.     The Liquidating Trust agrees to advance up to the full Retention Amount under the

15  Policy. If Ross obtains a recovery in the Litigation (the "Recovery"), Ross shall refund the

16  Liquidating Trust in the amount equal to the lesser of (a) one-half of the amount of the Recovery,

17  and (b) 50% of the Retention Amount (i.e. 50% of $50,000, or $25,000) (the "Retention Refund").

18  By way of illustration, (y) if the Recovery is $250,000, the maximum Retention Refund owed by

19  Ross to the Liquidating Trust shall be $25,000, and (z) if the Recovery is $30,000, the maximum

20  Retention Refund owed by Ross to the Liquidating Trust shall be $15,000.  If Ross receives no

21  Recovery, Ross shall not be obligated to pay the Retention Refund.

22     3.     Any claim by Ross against the above-captioned chapter 11 estate and the Liquidating

23  Trust shall be limited to the amount of any judgment obtained in the Litigation (up to a maximum of

24  $2,950,000), less any amounts actually paid by the Insurer to Ross.  Other than the foregoing, Ross

25  does not assert and shall not be allowed (i) any other claim of any nature, whether secured,

26  administrative, priority or general unsecured, against the Liquidating Trust or the above-captioned

27  chapter 11 estate, or (ii) any right in or to any portion of the assets of the Liquidating Trust.

28     —

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

Signed by Judge Margaret M. Mann May 8, 2014

1      4.    The above-referenced hearing shall be taken off calendar upon entry of an order of

2 the Bankruptcy Court approving this Stipulation.

3      5.    This Stipulation shall be deemed to resolve the Emergency Motion, and any further

4 statute of limitations concerning Ross' claims are further tolled until ten days after entry of this

5 Order.

6      6.    The Liquidating Trustee and Ross each warrant that they are authorized to enter into

7 this Stipulation. Each individual signing this Stipulation on behalf of any party represents and

8 warrants that he has full authority to do so.

9      7.    This Stipulation may be signed in counterpart originals, which, when fully executed,

10 shall constitute a single original. Any signature delivered by a party by email or facsimile

11 transmission shall be deemed an original signature hereto.

12      8.    The Court shall retain jurisdiction to hear all disputes arising under this Stipulation.

14 Dated: 2 May , 2014        Dated: 4/24 , 2014

15 The Liquidating Trust      Leilani Ross

16 By: _____

17 Richard M Kipperman, Trustee

19 Approved as to form:

20 Pachulski Stang Ziehl & Jones LLP     Law Offices of Gail Higgins

22 By: /s/ Jeffrey L. Kandel      By: _____

23 Jeffrey L. Kandel      Gail Higgins

4

DOCS_LA:276016.2 76897/003

Signed by Judge Margaret M. Mann May 8, 2014

1     4.    The above-referenced hearing shall be taken off calendar upon entry of an order of

2 the Bankruptcy Court approving this Stipulation.

3     5.    This Stipulation shall be deemed to resolve the Emergency Motion, and any further

4 statute of limitations concerning Ross' claims are further tolled until ten days after entry of this

5 Order.

6     6.    The Liquidating Trustee and Ross each warrant that they are authorized to enter into

7 this Stipulation. Each individual signing this Stipulation on behalf of any party represents and

8 warrants that he has full authority to do so.

9     7.    This Stipulation may be signed in counterpart originals, which, when fully executed,

10 shall constitute a single original. Any signature delivered by a party by email or facsimile

11 transmission shall be deemed an original signature hereto.

12     8.    The Court shall retain jurisdiction to hear all disputes arising under this Stipulation.

13

14 Dated: _____, 2014        Dated: _April 24_____, 2014

15 **The Liquidating Trust**        **Leilani Ross**

16

17 By: _____    ___Leilani Ross_____

18 Richard M Kipperman, Trustee

19 Approved as to form:

20 **Pachulski Stang Ziehl & Jones LLP**    **Law Offices of Gail Higgins**

21

22 By: _____    By: _____

23 Jeffrey L. Kandel           Gail Higgins

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Signed by Judge Margaret M. Mann May 8, 2014

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (specify): **STIPULATION BY AND BETWEEN THE LIQUIDATING TRUST AND LEILANI ROSS RESOLVING MOTION FOR RELIEF FROM AUTOMATIC STAY** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On May 2, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On May 2, 2014, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 2, 2014, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 2, 2014 | Rolanda Mori | /s/ Rolanda Mori |
|---|---|---|
| Date | Printed Name | Signature |

DOCS_LA:276016.2 76892/003

Signed by Judge Margaret M. Mann May 8, 2014

- Jamie Altman   jamie.altman@procopio.com,
  kristina.terlaga@procopio.com;calendaring@procopio.com

- Everett G. Barry   ebarry@mulvaneybarry.com,
  gcurtis@mulvaneybarry.com;ktran@mulvaneybarry.com

- Steven M. Berman   SBerman@slk-law.com, sstirling@slk-law.com

- Jess R. Bressi   jbressi@mckennalong.com, ksigismondo@mckennalong.com

- Steven K. Brumer   sbrumer@brumerlawfirm.com

- Jeffrey D. Cawdrey   jcawdrey@gordonrees.com,
  ebojorquez@gordonrees.com;slemos@gordonrees.com

- William R. Cumming   cumming@cummingandassociateslaw.com

- Joseph R. Dunn   jrdunn@mintz.com,
  tlmayo@mintz.com;jadavis@mintz.com;aobrient@mintz.com;dsjohnson@mintz.com;docketing@mintz.com

- Amir Gamliel   agamliel@perkinscoie.com

- Thomas B. Gorrill   tgorrill@gorillalaw.com

- Christopher V. Hawkins   hawkins@sullivanhill.com,
  vidovich@sullivanhill.com;hill@sullivanhill.com;lriarte@sullivanhill.com;stein@sullivanhill.com;cruz@sullivanhill.com;millerick@sullivanhill.com;gubba-reiner@sullivanhill.com;ggarcia@sullivanhill.com

- Gail Higgins   ghigginse@aol.com

- Haeji Hong   Haeji.Hong@usdoj.gov, USTP.Region15@usdoj.gov,tiffany.l.carroll@usdoj.gov

- Jeffrey Isaacs   jeffrey.isaacs@procopio.com,
  gpk@procopio.com;kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com

- Jeffrey Isaacs   jeffrey.isaacs@procopio.com,
  gpk@procopio.com;kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com

- Jeffrey Kandel   jkandel@pszjlaw.com

- Jeffrey Kandel   jkandel@pszjlaw.com

- Teddy Kapur   tkapur@pszjlaw.com

- Grant C. Keary   gck@dlklaw.com

- Dean T. Kirby   dkirby@kirbymac.com,
  jwilson@kirbymac.com;rrobinson@kirbymac.com;Jacquelyn@ecf.inforuptcy.com;twright@kirbymac.com,hmares@kirbymac.com

- Andy Kōng   Kong.Andy@ARENTFOX.COM

- K Kenneth Kotler   kotler@kenkotler.com

- ·Kristin·Lamar
  klamarecf01@gmail.com, NChawlaecf01@gmail.com, IGN@NewChapterLaw.com, ecf@NewChapterLaw.com

- Lynne R. Lasry    llasry@sllbv.com

- Paul J. Leeds    leedsp@higgslaw.com, reisingc@higgslaw.com

- Paul J Leeds    leedsp@higgslaw.com, reisingc@higgslaw.com

- Samuel R. Maizel    smaizel@pszjlaw.com, mkulick@pszjlaw.com

- Samuel R. Maizel    smaizel@pszjlaw.com, mkulick@pszjlaw.com

- Scotta McFarland    smcfarland@pszjlaw.com

- Dawn A. Messick    dmessick@foley.com

- Elaine Nguyen    Elaine@wsrlaw.net, megan@wsrlaw.net;tdorros@dorroslaw.com;Blake@lawbl.com

- Elaine Nguyen    Elaine@wsrlaw.net, megan@wsrlaw.net;tdorros@dorroslaw.com;Blake@lawbl.com

- Martin W. Phillips    marty.phillips@att.net

- Gerald N. Sims    jerrys@psdslaw.com, bonniec@psdslaw.com

- Kelly Ann Mai Khanh Tran    ktran@mulvaneybarry.com, lbrayton@mulvaneybarry.com

- Matthew Troy    Matthew.Troy@usdoj.gov

- United States Trustee    ustp.region15@usdoj.gov

- Stacie Yee    stacie.yee@squiresanders.com,
  Bradley.Cosman@squiresanders.com;derek.judd@squiresanders.com

# EXHIBIT 2

Gail J. Higgins (CA Bar No. 164989)
  ghigginse@aol.com
**Higgins Law Firm**
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California  90069
Telephone: 310.409.7080
Facsimile:  310.388.1018

Bankruptcy Counsel for Leilani Ross
Creditor

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SAN DIEGO HOSPICE & PALLIATIVE CARE CORPORATION,<br><br>      Debtor and Debtor in Possession. | Case No.: 13-01179-MM11<br><br>Chapter 11<br><br>**EMERGENCY MOTION TO (1) MODIFY THE AUTOMATIC STAY TO LIQUIDATE CLAIM IN STATE COURT OR DISTRICT COURT AND (2) FOR RELIEF FROM PLAN INJUNCTION TO LIQUIDATE CLAIM IN STATE COURT OR DISTRICT COURT; DECLARATION OF LEILANI ROSS AND GAIL HIGGINS IN SUPPORT THEREOF**<br><br>Date:  [**To Be Determined**]<br>Time:  [**To Be Determined**]<br>Courtroom: 1<br>Room: 218<br>Judge: Hon. Margaret M. Mann |

The Movant, Leilani Ross ("**Movant**"), hereby requests the Court modify the automatic stay and plan injunction based upon the following:

## **NEED FOR EMERGENCY RELIEF**

Movant is a former employee of San Diego Hospice & Palliative Care Corporation ("**Debtor**") who was terminated on May 17, 2010.  The Equal Employment Opportunity Commission ("**EEOC**") issued a determination (the "**Determination**") relating to Movant's employment relationship providing: "that the evidence obtained in the [EEOC] investigation establishes reasonable cause to believe that Respondent subjected Charging Party [Movant] to disparate terms and conditions of employment based on her

race, Black, in violation of Title VII of the Civil Rights Act of 1964.  More specifically, Respondent engaged in an unlawful employment practice by denying Charging Party job assignments based on race pursuant to practice of accommodating a customer's preference for an assigned employee based on race." A true and correct copy of the Determination is attached to the Declaration of Leilani Ross ("**Ross Decl.**") as Ex. "A". The EEOC issued its Notice of Right ("**Notice**") to Sue on July 2, 2013, indicating that a suit must be filed within 90 days of Movant's receipt of the Notice.  A true and correct copy of the Notice is attached to the Ross Decl. as Exhibit "B".  Ross received the Notice from the EEOC on July 16, 2013.

On September 12, 2013, Ross filed, in *pro per,* her objection to confirmation of Debtor's Plan and proof of claim with the Court, docketed as claim 237 on the Court's claim register.  In the letter accompanying Movant's objection, Movant outlined her struggles to retain counsel, and efforts to contact the Committee of Unsecured Creditors (the "**Committee**") and other attorneys representing parties in the case.  Ross eventually made contact with Committee Counsel, Samuel Maizel, on September 19, 2013, and requested that the Committee stipulate to relief from stay.  Mr. Maizel informed Ross the Committee would consider the request, but that he would prefer she had counsel before dealing with him.  Movant was not able to retain counsel until October 7, 2013, the date of the filing of this Motion.

**Emergency Relief is essential to protect Movant's rights as a creditor.  The Notice period following a right to sue is akin to a "statute of limitations."  While Movant believes the fact the Bankruptcy Case was pending when the Notice was issued, circumstances after the Notice was rendered including the Committee's reluctance to stipulate to relief from stay unless Movant had counsel, and the extension of bar date for former employees, constitute equitable tolling and/or an extension of her right to sue beyond 90 days from receipt and/or that the filing of her claim with the Bankruptcy Court may satisfy her "claims made" suit requirement.  In addition, certain state and federal claims may not be subject to the**

2

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

1  requirement.  **Movant nonetheless seeks emergency relief from stay and the Plan**

2  **injunction so she can formally file a complaint** *on or before October 11, 2013*.  **This**

3  **will assure Movant's venue of choice and will allow her to avoid an argument that**

4  **her administrative requirements were not exhausted, her other arguments**

5  **notwithstanding.**

6         **Therefore, Movant requests a hearing on October 10, 2013.  Movant notes**

7  **that there is a hearing in this bankruptcy case on another motion for relief from**

8  **stay, [Dkt. No. 606] to proceed with employment litigation scheduled for October**

9  **10, 2013, at 3:00 P.M.  The hearing on this Motion could be heard on the same date**

10  **and time.**

11                  **FACTUAL SUMMARY**

12        San Diego Hospice & Palliative Care Corporation ("**Debtor**") filed its Chapter 11

13  petition with the Court on February 4, 2013. Movant, Leilani Ross was not scheduled in

14  the case and is a former employee of the Debtor.  On May 17, 2010, Movant was

15  terminated by the Debtor.

16        Movant intends to file a complaint based on wrongful termination, racial

17  discrimination, and other violations of California employment law. A copy of the draft

18  complaint is attached to Ross Decl. as Exhibit "C".  The draft is subject to further edits,

19  and the right to assert California causes of action based on Ross's dispute.

20        The Debtor's Disclosure Statement indicates there is an insurance policy with a

21  policy limit of $3.0 million dollars ("**Insurance Policy**"), a policy that likely covers

22  Movant's claim.

23        Leilani Ross is asking the Court to provide relief from the Plan injunction and/or

24  relief to modify the automatic stay so that she may proceed to adjudicate her claims in

25  the Superior Court.  Movant will agree to limit her recovery to the limits of the Debtor's

26  insurance policy.  She has filed a proof of claim in the case for $1,300,000.00, but such

27  claim may be more based on proof at trial [Claim 237].

28

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

The factors traditionally utilized by bankruptcy courts in granting relief from stay to allow litigation to proceed to liquidate a claim against the debtor are all present here. None of the factors weigh against granting the Movant relief from stay. A balance of the hardships tips in favor of the Movant. The factors Courts consider in granting relief from a Plan injunction are also present. Relief from stay and the plan injunction should be granted to allow the Movant to liquidate her claim.

## LEGAL ANALYSIS

**A.    11 U.S.C. Section 524(e) Permits Ross To Proceed Against Debtor To Prove Liability In Order To Recover From Insurer**

Although Debtor did not receive a discharge in this Chapter 11 case, as a liquidating debtor is not entitled to a discharge under the Bankruptcy Code, Courts have analogized a Plan injunction to an exception to discharge in 524(e) and held a Plan injunction "is not intended to and does not protect third parties such as liability insurers." *In re HNRC Dissolution Co.*, Slip Opinion Case No. 03-14261 (Bank. E.D.K.Y 2006) (overruling liquidating trustee's objection to relief from the plan injunction and relief from stay filed by a creditor seeking recovery from insurance policy). A copy of the *HNRC* opinion is appended to the Ross Decl. as Exhibit "D".

Movant's primary source of recovery on her claim will likely be the Insurance Policy given the low proposed pro rata payout to unsecured creditors estimated in the Plan. Movant seeks emergency relief from the Plan injunction and stay in the first instance to seek recovery against Insurance Policy, and to the extent not covered, against the Debtor.

**B. Cause Exists to Grant Relief from the Automatic Stay**

11 USC section 362(d)(1) provides that the Bankruptcy Court may grant relief from the automatic stay "for cause." Whether "cause" exists is determined on a case by case basis and has been found in circumstances where the interests of justice and judicial economy weigh in favor of the liquidation of state law claims against a debtor in a state forum and not in the Bankruptcy Court. *See, In re Castlerock Properties*, 781 F.2d 159,

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

1  163 (9th Cir. 1986). A variety of cases have analyzed whether or not cause exists for

2  granting relief from the automatic stay where state court litigation is pending at the time a

3  bankruptcy case is filed.

4        The burden of proof on a motion to modify the stay is a shifting one. *In re*

5  *Plumberex Specialty Products, Inc.,* 311 BR 551, 557 (Bankr.C.D. Cal. 2004). To obtain

6  relief, the movant must make an initial showing of "cause"; once established, the burden

7  shifts to the debtor to show that relief is unwarranted. *Id.; In re Sonnax Indus., Inc.,* 907

8  F.2d 1280, 1285 (2nd Cir. 1990).  While there is no bright line definition of what

9  constitutes "cause" for purposes of lifting the stay under Section 362(d)(l), courts in the

10  Ninth Circuit have granted relief to permit the conclusion of litigation of state law claims in

11  state court, particularly where the state law action involves multiple parties or is ready for

12  trial. *See, In re Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th Cir. 1990). The legislative

13  history to Section 362 makes clear Congress' intention in that regard: "[I]t will often be

14  more appropriate to permit proceedings to continue in their place of origin, where no

15  great prejudice to the bankruptcy estate would result, in order to leave the parties to their

16  chosen forum and to relieve the bankruptcy court from many duties that may be handled

17  elsewhere." *In re Plumberex Specialty Products, Inc.,* 311 B.R. 551, 557 (Bankr.C.D.Cal.

18  2004); *In re Universal Church, Inc.,* 127 B.R. 453, 455 (Bankr.E.D.Cal. 1991), *citing* H.R.

19  No. 95-595, 95th Cong., 1st Sess. (1977), p. 343, 1978 U.S. Code Cong. & Admin. News

20  5787, 6300 ("a desire to permit an action to proceed to completion in another tribunal

21  may provide cause for relief from stay").

22        Courts have devised various factors to consider in determining whether the stay

23  should be lifted to allow a creditor to continue pending litigation in a non-bankruptcy

24  forum. While the specific factors are not strictly uniform among the courts, the most oft-

25  cited list of factors comes from the *Curtis* opinion which have come to be known as the

26

27

28

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080▪ FAX 310.388.1018

"Curtis Factors." While the complete list of Curtis Factors are twelve in number[1], not all factors will be relevant in every case, nor is a court required to give each factor equal weight in making a determination. *In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 560 (C.D.Cal. 2004). An analysis of those factors that are relevant to the instant case reveals that lifting the stay is both appropriate and warranted.

Not every one of the Curtis Factors applies and, therefore, need be considered in a given matter. In this case factors 3, 4, 6, 8, and 9 are neutral and/or inapplicable. The other factors support granting relief from stay so the Movant's claim can be liquidated.

### 1. Relief Should Result In Complete Resolution of the Issues.

The Movant has agreed to limit her recovery to the limits of the insurance policy the Debtor carried for employment practices. Based upon the sum set forth in the Movant's proof of claim, that claim is well within the $3.0 Million limit of the Debtor's policy. Relief from the stay will result in the liquidation of Movant's claim and payment from the insurance proceeds. If the claim is determined not to be covered under the policy for Debtor's employment practices, the state court will nonetheless have assisted

---

1. The Curtis Factors include: (1) Whether the relief requested will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interests of judicial economy and expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) The impact of the stay on the parties and the "balance of hurt." *In re Curtis*, 40 B.R. 795,799-800 (Bankr. D.Utah 1984).

HIGGINS LAW FIRM
1017 N. La Cienega Blvd., Ste. 103
West Hollywood, California 90069
TEL 310.409.7080 • FAX 310.388.1018

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

1  this Chapter 11 case by liquidating Movant's claim for purposes of this Chapter 11

2  reorganization and save the bankruptcy court from doing the same.

3  **2. Relief Will Not Interfere with the Bankruptcy Case Nor Prejudice**

4  **Others.**

5  Regardless of whether the carrier defending the case ultimately should decline

6  coverage, the state court proceeding can fix the amount of the Movant's claim for

7  purposes of this Chapter 11.

8  The state court proceeding facilitates the Debtor's reorganization efforts. First, the

9  claim can be liquidated in the state court proceeding, a venue that handles employment

10  cases on a daily basis. Second, the Movant's claim is within the policy limits of Movant's

11  asserted claim, and the Movant has agreed to be bound by the limits of the policy. This

12  will not prejudice the claims or interests of the other creditors in the case.

13  **3. Debtor's Insurance Carrier has Assumed Defense of the Litigation.**

14  It is likely Debtor's insurance carrier will assume defense of the litigation given the

15  nature of the claim.

16  **4. The Stay Should Be Lifted In the Interest of Judicial Economy.**

17  Debtor may attempt to argue that Ross's filing of her claim in this Court does not

18  properly invoke her right to sue.  While Ross would disagree, she nonetheless, intends to

19  do everything necessary to preserve her claim, and doesn't want to respond to a "statute

20  of limitation defense."  The State Courts and district courts litigate employment disputes

21  more frequently than the Bankruptcy Court so judicial economy would be promoted if the

22  claim was liquidated in a non-bankruptcy venue.

23  **5. The "balance of hurt" weighs in favor of lifting the stay.**

24  If the motion is denied, then the Debtor's liability and the Movant's claim will have

25  to be determined in this bankruptcy court.  Movant will have to retain bankruptcy and

26  Employment counsel and she has no funds to retain employment counsel at the present

27  time.

28

GHIGGINS\ 3376771.1

7

## CONCLUSION

Based upon the factors set forth in this motion, the Movant requests that relief from the plan injunction and relief from automatic stay be granted so the Movant can proceed in state court on her pending wrongful termination case.

DATED:  October 7, 2013                    **HIGGINS LAW FIRM**

/s/ Gail J. Higgins
Gail J. Higgins
Bankruptcy Counsel for Leilani Ross,
Creditor

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

# DECLARATION OF LEILANI ROSS

## DECLARATION OF LEILANI ROSS

I, Leilani Ross, declare and state as follows:

1.      I am over the age of eighteen and a resident of Los Angeles County.  I am a a former employee of San Diego Hospice & Palliative Care Corporation ("**Debtor**") and I was terminated on May 17, 2010.  The Equal Employment Opportunity Commission ("**EEOC**") issued a determination (the "**Determination**") providing: "that the evidence obtained in the [EEOC] investigation establishes reasonable cause to believe that Respondent subjected Charging Party [Movant] to disparate terms and conditions of employment based on her race, Black, in violation of Title VII of the Civil Rights Act of 1964.  More specifically, Respondent engaged in an unlawful employment practice by denying Charging Party job assignments based on race pursuant to practice of accommodating a customer's preference for an assigned employee based on race."  Exhibit "A" is a true and correct copy of the Determination.

2.      The EEOC issued its Notice of Right ("**Notice**") to Sue on July 2, 2013, indicating that a suit must be filed within 90 days of Movant's receipt of the Notice.  Exhibit "B" is a true and correct copy of the Notice.  I received the Notice from the EEOC on July 16, 2013.

3.      On September 12, 2013, I filed, in *pro per*, my objection to confirmation of Debtor's Plan and proof of claim with the Court, docketed as claim 237 on the Court's claim register.  In the letter accompanying my objection, I outlined my struggles to retain counsel, and efforts to contact the Committee of Unsecured Creditors (the "**Committee**") and other attorneys representing parties in the case.  I eventually made contact with Committee Counsel, Samuel Maizel, on September 19, 2013, and requested that the Committee stipulate to relief from stay.  Mr. Maizel informed me that the Committee would consider the request, but that he would prefer I retained counsel.  He said I should make attempts to retain counsel.  I retained counsel on October 7, 2013.

4.      Emergency Relief is essential to protect my rights as a creditor.  As to certain of my claims, there is a four-year statute of limitation.  As to other claims, I would

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080 • FAX 310.388.1018

1  prefer to get them filed with a State or Federal Court prior to the expiration of the 90 day

2  period. While I believe the fact the Bankruptcy Case was pending when the Notice was

3  issued, that there has been an extension for filing claims agreed by Debtor and former

4  employees, and circumstances after the Notice was rendered including the Committee's

5  reluctance to stipulate to relief from stay unless I had counsel, constitute equitable tolling

6  of my right to sue and/or that the filing of my claim with the Bankruptcy Court may satisfy

7  my "claims made" suit requirement. I nonetheless seek emergency relief from stay and

8  the Plan injunction so that I can formally file a complaint *on or before October 11, 2013*.

9  This will assure my venue of choice and will allow me to comply with the EEOC's Notice,

10  my other arguments notwithstanding. Therefore, I request a hearing on October 10,

11  2013. An emergency hearing will protect against immediate and irreparable injury to me.

12      5.    The Debtor San Diego Hospice & Palliative Care Corporation ("**Debtor**")

13  filed its Chapter 11 petition with the Court on February 4, 2013. I was not scheduled in

14  the case and am a former employee of the Debtor. On May 17, 2010, I was terminated

15  from the Debtor's employ.

16      6.    I intend to file a complaint based on wrongful termination, racial

17  discrimination, and other violations of California employment law. A copy of the draft

18  complaint is attached hereto as Exhibit "C". I am still in the process of editing this

19  complaint with counsel, and reserve the right to add or delete allegations, but such is

20  provided so the Court can understand the nature of my claim.

21      7.    The Debtor's Disclosure Statement indicates there is an insurance policy

22  with a policy limit of $3.0 million dollars ("**Insurance Policy**"), a policy that likely covers

23  my claim.

24      8.    I am asking the Court to provide relief from the Plan injunction and to

25  modify the automatic stay so that I may proceed to adjudicate my claims in the Superior

26  Court and I will agree to limit my recovery to the limits of the Debtor's insurance policy. I

27  have filed a proof of claim in the case for $1,300,000.00, but this does not include all my

28  claims, and my total claim may be more based on proof at trial [Claim 237].

1   I declare under penalty of perjury under the Laws of the United States that the

2   foregoing is true and correct.

3   EXECUTED ON OCTOBER 7, 2013, AT EL CAJON, CALIFORNIA.

4

5

6                                                   Leilani Ross

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7090 • FAX 310.388.1018

# Exhibit A

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Diego Local Office

555 West Beech Street, Suite 504
San Diego, CA 92101
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
San Diego Status Line: (866) 408-8075
San Diego Direct Dial: (619) 557-7235
TTY (619) 557-5748
FAX (619) 557-7274

Charge No.: 488-2010-00734

Charging Party

Leilani Ross
228 Roanoke Road
El Cajon, CA 92020

Respondent

San Diego Hospice
404 Camino del Rio South
Suite 200
San Diego, CA 92108

## DETERMINATION

Under the authority vested in me by the Equal Employment Opportunity Commission (EEOC), I issue the following determination as to the merits of the subject charge filed under the Title VII of the Civil Rights Act of 1964, as amended. All requirements for coverage have been met.

Charging Party alleged that she was subjected to Respondent's discriminatory employment practice by denying her job assignments based on her race, Black, pursuant to a practice of accommodating customer preference for non-Black Nurses (LVNs). Charging Party further alleged that she was discharged in retaliation for having complained about this discriminatory employment practice.

Respondent denies Charging Party's allegations.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent subjected Charging Party to disparate terms and conditions of employment based on her race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended. More specifically, Respondent engaged in an unlawful employment practice by denying Charging Party job assignments based on race pursuant to a practice of accommodating a customer's preference for an assigned employee based on race.

No finding is made with respect to the retaliatory discharge allegation.

Respondent is reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigation is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

**LETTER OF DETERMINATION**
Leilani Ross v San Diego Hospice
EEOC No.: 488-2010-00734
Page 2 of 2 Pages

Upon finding there is reasonable cause to believe that violations have occurred the Commission attempts to eliminate the alleged unlawful practices by informal methods of conference, conciliation and persuasion. Having determined that there is reasonable cause to believe that the charge is true, the Commission now invites the parties to join with it in a collective effort toward a just resolution of this matter. The confidentiality provisions of Section 107 of the Title VII and Commission Regulations apply to information obtained during conciliation.

Where the Respondent declines to enter into settlement discussions or the Commission is unable to secure a settlement acceptable to the District Director, the Director shall so inform the parties in writing and advise them of the court enforcement alternative available to the EEOC.

A representative of the Commission will be in contact with you to determine your interest in participating in conciliation discussions.

On Behalf of the Commission:

8/13/13
_____
Date

_____
Marla Stern-Knowlton, Director
San Diego Local Office.

# Exhibit B

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Diego Local Office

555 W. Beech Street, Suite 504
San Diego, CA 92101
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
San Diego Status Line: (866) 408-8075
San Diego Direct Dial: (619) 557-7249
TTY (619) 557-5748
FAX (619) 557-7274
Website: www.eeoc.gov

Ms. Leilani Ross
228 Roanoke Road
El Cajon, CA 92020

Re: Leilani L. Ross v. San Diego Hospice
EEOC Charge No.: 488-2010-00734

Dear Ms. Ross:

The Equal Employment Opportunity Commission has determined that efforts to conciliate this charge as required under Title VII of the Civil Rights Act of 1964, as amended, have been unsuccessful. This letter constitutes the notice required by 1601.25 of the Equal Employment Opportunity Commission's Procedural Regulations which provides that the Commission shall notify the parties in writing when it determines that further conciliation efforts would be futile or non-productive.

No further efforts to conciliate this case will be made by the Equal Employment Opportunity Commission. The Commission has determined that it will not bring a lawsuit. The issuance of the enclosed Notice of Right to Sue concludes the processing of your charge by the Commission. If you decide to sue, you must file a complaint in Federal District Court within 90 days from the receipt of the Notice of Right to Sue.

On Behalf of the Commission

7/2/13

Date

Marla B. Stern-Knowlton, Director
San Diego Local Office

cc:
Ms. Shauna L. Sinnott
ANDREWS LAGASSE BRANCH & BELL LLP
4365 Executive Drive, Ste. 950
San Diego, CA 92121

EEOC Form 161-A (11/09)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To: | Leilani L. Ross<br>228 Roanoke Road<br>El Cajon, CA 92020 | From: | San Diego Local Office<br>555 W. Beech Street<br>Suite 504<br>San Diego, CA 92101 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2010-00734 | Marla B. Stern-Knowlton,<br>Local Office Director | (619) 557-7284 |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Marla B. Stern-Knowlton,
Local Office Director

7/2/13
*(Date Mailed)*

cc:  Dana Bryce
     Human Resources Director
     **SAN DIEGO HOSPICE**
     4311 3rd Avenue
     San Diego, CA 92103

Ms. Shauna L. Sinnott
**ANDREWS LAGASSE BRANCH & BELL LLP**
4365 Executive Drive, Ste. 950
San Diego, CA 92121

# Exhibit C

Gail J. Higgins (CA Bar No. 164989)
*ghigginse@aol.com*
**Higgins Law Firm**
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
Telephone: 310.409.7080
Facsimile:  310.388.1018

Counsel To Plaintiff
Leilani Ross

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| In re | Case No.: |
| LEILANI ROSS, | **PLAINTIFF LEILANI ROSS'S COMPLAINT FOR DAMAGES BASED ON:** |
| Plaintiff, | |
| v. | **(1)TITLE VII OF THE CIVIL RIGHTS ACT (2) 42 U.S.C. SECTION 1981** |
| SAN DIEGO HOSPICE & PALLIATIVE CARE CORPORATION, a California Corporation, SAN DIEGO HOSPICE FOUNDATION, Inc., a California Corporation, and DOES 1-10, | |
| Defendants. | **JURY TRIAL DEMANDED** |

*(sidebar)* **HIGGINS LAW FIRM**
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\ 3376771.1

1

Plaintiff Leilani Ross ("**Ross**" or "**Plaintiff**"), by and through counsel, hereby files the following Complaint and Jury Demand ("**Complaint**").

### PRELIMINARY STATEMENT

1.      This is an action for an award of damages, punitive damages, attorneys' fees and other relief on behalf of former employee Plaintiff Leilani Ross against San Diego Hospice & Palliative Care, Corporation ("**SDHP**") and other defendants (the "**Defendants**"). Mrs. Ross has been harmed by the Defendant's race discrimination, and Defendant's retaliation for her complaints about race and age discrimination. This action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), et seq. ("**Title VII**"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("**Section 1981**"), and the California Fair Employment and Housing Act et seq. ("**FEHA**").

### JURISDICTIONAL STATEMENT

2.      This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

3.      The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

4.      This Court has supplemental jurisdiction over California state law claims pursuant to 28 U.S.C. § 1367.

5.      All conditions precedent to the institution of this suit have been fulfilled. On July 2, 2013, the United States Equal Employment Opportunity Commission ("**EEOC**") issued Notice of the Right to Sue to Plaintiff. Plaintiff received the Notice on July 16, 2013. This action has been filed within 90 days of Plaintiff's receipt of said Notice. With respect to the FEHA claims herein, a Complaint in this matter was filed with the California Human Relations Commission more than one year ago.

2

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080 • FAX 310.388.1018

## VENUE

6.    This action properly lies in the Southern District of California, pursuant to 29 U.S.C. § 1391(b) because the claim arose in this judicial district.

7.    Venue in the Southern District of California is also authorized pursuant to 42 U.S.C. § 2000(e), et seq. 1.

## PARTIES

8.    Plaintiff Leilani Ross is a forty-one (41) year-old African-American female who resides in San Diego County.

9.    Defendant SDHP was and is a corporation duly organized and existing under state law that acted as Plaintiff's employer that does significant business within the Commonwealth of California and is engaged in an industry affecting commerce.

10.    SDHP is located at 4311 Third Avenue, San Diego, CA 92103, ("**San Diego Facility**").

11.    At all times material hereto, Defendant SDHP employed more than five hundred individuals.

12.    At all times material hereto, Defendant SDHP acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

13.    At all times relevant hereto, Defendant SDHP acted as a "person" and "employer" within the meaning of one or more of the anti-discrimination laws at issue in this suit and is accordingly subject to the provisions of said laws.  At all times relevant hereto, the San Diego Hospice Foundation, Corporation (the "**Foundation**") is liable for the allegations herein because Foundation was a joint employer with SDHP, operated an integrated enterprise with SDHP, there was an interrelation of operations between Foundation and SDHP, there was centralized control of labor relations between Foundation and SDHP, there was common management with SDHP and the Foundation, there was common ownership and financial control between SDHP and the Foundation.

GHIGGINS\ 3376771.1

3

1  As for the California claims, Plaintiff also asserts the Foundation and SDHP were alter

2  egos, and alleges this for the purpose of this Complaint.

3      14.    At all times relevant hereto, Plaintiff Leilani Ross was an "employee" of

4  SDHP within the meaning of the anti-discrimination laws at issue in this suit  and is

5  accordingly entitled to the protections of said laws.

6  ## FACTS

7      15.    Mrs. Ross began her employment with the Defendants when she was hired

8  on or about June 9, 2009 as an nurse, in the crisis care unit.

9      16.    At SDHP's San Diego facility, where Mrs. Ross was most recently

10  employed, there is a culture of racial bias.

11      17.    That SDHP fosters and approves of a racially biased atmosphere is

12  supported by the fact that the overwhelming majority of its employees in its San Diego

13  Facility are Caucasian.

14      18.    During her employment, Mrs. Ross would receive unfavorable assignments,

15  shifts, and tasks in the course of her employment.   Defendants would change her

16  assignments, shifts, and task, spontaneously and without explanation to Mrs. Ross.

17      19.    On or about April of 2010, Ross learned of racially discriminatory policies

18  and practices SDHP had enacted.  Specifically, she was told by SDHP not to show up for

19  a shift with no explanation. Defendants had a preference for "white" care providers and

20  attendants.  Mrs. Ross also learned from schedules of SDHP that one of the caucasion

21  outpatients of SDHP advised SDHP, "don't send that ni&*er here [for treatment]."  On or

22  about this same time, Ross learned that SDHP had created a physical ledger book and

23  other practices, acts and procedures whereby the racial preference of patients for white

24  caregivers was set forth for schedulers and other staff of SDHP.  The purpose of this

25  Book was to make sure African Americans were not assigned to certain shifts, tasks, and

26  assignments based on the racial preference of the patient.

27      20.    On or about May 3, 2010, Ross and a group of employees requested a

28  meeting with supervisor Kimberly Sendra ("**Sendra**") to discuss and report the

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\ 3376771.1                                      4

1 Defendants' discriminatory practices. Carol Lovci intervened and advised Ross and other
2 employees they should meet individually with management. Human resources of SDHP
3 advised Ross and certain employees that a meeting would be held on May 11, 2010 to
4 discuss the practices that Ross had reported to Ms. Sendra.

5      21.    On May 11, 2010, Ross, caucasion co-employee Erica Cartier, African
6 American Tracy McKay, hispanic co-employee Jennifer Leos, Sendra, and Human
7 Resource Representative Attie Smith ("**Smith**"), and an additional employee participated
8 in the meeting. During the meeting Sendra and Smith advised the employees including
9 Ross, there was nothing Defendants could do about the racial preferences of patients for
10 caucasion nurses, that Defendants had to assign tasks and shifts based on patient
11 preferences, and that Defendants would take no action to alter the *status quo.*

12      22.    On May 10, 2010 Ross reported her anxiety that the racial discrimination
13 had caused, and SDHP's failure to address the discrimination.

14      23.    SDHP responded with an email that it "didn't care" Ross was not feeling
15 well, and that she was required to report to work. Ross presented Defendant's with a
16 Doctor's note verifying her illness.

17      24.    On May 17, 2010, Ross was terminated.

18      25.    On June 10, 2010, Ross filed a claim with the Equal Employment
19 Opportunity Commission, assigned charge number 488-2010-00734. On August 23,
20 2010, SDHP claimed termination based on "misconduct related to most recent work" and
21 appealed Ross' entitlement to unemployment benefits.

22      26.    SDHP appealed UE benefits awarded to Ross. SDHP lost the appeal, and
23 the panel affirmed Ross' right to UE benefits.

24      27.    On March 13, 2013,The Equal Employment Opportunity Commission
25 ("**EEOC**") issued a determination (the "**Determination**") providing: "that the evidence
26 obtained in the [EEOC] investigation establishes reasonable cause to believe that
27 Respondent subjected Charging Party [Movant] to disparate terms and conditions of
28 employment based on her race, Black, in violation of Title VII of the Civil Rights Act of

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

1964. More specifically, Respondent engaged in an unlawful employment practice by
denying Charging Party job assignments based on race pursuant to practice of
accommodating a customer's preference for an assigned employee based on race." The
right to sue letter is appended hereto as Exhibit "A".

28.    During her employment with SDHP, Mrs. Ross performed her duties in
a satisfactory and professional manner.

29.    Despite her consistent performance, Mrs. Ross was targeted by SDHP,
which displayed a bias toward Mrs. Ross on the basis of her race.

30.    Ross was sent to the furthest locations away from her home based on her
race, and the patient preferences for non- African American nurses.

31.    That Mrs. Ross's race was considered by SDHP in subjecting Ms. Ross to
unwarranted criticism and discipline, in failing to promote her or give her periodic raises
despite her qualifications is evident from SDHP's actions.

32.    Mrs. Ross was retaliated against by SDHP as a result of her complaints,
both written and verbal, regarding discrimination and harassment.

33.    In addition to the actions and inactions of SDHP alleged herein, SDHP's
policies, practices, and customs have a disparate impact on African-American workers.

34.    Specifically, SDHP's policies with respect to promotion and discipline have
a disparate impact on African-American employees in that African-American employees
at SDHP are routinely denied promotions for which Caucasian employees are selected
and are subjected to more frequent and harsher discipline than their Caucasian
colleagues.

35.    Further, SDHP routinely ignores complaints of discriminatory conduct and
fails to enforce anti-discrimination, anti-harassment, and/or anti-retaliation policies.

36.    The treatment alleged herein that Mrs. Ross was subjected to by SDHP
was motivated by discrimination on the basis of race, and in retaliation
for Plaintiff's complaints about discrimination.

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

37.    SDHP discriminated against and harassed Mrs. Ross in violation of Title VII of the Civil Rights Act of 1964, the FEHA, and Section 1981.

38.    Instead of appropriately investigating and addressing Plaintiff Leilani Ross's complaints of race discrimination and harassment, SDHP retaliated against Mrs. Ross in violation of Title VII of the Civil Rights Act of 1964, the FEHA, and Section 1981.

39.    SDHP was aware of the discrimination, harassment, and retaliation suffered by Mrs. Ross, but failed to take any action to address the situation or prevent further discrimination, harassment, and retaliation.

40.    SDHP has encouraged, tolerated, ratified and been deliberately indifferent to a series of actionable patterns, practices, and customs relating to training, supervision, investigation and discipline based on race.

41.    As a result of the race, harassment, and retaliation suffered by Mrs. Ross, Mrs. Ross suffered, and continues to suffer severe emotional distress.

42.    SDHP and its agents acted with the intent of causing, or in reckless disregard of the probability that their actions would cause Mrs. Ross severe emotional distress.

**COUNT I**

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e))**

**(As Against All Defendants)**

43.    Plaintiff Leilani Ross repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

44.    Based on the foregoing, Defendant SDHP engaged in unlawful employment practices in violation of Title VII.

45.    Title 2 of the CRA proscribes discrimination by a commercial entity yielding to the racial preferences of its customers.  In discriminating against, harassing, and retaliating against Mrs. Ross because of her race and because of her complaints about race discrimination and harassment, Defendant SDHP violated Title VII of the Civil Rights Act of 1964.

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\ 3376771.1

7

46.    Defendant's facially neutral policies, practices, and customs regarding promotions, discipline and the reporting and investigation of employee complaints of discrimination and harassment had a disparate impact on African-American employees in violation of Title VII.

47.    Defendant's policies, practices, and customs of engaging in an unlawful employment practice by denying Mrs. Ross job assignments based on race pursuant to practice of accommodating a customer's preference for an assigned employee based on race had a disparate impact on African-American employees in violation of Title VII.

48.    Said violations were intentional and willful.

49.    Said violations warrant the imposition of punitive damages.

50.    As the direct and proximate result of Defendant's violations of Title VII, Plaintiff Leilani Ross was wrongfully terminated from her employment, has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon along with and/or in addition to the damages and losses set forth herein.

51.    Plaintiff Leilani Ross is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

**COUNT II**

**(Civil Rights Act of 1866, 42 U.S.C. § 1981)**

**(As Against All Defendants)**

52.    Plaintiff Leilani Ross repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

53.    Based on the foregoing, Defendant SDHP has engaged in unlawful employment practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

54.    In discriminating against, harassing and retaliating against Mrs. Ross because of her race and because of her complaints about race discrimination and

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\3376771.1                                         8

1 | harassment, Defendant SDHP violated the Civil Rights Act of 1866, as amended, 42
2 | U.S.C. § 1981.

3 | 55. Said violations were intentional and willful.

4 | 56. Said violations warrant the imposition of punitive damages.

5 | 57. As the direct and proximate result of the Defendant's violation of Section
6 | 1981, Plaintiff Leilani Ross was wrongfully terminated from her employement, has
7 | sustained a loss of earnings, severe emotional and psychological distress, loss of self-
8 | esteem, loss of future earning power, as well as back pay, front pay, and interest due
9 | thereon along with and/or in addition to the damages and losses set forth herein.

10 | 58. Plaintiff Leilani Ross is now suffering and will continue to suffer irreparable
11 | harm and monetary damages as a result of the Defendant's actions unless and
12 | until this Court grants the relief requested herein.

13 | **PRAYER FOR RELIEF**

14 | **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in
15 | her favor and against Defendant SDHP:

16 | a. Declaring that the acts and practices complained of herein violate Title
17 | VII;

18 | b. Declaring that the acts and practices complained of herein violate Section
19 | 1981;

20 | c. Declaring that the acts and practices complained of herein violate the
21 | FEHA;

22 | d. Awarding compensatory damages to Plaintiff Leilani Ross to make Plaintiff
23 | whole for all past and future lost earnings, benefits and earnings capacity which Plaintiff
24 | has suffered and will continue to suffer as a result of Defendant's conduct;

25 | e. Awarding compensatory damages to Plaintiff Leilani Ross for past and future
26 | emotional upset, mental anguish, loss of reputation, humiliation, loss of life's pleasures
27 | and pain and suffering;

28 | f. Awarding punitive damages to Plaintiff Leilani Ross;

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

1      g. Awarding liquidated damages to Plaintiff Leilani Ross;

2      h. Awarding Plaintiff Leilani Ross costs of this action together with her reasonable

3  attorneys' fees;

4      i. Awarding Plaintiff Leilani Ross such other damages as are appropriate under

5  Title VII, Section 1981, and the FEHA; and

6      j. Granting such other and further relief as this Court deems just and proper.

7

8

9                    Gail J. Higgins (CA Bar No. 164989)

10                  Counsel To Plaintiff
*Leilani Ross*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\ 3376771.1

10

# DECLARATION OF GAIL HIGGINS

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7060• FAX 310.388.1018

## DECLARATION OF GAIL J. HIGGINS

I, Gail J. Higgins, declare and state as follows:

1.     I am over the age of eighteen and my business address in West Hollywood, CA.  I am bankruptcy counsel for Movant Leilani Ross.

2.     I served the Motion For Emergency Relief From The Automatic Stay And Relief From the Plan Injunction by E-mail to counsel for Debtor and counsel to the Committee.

3.     I do not anticipate any party-in-interest would oppose this Motion but for the Debtor and/or the Committee.  Neither the Debtor, nor the Committee has indicated if it opposes the Motion.

4.     Leilani Ross brings this Motion to protect her rights as a creditor, i.e. the 90 day right to sue period that is quickly approaching.

5.     A copy of the slip opinion *In re HNRC Dissolution Co.*, Slip Opinion Case No. 03-14261 (Bank. E.D.K.Y 2006) (overruling liquidating trustee's objection to relief from the plan injunction and relief from stay) is appended hereto as Exhibit "D".

I declare under penalty of perjury under the Laws of the United States that the foregoing is true and correct.

EXECUTED ON OCTOBER 8, 2013, AT WEST HOLLYWOOD, CALIFORNIA.

/s/ Gail Higgins_____

Gail Higgins

GHIGGINS\ 3376771.1

1

# Exhibit D

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
### ASHLAND DIVISION

IN RE:

**HNRC DISSOLUTION CO. CASE NO. 02-14261**

**DEBTOR**

## <u>MEMORANDUM OPINION</u>

Several creditors of the former Debtors (collectively "the Movants") have petitioned the court for relief that will enable them to proceed with state court cases in which they seek insurance proceeds in actions for personal injury or wrongful death. They have filed the following pleadings seeking stay relief or injunctive relief:

1. Motion to Modify the § 362 Stay, filed by Barbara Boner ("Boner" and "Boner Motion");
2. Motion to Lift Stay and for Leave to Proceed to the Extent of Insurance Proceeds, filed by Brent Dotson ("Dotson" and "Dotson Motion" );
3. Motion for Relief from the Automatic Stay and for Leave to Proceed to the Extent of Insurance Proceeds Under 11 U.S.C. § 362, filed by Gary and Debra Groves ("the Groveses" and "Groves Motion");
4. Motion to Modify Automatic Stay, filed by Lawrence Edmonds Jr. ("Edmonds" and "Edmonds Motion");
5. Motions for Relief from Plan Injunction to Permit Continuation of State Court Litigation Up to the Limits of Applicable Insurance Coverage, filed by Brenda Pack ("Pack" and "Pack Motion"), Chauncy Adams Jr. and others ("the Adams movants" and "Adams Motion"), and Randy Nichols ("Nichols" and "Nichols Motion").

The court heard these motions (collectively "the Motions") and the responses to them filed by Lexington Coal Company, LLC ("LCC") and the Liquidating Trustee on June 21, 2005 (the Nichols Motion) and July 15, 2005 (all other Motions), and took them under consideration for decision.

1. <u>The Motions</u>

All the Motions seek relief from one or more of the former Debtors. Boner seeks relief to allow her to proceed with a lawsuit in a pending West Virginia state court case involving a wrongful death claim in regard to her husband. One of the defendants in that suit, Cannelton, Inc., carried liability insurance that would cover the fatal injuries suffered by her husband. Boner further states that she will not pursue damages against Cannelton, Inc. in excess of its insurance coverage.

Dotson seeks to proceed with an action in Pike Circuit Court against Sunny Ridge Mining

Company, Inc. and Sunny Ridge Enterprises, Inc., "to the extent of available insurance coverage." He

states that he is willing to waive any claim he has or might have against LCC, the bankruptcy estate and

the Liquidating Trust. The Groveses are parties to a civil action in the Circuit Court of Kanawha County,

West Virginia against Evergreen Mining Company, et al. They state that they seek relief from the stay to

"pursue their claims against the Debtors for the purpose of collecting the available insurance funds if

liability is found."

Edmonds seeks relief from the stay for the purpose of allowing him to proceed against ECC

Dissolution Company (f/k/a Eden Coal Company, f/k/a Bowie Resources Limited) "to the full extent of

any liability insurance coverage available to compensate him for damages arising out of an injury" which

occurred in August 2003 in one of the former Debtor's in Delta County, Colorado. Edmonds states that

he will only seek to recover from the Debtor's liability insurance policies, or from employees or agents of

the Debtor, and will take no action to recover against other assets of the Debtor's estate other than

through the reorganization process and pursuant to the claims procedure established by the court.

Pack, Nichols, and the Adams movants seek relief from the Plan Injunction to permit continuation

of their respective state court actions in Mingo County, West Virginia against Mountaineer Coal

Development Company. Pack commenced her litigation for wrongful death, personal injury and related

injuries regarding the injury and death of her husband, Nichols for personal injuries allegedly caused by

the Debtor, and the Adams movants for nuisance and related tort injuries. Pack, Nichols, and the Adams

movants all state that they do not seek to prosecute their state court actions in order to collect a

judgment from any of the Debtors or their respective estates.

2.    LCC's Response

LCC filed an Omnibus Objection to certain of the motions for stay relief set out above, and then

filed a Supplement to its Omnibus Objection, Objection to Motion for Relief from Plan Injunction and

Objection to Motion to Modify Automatic Stay by Lawrence Edmonds, Jr. ("the Supplement"). The

Supplement concedes that the automatic stay is no longer in effect, citing Plans § 11.4 and Bankruptcy

Code section 362(c)(2). LCC further filed an Objection to Motion for Relief from Plan Injunction to Permit

Continuation of State Court Litigation Up to the Limits of Applicable Insurance Coverage Filed by Brenda Pack and the same Objection in regard to the Adams movants. LCC appears to treat all the Motions before the court as motions for relief from the Plan Injunction.

LCC contends that granting relief from the Plan Injunction would negate its benefits for the Debtors' estates and the creditors, and that it would "amount[] to an end-run around the claims resolution procedures established in these cases." LCC also contends that the Plan Injunction prohibits the commencement or continuation ". . . . *in any manner* any action or other proceeding of any kind . . . . against the Debtors . . . ." Plans at § 11.3. LCC also cites language from Article 7 of the Plans: "On the effective date, all pre-petition lawsuits, litigation, administrative actions or other proceedings, judicial or administrative, against any of the Debtors, shall be dismissed as to the Debtors. Such dismissal shall be with prejudice to the assertion of a Claim against any of the Debtors other than by the timely filing of a proof of Claim." Sale Plan at § 7.7; Liquidating Plan at § 7.8. That section of Article 7 further provides that "[c]onfirmation of this Plan and entry of the Confirmation Order shall have no effect on any insurance coverages of the Debtors with respect to any Claim."

LCC characterizes the attempts of the Movants to obtain relief as attempts to modify the Plans solely for their own benefit, based on its contention that the Plan provisions it cites prohibit the Movants from proceeding with their state court actions. LCC argues that Bankruptcy Code section 1127(b) only allows post-confirmation plan modification prior to "substantial consummation" of the plan, and since the Plans herein are substantially consummated, the Movants cannot meet the section 1127(b) standard for plan modification.

LCC also argues that the Movants' requests for relief circumvent the claims resolution procedures established in the Plans. It points out that the claims resolution framework included deadlines for creditors of the Debtors' estates to file proofs of claim, and contends that the Movants had an obligation to timely file a proof of claim to preserve their right to pursue their claims against the Debtors. According to LCC, only Boner has filed claims in this proceeding, but contends that even her claims should not be liquidated in the context of the bankruptcy, and not in state court.

Finally, LCC argues that the Movants have no claim against an insurance company, but only a claim against a Debtor that might have entitlement to insurance coverage. LCC acknowledges that the

court could allow the requested relief and let the insurance carrier raise this point as a defense, but that

the Debtors' creditors would be affected by such action as one of the Debtors' insurance carriers has

filed a $44 million administrative expense claim that might be based on costs incurred to defend such

claims.

### 3.    The Liquidating Trustee's response

The Liquidating Trustee filed an Omnibus Objection to Motions for Relief from Stay in regard to

the Boner, Dotson, and Groves motions.  He states at Paragraph 9 therein that "to the extent that the

Plaintiffs are seeking relief from the automatic stay solely to pursue claims against an insurance policy, if

any applies, and are waiving all claims against the Debtors' estates, then the Liquidating Trustee has no

objection to relief from the automatic stay."  The Liquidating Trustee is apparently only concerned with

the possibility that the Movants might seek to assert unsecured claims against the Debtors' estates

arising out of their respective state court actions.  The Movants have all stated that they seek only to

proceed against available insurance funds and not against any of the Debtors' estates, and such action

is not at issue here.

### 4.    Discussion

LCC bases its objections to the Motions on the language of the Plan Injunction which prohibits

"commencing or continuing in any manner any action or other proceeding of any kind . . . . against the

Debtors . . . ."  Plans at § 11.3.  LCC contends that this language prohibits the Movants from going

forward with their state court actions.  The Movants all contend, however, that they do not seek to

recover from any of the Debtors, but only from any available insurance funds.  As pointed out in

memoranda attached to the Pack and Adams Motions, the applicable Debtor or Debtors are merely

nominal parties in the state court actions for the purpose of establishing liability to permit payment up to

the limits of applicable insurance.  As stated by the court in *Doughty v. Holt (In re Doughty)*, 195 B.R. 1

(Bankr. D. Me. 1996), "[A]fter discharge and upon expiration of the automatic stay, actions aimed at

collecting such an obligation from a debtor's liability insurer are permissible, even when they involve the

debtor as a nominal defendant."  *Id.* at 4.

LCC's arguments concerning the Movants' failure to file claims are addressed in *In re Coho*

Resources, Inc., 345 F.3d 338 (5th Cir. 2003), in which the court considered a creditor's request for relief

to recover from the debtor's liability insurer for personal injuries suffered while working on the debtor's

property. The insurer asserted that the creditor was barred from proceeding against the debtor's

insurers because he had failed to file a claim in the debtor's Chapter 11 case. The court stated:

> We and other courts have squarely rejected [the insurer's] argument; it is entirely
> without merit. 11 U.S.C. § 524(a) operates as an injunction against actions against a
> *debtor* subsequent to the discharge of a debt. The bankruptcy discharge and § 524
> injunction serve to give the *debtor* a financial fresh start. As a general rule, a creditor
> must file a proof of claim during the bankruptcy proceedings to preserve its claim against
> the *debtor*. If a creditor fails to file such notice, the § 524 injunction will act to shield the
> *debtor* from the creditor.
>  The discharge and injunction, however, are expressly designed to protect only the
> *debtor*, and do not affect the liability of any other entity for the debt. Accordingly, courts
> are in near unanimous agreement that § 524(e) permits a creditor to bring, and proceed
> in, an action nominally directed against a discharged debtor for the sole purpose of
> proving liability on its part as a prerequisite to recovering from its insurer. . . .
>  In short, even though [the creditor's] failure to file a proof of claim in [the debtor's]
> bankruptcy proceedings *is* a bar to continued prosecution of his claims against [the
> debtor], it does not affect his claims against non-debtors, such as general liability
> insurers. The fresh-start policy is not intended to provide a method by which an insurer
> can escape its obligations based simply on the financial misfortunes of the insured.

*Id.* at 342-43 (internal quotations and citations omitted).

    While the matter before the court involves an injunction written into the confirmed Chapter 11

Plans and not the section 524 injunction, the reasoning set out above is applicable here. The Plan

Injunction is intended to protect the Debtors from attempts of all kinds to proceed against any and all of

them; it is not intended to and does not protect third parties such as liability insurers. LCC argues that

allowing the Movants to proceed with their state court actions will disrupt the claims resolution procedure

established in the Plans and impermissibly modify the Plans. Its major concern, however, appears to be

the effect of recovery by the Movants on the Debtors' liability insurers, especially one with a very large

administrative expense claim pending in this case.

    Further, while the Plan Injunction contains no provision akin to section 524(e) which provides in

pertinent part that " . . . . discharge of a debt of the debtor does not affect the liability of any other entity

on, or the property of another entity for, such debt[,]" the Plans do provide that "[c]onfirmation of this Plan

and entry of the Confirmation Order shall have no effect on any insurance coverages of the Debtors with

respect to any Claim." Sale Plan at § 7.7; Liquidating Plan at § 7.8. It is clear that both the language of

the Plan provisions and the case law support the position of the Movants. The court will therefore by

separate order sustain the Motions and overrule LCC's objections. As set out above, the Liquidating

Trustee's objection is effectively moot.

Copies to:

Dennis M. Ostrowski, Esq.
Laura Day DelCotto, Esq.
Rhonda Jennings Blackburn, Esq.
Ellen Arvin Kennedy, Esq.
John T. Hamilton, Esq.
Spencer D. Elliott, Esq.
Andrew D. Stosberg, Esq.
Geoffrey S. Goodman, Esq.

Gail J. Higgins (CA Bar No. 164989)
    ghigginse@aol.com
**Higgins Law Firm**
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
Telephone: 310.409.7080
Facsimile:  310.388.1018

Bankruptcy Counsel for Leilani Ross
Creditor

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| In re | Case No.: 13-01179-MM11 |
|---|---|
| SAN DIEGO HOSPICE & PALLIATIVE CARE CORPORATION, | Chapter 11 |
| | **CERTIFICATE OF SERVICE** |
| Debtor and Debtor in Possession. | Date:  [To Be Determined]<br>Time:  [To Be Determined]<br>Courtroom: 1<br>Room: 218<br>Judge: Hon. Margaret M. Mann |

I, Gail Higgins, declare that on October 8, 2013, I served the following document(s):

**EMERGENCY MOTION TO (1) MODIFY THE AUTOMATIC STAY TO LIQUIDATE CLAIM IN STATE COURT OR DISTRICT COURT AND (2) FOR RELIEF FROM PLAN INJUNCTION TO LIQUIDATE CLAIM IN STATE COURT OR DISTRICT COURT; DECLARATION OF LEILANI ROSS AND GAIL HIGGINS IN SUPPORT THEREOF**

in this action by CM/ECF notice of electronic filing by causing such document(s) listed above to be served through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CM/ECF Users set forth below as identified on the service list obtained from this Court on the Electronic Mail Notice List.

I declare under penalty of perjury the foregoing is true and correct.

Dated: October 8, 2013          /s/ Gail Higgins _____

Gail Higgins

1   (Federal) BY CM/ECF NOTICE OF ELECTRONIC FILING by causing such document(s)

2   listed  above to be served through this Court's electronic transmission facilities via the

3   Notice of Electronic  Filing (NEF) and hyperlink, to the parties and/or counsel who are

4   determined this date to be registered CM/ECF Users set forth in the service list obtained

5   from this Court on the Electronic Mail  Notice List.

6

7   Jeffrey Isaacs, Esq. Jeffrey.isaacs@procopio.com

8   Samuel R. Maizel, Esq. smaizel@pszjlaw.com

9

10  Haeji Hong - Haeji.Hong@usdoj.gov
    Office of the US Trustee
11  402 West Broadway, Suite 600
    San Diego, CA 92101
12  Counsel for the United States Trustee

13  Request for Special Notice
    William R. Cumming -
14  cumming@cummingandassociateslaw.com
    CUMMING & ASSOCIATES, APC
15  3080 Bristol Street, Sixth Floor, Suite 630
    Costa Mesa, CA 92626
16  Counsel for Deliver-It

17
    Request for Special Notice
18  Matthew J. Troy
    UNITED STATES DEPARTMENT OF
19  JUSTICE CIVIL DIVISION
    1100 L. Street, N.W.
20  Room 10030
    Washington, DC 20530
21  Counsel for the United States of America

22
    Request for Special Notice
23  Jeffrey D. Cawdrey
    GORDON & REES LLP
24  101 West Broadway, Suite 2000
    San Diego, CA 92101
25  Counsel for Scripps Health

26
    Request for Special Notice
27  Matthew J. Troy - matthew.troy@usdoj.gov
    UNITED STATES DEPARTMENT OF
28

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\ 3376771.1                                    2

1  JUSTICE CIVIL DIVISION
   P.O. Box 875
2  Ben Franklin Station
   Washington, DC 20044-0875
3  Counsel for the United States of America

4
   Request for Special Notice
5  Amir Gamliel - AGamliel@perkinscoie.com
   PERKINS COIE LLP
6  1888 Century Park East, Suite 1700
   Los Angeles, CA 90067
7  Counsel for The Moyer Foundation

8
   Request for Special Notice
9  John S. Kaplan - JKaplan@perkinscoie.com
   PERKINS COIE LLP
10 1201 Third Avenue, 49th Floor
   Seattle, WA 98101-3099
11 Counsel for The Moyer Foundation

12
   Request for Special Notice
13 K. Kenneth Kotler - kotler@kenkotler.com
   LAW OFFICES OF K. KENNETH KOTLER
14 1901 Avenue of the Stars, Suite 1100
   Los Angeles, CA 90067
15
   Request for Special Notice
16 Kristin Lamar –
17 attorney@newchapterlaw.com
   NEW CHAPTER LAW GROUP
18 2121 Palomar Airport Road, Suite 110
   Carlsbad, CA 92011
19 Counsel for EPLICA, INC.

20
   Request for Special Notice
21 Martin W. Phillips
   LAW OFFICES OF MARTIN W. PHILLIPS
22 8180 E. Kaiser Boulevard, Suite 100
   Anaheim Hills, CA 92808
23 Counsel for Creditors, Covenant Care
24 Encinitas, LLC

25
   Request for Special Notice
26 Gerald N. Sims - jerrs@psdslaw.com
   Jennifer E. Duty – jduty@psdslaw.com
27 PYLE SIMS DUNCAN & STEVENSON
   A Professional Corporation
28 401 "B" Street, Suite 1500

HIGGINS LAW FIRM
1017 N. La Cienega Blvd., Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

1 │ San Diego, CA 92101-4238

2 │ Request for Special Notice
3 │ Counsel for Creditor BETA Risk
   │ Management Authority
4 │ Steven M. Berman – sberman@slk-law.com
   │ H.S. "Brad" deBeubien – bdebeaubien@slklaw.com
5 │ SHUMAKER, LOOP & KENDRICK LLP
   │ Bank of America Plaza
6 │ 101 East Kennedy Boulevard
   │ Suite 2800
7 │ Tampa, FL 33602
8 │ Counsel for Cardinal Health 110, Inc.

9 │ Request for Special Notice
   │ Christopher V. Hawkins
10│ SULLIVAN HILL LEWIN REZ & ENGEL
11│ 550 West C Street, Ste. 1500
   │ San Diego, CA 92101
12│ Counsel for Connecticut General Life
   │ Insurance Company; CIGNA HealthCare of
13│ California, Inc., and related Cigna Dental
   │ entities
14│
15│
16│
17│
18│
19│
20│
21│
22│
23│
24│
25│
26│
27│
28│

HIGGINS LAW FIRM
1017 N. La Cienega Blvd. Ste. 103
West Hollywood, California 90069
TEL 310.409.7080• FAX 310.388.1018

GHIGGINS\ 3376771.1                                    4

# EXHIBIT 3

1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10   LEILANI ROSS, an individual,              )   Civil No. 14cv2236 JAH (JMA)
                                               )
11                 Plaintiff,                  )   ORDER GRANTING IN PART AND
     v.                                        )   DENYING IN PART DEFENDANTS'
12                                             )   MOTION FOR SUMMARY
     SAN DIEGO HOSPICE &                        )   JUDGMENT [DOC. NO. 64]
13   PALLIATITVE CARE CORPORATION,             )
     a California Corporation, SAN DEIGO        )
14   HOSPICE FOUNDATION, a California          )
     Corporation RICHARD M.                    )
15   KIPPERMAN, in his capacity as             )
     liquidating trustee of the Liquidating    )
16   Trust of San Diego Hospice & Pallative    )
     Care,                                     )
17                                             )
                   Defendants.                 )
18   _____        )

19                                  BACKGROUND

20          Present before the Court is Defendants San Diego Hospice & Palliative Care's

21   ("SDHP"), San Diego Hospice Foundation's ("SDHF"), and Richard M. Kipperman's[1]

22   (collectively "Defendants") motion for summary judgment, or motion for partial summary

23   judgment.  The underlying claims were brought by a former employee, plaintiff Leilani

24   Ross("Plaintiff" or "Ross") based on allegations of unlawful employment discrimination,

25   harassment, wrongful termination and retaliation in violation of Title VII, the Civil Rights

26   Act of 1866, 42 U.S.C. § 1981, FEHA, and California Business & Professions Code.

27

28        [1] Due to bankruptcy proceedings, SDHP's assets are currently part of the liquidating trust of SDHP.
     In order to reach the trust assets, Plaintiff named the liquidating trustee, Richard Kipperman as a defendant.
     Plaintiff does not allege wrongful conduct against Mr. Kipperman.

1.     Factual Background[2]

San Diego Hospice ("SDHP") specialized in health care/support for the terminally ill.  Plaintiff became a licensed vocational nurse ("LVN") in 2006 and worked various jobs until she became a crisis care nurse at SDHP in May 2009.  See Doc. No. 64-13.  On her application, Plaintiff indicated she would accept the position and was willing to work any shift. Id.  On June 2, 2009, Plaintiff accepted and signed SDHP's offer of employment which acknowledged her at-will employment status and obligation to abide by SDHP policies and procedures.  See Doc. Nos. 14, 16.  Plaintiff worked three 12-hour shifts per week, 7 p.m. to 7 a.m.  Doc. No. 64-6 at 52.  Plaintiff was assigned to one in-home patient per shift, unless plaintiff was sent to another patient after the first died during her shift.  Id. at 54.

When Plaintiff began working at SDHP in June 2009, she attended a two-day orientation where SDHP policies, such as non-discrimination, equal opportunity, and attendance policies, were reviewed.  See Doc. Nos. 64-6 at 210-211, 64-9, 64-17, 64-18.  Under the attendance policy, an employee would receive a written counseling after three "occurrences," a final warning after four occurrences, and termination after five occurrences.  See Doc. No. 64-19.  An "occurrence" is a non-consecutive unscheduled absence, e.g. if an employee called off three days in a row for the same illness, it would be considered a single occurrence.  Doc. Nos. 64-9 at 84, 64-10 at 58.  However, if an employee called off one day, worked one day, and the called off again, this would count as two occurrences.  The occurrences were evaluated on a six-month rolling period.  Doc. Nos. 64-6 at 211, 64-9 at 109-110, 64-19.  On February 24, 2010, Plaintiff received a written counseling after she accrued six occurrences, or eight absences, during the previous three months.  Doc. No. 64-20.  Plaintiff acknowledged, in writing, that she understood the ramifications of her repeated absences and stated she would make efforts to improve her attendance in order to reduce impact on the department.  Id.

---

[2] These background facts have been taken from the parties' briefs and are largely undisputed.  Any material facts in dispute are discussed later.

In March of 2010, Kimberly Sendra became plaintiff's supervisor. See Doc. No. 44, Exh. 38. Around the time Sendra became Plaintiff's supervisor, Plaintiff heard from other employees (Shaneda Lybert and Tracy McKay) that Sendra was racist and SDHP fostered a culture of racism. Doc. No. 68-2 at ¶ 10. Plaintiff heard three patients make derogatory remarks against her on account of her race. Doc. No. 64-6 at 66. Plaintiff viewed a note on SDHP's nursing software expressing that one of plaintiff's patients and/or their family "requests no African-American staff." Id. at 71. Plaintiff was not assigned to that patient any further. Doc. 68-2 at ¶ 11.

On April 8, 2010, plaintiff received a final written warning about her absences after she called off all of her shifts for a week. Doc. No. 64-21. Plaintiff was told this was her final warning which explained that any further occurrences would lead to her termination, and Plaintiff acknowledged the warning in writing. Id. On May 5, 2010, Plaintiff applied for a transfer to another department in SDHP, but her request was denied as she was not eligible for transfer while on a final written warning. See Doc. Nos. 64-6 at 135-136, 231, 64-7 at 199, 255-254, 64-27. Nevertheless, Plaintiff called off the night of May 10, 2010 despite knowing the consequences of another unscheduled absence. Doc. No. 64-22. Plaintiff admits this was an unscheduled absence and that she exceeded the number of absences allowed under SDHP's policy. See Doc. No. 64-6 at 145-146, 155, 228. Plaintiff also admits that her absence would have been counted as an occurrence under the policy even if she submitted a doctor's note. Doc. No. 64-6 at 150.

Due to Plaintiff's absence after receipt of her final warning, Ms. Sendra decided to terminate Plaintiff and began preparing such paperwork on the evening of May 10, 2010. Doc. Nos. 64-7 at 51, 171, 241, 64-23. The next day, Sendra met with Addie Smith of SDHP's Human Resources department to discuss Plaintiff's termination at 10 a.m. Doc. No. 64-8 at 42-43. When Sendra explained her reasons for terminating Plaintiff, Smith stated plaintiff would not be terminated until after a previously scheduled staff meeting because Smith needed to review the paperwork and prepare plaintiff's final paycheck first. Id. at 263.

3

14cv2236

On May 11, 2010, after Plaintiff obtained a doctor's note with intention to take a leave of absence until May 17, 2010, she attended a staff meeting and complained that she experienced race discrimination while working for SDHP. See Doc. Nos. 64-6 at 90-91, 64-8 at 240. Plaintiff's complaints were not included in her employment file as none of the comments from the May 11th meeting were recorded. Id. Plaintiff's leave request was granted, so Sendra and Smith decided to wait until plaintiff's return to terminate her. Doc. No. 64-8 at 257. Plaintiff attempted to extend her leave but her request was denied. See Doc. Nos. 64-7 at 161, 64-26. On May 17, 2010, Smith and Sendra asked to meet with Plaintiff and notified her she was being terminated for excessive absenteeism. Doc. No. 64-6 at 152. Plaintiff admits the number of her pre-leave absences violated SDHP's attendance policy. Id. at 162. Sendra and Smith both testified they have terminated other employees for violating SDHP's attendance policy. Doc. Nos. 64-7 at 286-287, 288-290, 64-8 at 85-86.

2.    Procedural History

The instant complaint was filed in San Diego Superior Court on May 14, 2014. Doc. No. 1-3. On September 19, 2014, a notice of removal was filed in this Court. Doc. No. 1. Defendants answered the complaint on January 21, 2015. Doc. No. 17. On January 29, 2016, the Defendants filed its motion for summary judgment, or, in the alternative, motion for partial summary judgment. Doc. No. 64. On March 28, 2016, Plaintiff filed her response in opposition to defendant's motion. Doc. No. 68. On April 4, 2016, Defendants filed its reply in support of its motion for summary judgment. Doc. No. 70.

DISCUSSION

1.    Legal Standard

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. See Anderson v. Liberty Lobby,

4

14cv2236

1 Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

2 A dispute about a material fact is genuine if "the evidence is such that a reasonable jury

3 could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

4      A party seeking summary judgment always bears the initial burden of establishing

5 the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The moving

6 party may satisfy this burden in two ways: (1) by presenting evidence that negates an

7 essential element of the nonmoving party's case or (2) by demonstrating that the

8 nonmoving party failed to make a showing sufficient to establish an element essential to

9 that party's case on which that party will bear the burden of proof at trial. Id. at 322-23.

10 Where the party moving for summary judgment does not bear the burden of proof at trial,

11 it may show that no genuine issue of material fact exists by demonstrating that "there is

12 an absence of evidence to support the non-moving party's case." Id. at 325. The moving

13 party is not required to produce evidence showing the absence of a genuine issue of

14 material fact, nor is it required to offer evidence negating the moving party's claim. Lujan

15 v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps

16 Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and

17 should, be granted so long as whatever is before the District Court demonstrates that the

18 standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." Lujan, 497

19 U.S. at 885 (quoting Celotex , 477 U.S. at 323). "Disputes over irrelevant or unnecessary

20 facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific

21 Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

22      "The district court may limit its review to the documents submitted for purpose of

23 summary judgment and those parts of the record specifically referenced therein." Carmen

24 v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the

25 court is not obligated "to scour the record in search of a genuine issue of triable fact."

26 Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins.

27 Co., 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial

28 burden, summary judgment must be denied and the court need not consider the

14cv2236

1  nonmoving party's evidence. See <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60

2  (1970).

3      If the moving party meets the initial burden, the nonmoving party cannot defeat

4  summary judgment merely by demonstrating "that there is some metaphysical doubt as

5  to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S.

6  574, 586 (1986); see also <u>Anderson</u>, 477 U.S. at 252 ("The mere existence of a scintilla

7  of evidence in support of the nonmoving party's position is not sufficient."). Rather, the

8  nonmoving party must "go beyond the pleadings and by her own affidavits, or by the

9  depositions, answers to interrogatories, and admissions on file, designate specific facts

10  showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324 (quoting

11  Fed.R.Civ.P. 56(e)) (internal quotations omitted).

12      When making this determination, the court must view all inferences drawn from

13  the underlying facts in the light most favorable to the nonmoving party. See <u>Matsushita</u>,

14  475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing

15  of legitimate inferences from the facts are jury functions, not those of a judge, [when] he

16  [or she] is ruling on a motion for summary judgment." <u>Anderson</u>, 477 U.S. at 255.

17      The Ninth Circuit has previously acknowledged that declarations are often self-

18  serving because the party submitting it would use the declaration to support his or her

19  position. S.E.C. v. Phan, 500 F.3d 895, 909 (9th Cir. 2007) (holding that the district

20  court erred in disregarding declarations as "uncorroborated and self-serving"). Although

21  the source of the evidence may have some bearing on its credibility and on the weight it

22  may be given by a trier of fact, the district court may not disregard a piece of evidence at

23  the summary judgment stage solely based on its self-serving nature. See id. However, a

24  self-serving declaration that states only conclusions and not facts that would be admissible

25  evidence will not be considered. See id.; see also Villiarimo v. Aloha Island Air, Inc., 281

26  F.3d 1054, 1059 n. 5, 1061 (9th Cir. 2002) (holding that the district court properly

27  disregarded the declaration that included facts beyond the declarant's personal knowledge

28  and did not indicate how she knew the facts to be true); F.T.C. v. Publ'g Clearing House,

14cv2236

Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

<u>ANALYSIS</u>

This instant complaint alleges eight causes of action against defendants:  (1) race discrimination in violation of Title VII; (2) race discrimination in violation of 42 U.S.C. §1981; (3) two claims alleging discrimination on the bases of race, ancestry, national origin in violation of FEHA; (4) retaliation in violation of FEHA; (6) failure to prevent discrimination and harassment in violation of FEHA; (7) wrongful termination in violation of public policy; and (8) violations of the unfair competition law.  Doc. No. 1-4.

Defendants move for summary judgment as to all causes of action, in several permutations, on the following grounds: (a) Plaintiff cannot establish that similarly situated employees outside her protected class were treated more favorably; (b) Plaintiff cannot establish an actionable adverse employment action related to her work assignments; (c) Plaintiff cannot establish that the legitimate reason for her termination is pretext for unlawful race discrimination; (d) Plaintiff cannot establish a retaliatory causal link between her complaint and her termination; (e) Plaintiff cannot establish the legitimate reason for her reason for her termination is pretext for unlawful retaliation; (f) Plaintiff failed to timely exhaust her administrative remedies on her first and fourth claim; (g) Defendant's conduct is not sufficiently severe and pervasive to the level of actionable harassment; (h) Plaintiff cannot establish actionable discrimination, retaliation, and harassment; and (i) plaintiff cannot establish she was performing her job satisfactorily at the time of her termination.  See Doc. No. 64.

A.    San Diego Hospice Foundation

Defendants contend that Plaintiff cannot establish a claim against San Diego Hospice Foundation ("SDHF" or the "Foundation").   Doc. No. 64-1 at 23-25. Specifically, Defendants assert that Plaintiff cannot produce sufficient evidence to establish SDHF is liable for the alleged discrimination or retaliation as either a joint

employer or an alter ego of SDHP. Id.

Plaintiff argues that SDHF is a joint employer, integrated enterprise, or alter ego of SDHP and SDHF is liable for SDHP's conduct. Doc. No. 68-1 at 24-25. Specifically, Plaintiff spells out numerous factors the Court should consider in order to find SDHF operates as an integrated enterprise with SDHP.

In reply, SDHP opposes that plaintiff produced sufficient evidence to establish SDHF is liable for the conduct of SDHP. Doc. No. 70 at 9-10. Specifically, Defendant points out that Plaintiff does not offer any evidence to show that SDHF controlled the day-to-day employment decisions of SDHP, SDHF ever exercised any control over plaintiff's work or worksite, or satisfies any elements of alter ego.

A worker may be employed by more than one employer where each employer supervised the worker, had the power to hire, fire, or discipline the worker and supervised, monitored, or controlled the employee and her work site. E.E.O.C. v. PMA, 351 F.3d 1270, 1275 (9th Cir. 2003). Where a company and a related business "operate as an integrated enterprise," the related business is liable for discrimination. Morgan v. Safeway Stores, Inc., 884 F.2d 1211, 1214 (9th Cir. 1989). In determining whether an "integrated enterprise" exists, courts focus on the following factors: (a) interrelation of operations; (b) centralized control of labor relations; (c) common management; and (d) common ownership or financial control. Kang v. U. Lim America, Inc., 296 F.3d 810, 815 (9th Cir. 2002). The alter ego doctrine is implicated when (1) unity of interest or ownership between the individual and the corporation is such that the separate personalities of each no longer exists, and (2) an unjust or inequitable result will follow if the subject acts are treated as those of the corporation alone. Sonora Diamond Corp. v. Sup. Ct., 83 Cal.App.4th 523, 538-539 (2000). Courts consider factors such as identical equitable ownership, inadequate capitalization at formation, disregard of corporate formalities, lack of segregation or corporate records, and identical directors and officers, among others. Id. Difficulty in enforcing a judgment or collecting a debt does not constitute "injustice" for the alter ego doctrine. Id. at 539.

14cv2236

The Court finds the evidence supports a finding that SDHF and SDHP were joint employers over Plaintiff. The same individuals are members of both the SDHP board and the SDHF board. SDHP admits a unity of identity of officers and directors between SDHP and SDHF existed at relevant times, and SDHP admits there was a lack of apparent or substantive distinction between the operation of SDHP and SDHF. Importantly, SDHP and SDHF shared Human Resources personnel, so SDHF's interests were naturally encompassed in SDHP's employment decisions. New staff members of both SDHP and SDHF attended the same orientation. On these grounds, Plaintiff has demonstrated a centralized control of labor relations between SDHP and SDHF beyond mere common use of SDHP's offices and equipment in 2009-2010.

Additionally, SDHP held donations earmarked for SDHF. SDHP provided goods and services to SDHF while Plaintiff was employed by SDHP prior to its bankruptcy. SDHP used interest earned on money held by SDHF to subsidize SDHP expenses. According to a former CEO of SDHP, SDHP paid the wages of the employees of SDHF. The expenses of both SDHP and SDHF were paid by SDHP. SDHP and SDHF share the same investment firm, website, vendors, and insurers. Furthermore, SDHF grants were received by SDHP. SDHP guaranteed debts for gifts made by benefactors of SDHF.

The Court finds an interrelation of operations existed between SDHP and SDHF such that knowledge of employment decisions made by SDHP can be imputed to SDHF. Williams v. Grimes Aerospace Co., 988 F.Supp. 925, 937 (D. S.C. 1997). For that reason, the Court DENIES Defendant's motion for summary judgment as Plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to whether SDHF should be held liable as a joint employer.

B.    Race Discrimination

Defendants contend that Plaintiff cannot establish a prima facie case of discrimination. Doc. 64-1 at 14. Specifically, Defendants argue that Plaintiff's discrimination claims fails because Plaintiff's admitted absences prevent her from establishing satisfactory performance. Id. at 14-15. Also, Defendants assert Plaintiff

14cv2236

1   cannot establish that similarly situated employees outside of Plaintiff's protected class

2   were treated favorably.  Id. at 15.  In addition, Defendants argue they had a legitimate,

3   non-discriminatory reason for its actions, Plaintiff's violation of the attendance policy.

4   Id. at 16.  Defendants also argue that Plaintiff cannot establish that the legitimate reason

5   Defendants propose is pretext for race discrimination.  Id. at 18.

6        Plaintiff relies on Nigro v. Sears, Roebuck & Co., 784 F.3d 495 (9th Cir. 2015)in

7   arguing that merely Plaintiff's declaration and deposition testimony are sufficient enough

8   to survive summary judgment scrutiny.  Doc. No. 68-1 at 15-16.  Plaintiff contends she

9   can produce evidence showing her termination was motivated, at least in part, by race.

10  Id. at 16-17.  Plaintiff also argues that she established a prima facie case for discrimination

11  in that (1) Plaintiff is a member of a protected class, African American; (2) she was

12  qualified for her job, had good performance, and was liked by her peers and patients; (3)

13  her allegations of denial of shifts and termination establish an adverse employment action;

14  and (4) "a significant list of facts (as stated above) and the [Plaintiff's declaration] reflect

15  actions" were taken with a discriminatory motive.  Id. at 17.  Plaintiff contends her

16  allegations of discrimination are sufficient in demonstrating that excessive absences were

17  a pretext for race discrimination.  In addition, Plaintiff argues the timing of Plaintiff's

18  termination, her strong job performance, Defendants' departure from normal termination

19  procedures under the attendance policy all highlight pretext for race discrimination.  Id.

20  at 18-19.

21       In reply, Defendants point out that Plaintiff's subjective belief of her competence

22  cannot defeat summary judgment.  Also, Defendants argue that Plaintiff simply ignores

23  her failure to comply with her duty to comply with SDHP's attendance policy and her

24  express admission to violating the attendance policy after being counseled several times

25  about excessive absenteeism.  Doc. No. 70 at 1 (citing Doc. No. 64-6 at 241).  Defendants

26  assert that it is undisputed that Sendra and Smith have terminated non-African American

27  employees for violating SDHP's attendance policy.  Defendants contend that Plaintiff

28  only relies on inadmissible, prior hearsay statements made by Damiana Lawrence, whose

10

14cv2236

testimony in this case does not support Plaintiff's contentions.  Id. at 2-3.  In addition, Defendants argue Plaintiff failed to establish SDHP's reasons for terminating her were pretext for race discrimination.

To establish a prima facie claim for race discrimination, a plaintiff must prove that: (1) she is a member of a protected group; (2) she was performing her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  To be deemed similarly situated, for the purposes of a Title VII discrimination claim, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.  Anderson v. City and Cty. Of San Francisco, 2016 WL 946171 at *14 (N.D. Cal. 2016).

As an initial matter, it is agreed that Plaintiff is a member of a protected class as an African American.  The Court finds that Plaintiff's admission that she repeatedly violated the SDHP attendance policy, beyond the allowable limit, prevents her from establishing she performed her job satisfactorily and a prima facie case of discrimination.   Each new employee acknowledged they would abide according to the policies and procedures set by SDHP, including the attendance policy, during new employee orientation.  Plaintiff's receipt of written counseling after having six occurrences (eight absences) in a three-month period put her on notice that she was not performing her job satisfactorily.  Plaintiff acknowledged her receipt of the written counseling and stated she would improve her attendance to reduce negative impact on the department.  Plaintiff also received a final warning before her termination cautioning her that any more unscheduled absences would subject Plaintiff to immediate termination.  Accordingly, SDHP's written warnings of Plaintiff's excessive absences and her acknowledgment of the impact her excessive absences had on the department prevent Plaintiff from proving she performed her job satisfactorily.

Plaintiff was subject to an adverse employment action when she was terminated by

14cv2236

SDHP. Yet, Plaintiff does not highlight other incidents where she was subjected to an adverse employment action on account of her race. Granted, on April 25, 2010, Plaintiff was not assigned a patient on one occasion due to an administrative error and plaintiff saw a note in which a patient's family stated it did not want African American nurses. Plaintiff asserts that SDHP scheduler Damiana Lawrence advised her that SDHP had a policy to accommodate patients' race-preference requests which caused African American nurses to be scheduled last. Doc. No. 68-2 at 5 ¶ 13. However, Lawrence testified that she was not aware of a patient requesting a caregiver based on race, and she never scheduled a nurse based on a patient's racial preference. Doc. No. 70-7 at 3. Despite enduring a day where she was not assigned a patient and reading a discriminatory note, the Court finds Plaintiff's termination was the only adverse employment action she suffered.

In her opposition, Plaintiff does not put forth any examples of any similarly situated non-African Americans with compounding call-off "occurrences" who somehow were not fired. It is unclear what evidence Plaintiff relies on to prove non-African American employees were treated more favorably. Accordingly, the Court finds Plaintiff has not demonstrated specific nor substantial evidence that similarly situated employees outside the protected class were treated more favorably.

Although Plaintiff's burden of presentation is low at this point of the litigation, Plaintiff's admissions about her absences corroborate the legitimate, non-discriminatory reason given by Defendants for terminating Plaintiff. Plaintiff does not rebut SDHP's ability to exercise its right to make a business decision, which permissibly can be foolish, trivial, or baseless, as long if it honestly believes in its reason for termination. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002). Plaintiff has not shown that SDHP did not honestly believe its proffered reasons for disciplining her. Id.; Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028-29 n. 6 (9th Cir. 2006). Since Plaintiff concedes of her absenteeism and lacks evidence showing a difference in treatment among non-protected class members with excessive absences, Plaintiff is

14cv2236

foreclosed from making a prima facie case of race discrimination.  Therefore, the Court

GRANTS Defendant's motion for summary judgment as to the race discrimination claims.

C.    Retaliation

Defendants argue that Plaintiff similarly cannot establish a prima facie case for

retaliation because she cannot establish a causal link between her complaints and

termination. Doc. No. 64-1 at 19-20. Specifically, Defendants assert Plaintiff's claim fails

because she admits to engaging in the conduct which led to her termination, absteeism,

and the decision to fire Plaintiff was made before decision makers had knowledge of her

discrimination complaints.  Id. at 20.

Plaintiff argues she established FEHA retaliation as she engaged in statutorily

protected activity by complaining about the policy of accommodating a customer's

preference for a non-minority caregiver. Doc. No. 68-1 at 21.  Plaintiff contends her claim

is proven in that she was fired after complaining of race discrimination and the timing

shows the causal connection.  Id. at 22.

In reply, Defendants argue that Plaintiff does not dispute that Sendra decided to

terminate her and notified HR of the decision before the May 11 meeting.  Doc. No. 70

at 6.  Smith, the HR personnel Sendra notified, testified that HR's role was simply to

ensure all the paperwork was submitted in support of the termination and the delay in

terminating plaintiff was merely formality to get Plaintiff's exit paperwork ready.  See Doc.

No. 64-10 at 41-42 (Smith Deposition).  Defendants assert that timing alone cannot

establish pretext.  Loggins v. Kaiser Permanente Int'l, 151 Cal.App.4th 1102, 1112-1113

(2007).

In a Title VII unlawful retaliation claim, a plaintiff must first establish a prima facie

case of retaliation by showing she (1) engaged in protective activity, (2) was thereafter

subjected to adverse employment action, and (3) that causal link existed between the two.

Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).  An employee's formal or

informal complaints to a supervisor regarding unlawful discrimination is a "protected

activity" and adverse actions taken against the employee after such complaints may

13

14cv2236

constitute retaliation.  Washington v. California City Correction Ctr., 871 F.Supp.2d 1010, 1028 (E.D. Cal. 2012); see California Fair Emp't and Hous. Comm'n v. Gemini Aluminum Corp., 122 Cal.App.4th 1004, 1018 (2004) (finding "informal complaints to management about discriminatory employment practices are considered sufficient opposition to trigger the prohibition against retaliation").  To show a casual link between protected activity and retaliation by an employer, plaintiff must present evidence sufficient to raise an inference that her protected activity was a likely reason for adverse action and essential to the causal link determination is the employer's awareness of Plaintiff's protected activity.  Cohen, 686 F.2d at 797.  However, when an employer makes an employment decision before being aware of an employee's engagement in protected activity, the causal link between the decision and protected activity is broken.  See Cohen, 686 F.2d at 797.

The Court finds that Plaintiff did not engage in protected activity until she complained of racially discriminatory treatment at the May 11th meeting.  Plaintiff however never reported claims of race discrimination directly to her supervisor or Human Resources personnel before that date.  Plaintiff's complaints lodged during the May 11th meeting constitute protected activity because Plaintiff informally yet directly complained of unlawful race discrimination to her supervisor involved.  Kimberly Sendra, Plaintiff's supervisor, recalled hearing of Plaintiff's complaints of race discrimination through another employee but was unclear about when Plaintiff's complaints began.  The Court will not construe disgruntled rumblings amongst coworkers as protected activity under FEHA analysis as no complaint, formal or informal, was made directly to a supervisor.  Plaintiff undoubtedly suffered an adverse employment action when she was terminated from SDHP for excessive absenteeism. However, Plaintiff has not provided a causal link between her informal complaints at the staff meeting and her termination.

Plaintiff points out the time and manner of her termination suggests retaliation on the part of SDHP.  Specifically, Plaintiff argues that terminating her six days after the May, 11, 2010 meeting without executive approval for her termination is indicative of

14cv2236

unlawful retaliation. Plaintiff contends her termination for excessive absenteeism was merely pretext for unlawful retaliation. Nonetheless, the attendance policy states an employee may be terminated for excessive absences and/or attendance patterns that negatively impact operations of the department…" Ms. Bryce testified there was no requirement a VP approve a termination and the disciplinary form should be modified to signify "or" rather than "and." In fact, Carol Lovci, a SDHP VP, also testified and agreed with Plaintiff's termination for excessive absenteeism in violation of the attendance policy. Ms. Bryce testified that if HR learned that Plaintiff's termination was based on her protected complaints, then an investigation would have been completed before terminating Plaintiff. However, Ms. Smith, the relevant HR representative, only postponed the termination in order to organize Plaintiff's termination documents and final paycheck. Ms. Smith testified that HR's review and approval was merely a formality as Ms. Sendra informed HR of her decision to terminate Plaintiff before the May 11 staff meeting. Moreover, Plaintiff has not demonstrated her termination due to excessive absenteeism was pretext for unlawful retaliation as she admits she exceeded the allowable absences limit under the policy. At this point, the Court finds Plaintiff's retaliation claim lacks evidence of a causal link between her race discrimination complaints and the decision to terminate Plaintiff. Thus, the Court GRANTS summary judgment as to the retaliation claim.

Consequently, Plaintiff's failure to prevent, wrongful discharge, unfair competition law claims premised on Plaintiff's race discrimination and retaliation claims fail.

D.    Harassment

Defendant argues that Plaintiff failed to exhaust her administrative remedies with respect to her harassment claim. Notwithstanding the jurisdictional bar to civil action, Defendants contend that Plaintiff did not sufficiently allege actionable harassment as the conduct here is neither severe nor pervasive.

Plaintiff asserts she established harassment because SDHP's lack of action and its conduct in handling her complaints caused emotional distress and altered the conditions

of her employment.  Doc. No. 68-1 at 20-21.  Also, Plaintiff claims the findings by the EEOC investigation should be used in determining whether harassment existed here.  Id. at 21.

In reply, Defendants point out that Plaintiff admits her EEOC charge alleges no claim of harassment.  Doc. No. 20 at 8.  Also, Defendants highlight that Plaintiff does not specifically identify any conduct that rises to the level of actionable harassment.  Id.

Under FEHA and Title VII, a plaintiff must file an administrative complaint with either the Department of Fair Employment and Housing (DFEH) or the Equal Employment Opportunity Commission (EEOC) before filing suit.  Cal. Gov. Code § 12960(b), 42 U.S.C. § 2000e-5(f)(1).  In a race harassment case, a plaintiff must show she was subject to unwelcome conduct, and such conduct was sufficiently severe or pervasive to alter the conditions of her employment and create a hostile working environment.  Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998).  In determining whether conduct is sufficiently severe or pervasive, courts will consider: (1) nature of the conduct; (2) the frequency of encounters; (3) the number of days over which the conduct occurred; and (4) the context in which the harassing conduct transpired.  Etter v. Veriflo Corp., 67 Cal.App.4th 457, 465 (1998) (citations omitted).

Here, Plaintiff does not identify any severe or pervasive conduct towards her on the part of SDHP staff based on her race which created a hostile work environment.  Plaintiff never reported to SDHP management any alleged harassing conduct by a patient until May 11th.  In view of the fact that Plaintiff did not work another day after May 11, her work environment was not actionably hostile.  The only conduct Plaintiff alleges is the clerical error made where the scheduling clerk believed Plaintiff had taken time off and did not schedule her and one instance when Ms. Sendra contacted Plaintiff about a patient's complaint.  The Court finds neither event sever nor pervasive enough to establish a prima facie case for harassment.  After Plaintiff's E.E.O.C. investigation, Dana Bryce, VP of HR at SDHP, admitted that Plaintiff expressed concerns about being sent to families that were prejudiced.  However, the Court does not have the results of the E.E.O.C. investigation

14cv2236

1  or any other evidence before it to infer Plaintiff suffered harassment while working at

2  SDHP.  Accordingly, the Court finds Plaintiff has not presented sufficient evidence to

3  establish a harassment claim in that the evidence does not demonstrate she suffered severe

4  and pervasive conduct.  Therefore, the Court GRANTS defendants' motion for summary

5  judgment as to the harassment claim.

6                          <u>CONCLUSION AND ORDER</u>

7          For the foregoing reasons, IT IS HEREBY ORDERED that:

8      1.    Defendants SDHP, SDHF, and Kipperman's motion for summary judgment
            regarding joint employer liability (doc. no. 64) is DENIED; and

9      1.    Defendants SDHP, SDHF, and Kipperman's motion for summary judgment
10          as to race discrimination (doc. no. 64) is GRANTED; and

11     2.    Defendants SDHP, SDHF, and Kipperman's motion for summary judgment
            as to retaliation (doc. no. 64) is GRANTED; and

12     3.    Defendants SDHP, SDHF, and Kipperman's motion for summary judgment
13          as to harassment (doc. no. 64) is GRANTED.

14

15  Dated:     May 23, 2016

16

17  _____

18  JOHN A. HOUSTON
    United States District Judge

19

20

21

22

23

24

25

26

27

28

17

14cv2236

1  Jeffrey L. Kandel (CA Bar No. 115832)
   PACHULSKI STANG ZIEHL & JONES LLP
2  10100 Santa Monica Boulevard, 13th Floor
   Los Angeles, CA  90067
3  Telephone: 310/277-6910
   Facsimile: 310/201-0760
4  Email: jkandel@pszjlaw.com

5
   Attorneys for Liquidating Trustee and SDH Trust
6

7

8               **UNITED STATES BANKRUPTCY COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 In re:                                    Case No.: 13-01179-MM11

12 SAN DIEGO HOSPICE & PALLIATIVE CARE        Chapter 11
   CORPORATION,
13                                            **PROOF OF SERVICE**
                     Debtor.
14

15

16

17         I, Rolanda L. Mori, declare as follows:

18         I am a resident of and employed in the city and county of Los Angeles, State of California.  I
   am over the age of 18 and not a party to the within action; my business address is 10100 Santa
19 Monica Blvd., 13th Floor, Los Angeles, California  90067.

20         On **October 21, 2016**, I caused to be served the following document(s):

21         **LIQUIDATING TRUSTEE'S MOTION FOR ORDER ESTIMATING CLASS
           CLAIM OF LEILANI ROSS FOR PURPOSES OF ALLOWANCE AND**
22         **DISTRIBUTION; MEMORANDUM OF POINTS AND AUTHORITIES AND
           DECLARATIONS OF RICHARD M KIPPERMAN AND JEFFREY L. KANDEL IN**
23         **SUPPORT THEREOF**

24
   on the parties in this action as follows:
25

26

27

28

DOCS_LA:272096.1 76892/001

☑  BY CM/ECF NOTICE OF ELECTRONIC FILING by causing such document(s) listed above to be served through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CMIECF Users set forth below as identified on the service list obtained from this Court on the Electronic Mail Notice List..

- Jamie Altman jamie.altman@procopio.com, kristina.terlaga@procopio.com;lenore.joseph@procopio.com
- Everett G. Barry ebarry@mulvaneybarry.com, gcurtis@mulvaneybarry.com;ktran@mulvaneybarry.com
- Steven M. Berman SBerman@slk-law.com, sstirling@slk-law.com
- Jess R. Bressi jbressi@mckennalong.com, ksigismondo@mckennalong.com
- Steven K. Brumer sbrumer@brumerlawfirm.com
- Jeffrey D. Cawdrey jcawdrey@gordonrees.com, ebojorquez@gordonrees.com;slemos@gordonrees.com
- William R. Cumming cumming@cummingandassociateslaw.com
- Joseph R. Dunn jrdunn@mintz.com, tlmayo@mintz.com;jadavis@mintz.com;aobrient@mintz.com;dsjohnson@mintz.com;docketing@mintz.com
- Amir Gamliel agamliel@perkinscoie.com
- Thomas B. Gorrill tgorrill@gorillalaw.com
- Christopher V. Hawkins hawkins@sullivanhill.com, vidovich@sullivanhill.com;hill@sullivanhill.com;Iriarte@sullivanhill.com;stein@sullivanhill.com;cruz@sullivanhill.com;millerick@sullivanhill.com;gubba-reiner@sullivanhill.com;ggarcia@sullivanhill.com
- Haeji Hong Haeji.Hong@usdoj.gov, USTP.Region15@usdoj.gov,tiffany.l.carroll@usdoj.gov
- Jeffrey Isaacs jeffrey.isaacs@procopio.com, gpk@procopio.com;kristina.terlaga@procopio.com;lenore.joseph@procopio.com;efile-bank@procopio.com
- Jeffrey Kandel jkandel@pszjlaw.com
- Teddy Kapur tkapur@pszjlaw.com
- Grant C. Keary gck@dlklaw.com
- Dean T. Kirby dkirby@kirbymac.com, jwilson@kirbymac.com;rrobinson@kirbymac.com;Jacquelyn@ecf.inforuptcy.com;hmares@kirbymac.com;fdrummond@kirbymac.com;twright@kirbymac.com
- Andy Kong Kong.Andy@ARENTFOX.COM
- K Kenneth Kotler kotler@kenkotler.com
- Kristin Lamar klamarecf01@gmail.com,NChawlaecf01@gmail.com,IGN@NewChapterLaw.com,ecf@NewChapterLaw.com
- Lynne R. Lasry llasry@sllbv.com
- Paul J Leeds leedsp@higgslaw.com, reisingc@higgslaw.com
- Paul J Leeds leedsp@higgslaw.com, reisingc@higgslaw.com
- Samuel R. Maizel smaizel@pszjlaw.com, mkulick@pszjlaw.com
- Samuel R. Maizel smaizel@pszjlaw.com, mkulick@pszjlaw.com
- Scotta McFarland smcfarland@pszjlaw.com
- Dawn Messick dmessick@foley.com
- Elaine Nguyen Elaine@wsrlaw.net, megan@wsrlaw.net;tdorros@mrllp.com;Blake@lawbl.com
- Elaine Nguyen Elaine@wsrlaw.net, megan@wsrlaw.net;tdorros@mrllp.com;Blake@lawbl.com
- Martin W. Phillips marty.phillips@att.net
- Gerald N. Sims jerrys@psdslaw.com, bonniec@psdslaw.com
- Kelly Ann Mai Khanh Tran ktran@mulvaneybarry.com, lbrayton@mulvaneybarry.com
- Matthew Troy Matthew.Troy@usdoj.gov
- United States Trustee ustp.region15@usdoj.gov
- Stacie Yee stacie.yee@squiresanders.com, Bradley.Cosman@squiresanders.com;derek.judd@squiresanders.com

All other interested parties in this action that are not a registered ECF User are served as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

DOCS_LA:272096.1 76892/001

☑ BY U.S. Mail by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Los Angeles, California addressed as set forth below.

**PLEASE SEE ATTACHED SERVICE LIST.**

☐ BY OVERNIGHT DELIVERY by causing such envelope(s) to be deposited in a box or other facility regularly maintained by Federal Express overnight delivery with fees paid.

☐ BY ELECTRONIC SERVICE by causing document(s) to be electronically served on the interested parties in the above-referenced action. The transmission was reported as complete without error and a copy of the report will be maintained with the document by the sender.

☐ BY FACSIMILE by causing the foregoing document(s) via facsimile transmission. The transmission was reported as complete without error and a copy of the report will be maintained with the document by the sender.

I declare under penalty of perjury that the documents were served by methods indicated above and the foregoing is true and correct.

Executed on <u>October 21, 2016</u>, at Los Angeles, California.

*/s/ Rolanda L. Mori*
Rolanda L. Mori

DOCS_LA:272096.1 76892/001

**Debtor**
San Diego Hospice & Palliative Care
 Corporation
2400 Historic Decatur Rd., #107
Box 123
San Diego CA 92106

**In re San Diego Hospice & Palliative
Care Corporation
Case No. 13-01179 (MM11)
2002 Service List**

Haeji Hong
Office of the US Trustee
402 West Broadway, Suite 600
San Diego, CA 92101

Internal Revenue Service
Insolvency Group 1
880 Front Street
San Diego, CA 92101

Internal Revenue Service
Post Office Box 7346
Philadelphia, PA 19101-7346

**Requests for Special Notice**

Attorneys for Brookwood Investors, LLC
Joseph R. Dunn, Esq.
Mintz Levin Cohn Ferris Glovsky and
 Popeo, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130

John S. Kaplan, Esq.
Perkins Coie LLP
1201 Third Avenue, 48th Floor
Seattle, WA 98101-3099

Jo Anne Bilodeau
7727 Tommy Street, Apt. 21
San Diego, CA  92119

Attorneys for Creditor Emergency and Acute
Care Medical Corporation
Grant C. Keary, Esq.
Dunn, Lee & Keary
26000 Towne Centre Drive, Suite 200
Foothill Ranch, California 92610

Susan Dukes
2120 Estela Drive
El Cajon, CA 92020

Janine Sarti on behalf of Creditor
Palomar Health
Palomar Health Legal Services Dept
15255 Innovation Drive
San Diego, CA 92128

Angela M. Belgrove
Assistant Regional Counsel
Office of the General Counsel
U.S. Dept. of HHS
90 7th Street, Suite 4-500
San Francisco, CA 94103-6705

Seth B. Shapiro, Trial Attorney
U.S. Department of Justice – Civil Dlv.
Commercial Litigation Branch
1100 L Street, NW, Room 10012
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Connecticut General
 Life Insurance Co.
Janet D. Gertz, Esq.
Cooley LLP
4401 Eastgate Mall
San Diego, CA  92121

**Official Committee of Unsecured
Creditors**

Robert Hirsh
Arent Fox
1675 Broadway
New York, NY 10019

Outcome Resources LLC
Attn: Martin McDonough, CEO
2210 Plaza Dr. #300
Rocklin, CA 95765

GlenBrook Skilled Nursing
Attn: Darolyn Jorgensen-Kares
1950 Calle Barcelona
Carlsbad, CA 92009

Departure
427 C Street, Suite 406
San Diego, CA 92101

Brookwood Crossroads Investors, LLC
Attn: Evelyn M. Murphy
72 Cherry Hill Drive
Beverly, MA 01915

Medline Industries, Inc.
Attn: Shane Reed
1 Medline Place
Mundelein, IL 60060

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:272096.1 76892/001

**F 9013-3.1.PROOF.SERVICE**

Gail J. Higgins
Higgins Law Firm
9021 Melrose Avenue, Suite 205
West Hollywood, California  90069
(310) 409-7080 / Fax: (310) 388-1018
ghigginse@aol.com

Gail Higgins
1017 N. La Cienega Blvd., Suite 103
West Hollywood, CA  90069

Blake J. Lindemann
Lindemann Law Firm, APC
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
(310) 279-5269/ Fax: (310) 300-0267
blake@lawbl.com

Daniel J. Weintraub/Elaine V. Nguyen
Weintraub & Selth, APC
11766 Wilshire Boulevard, Suite 1170
Los Angeles, CA 90025
(310) 207-1494/ Fax: (310) 442-0660
dan@wsrlaw.net/Elaine@wsrlaw.net

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.