CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.

Jeffrey L. Kandel (CA Bar No. 115832)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Order Entered on
January 10, 2017
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re.
San Diego Hospice and Palliative Care Corporation

Debtor.

BANKRUPTCY NO. 13-01179-MM11

Date of Hearing: None Required
Time of Hearing:
Name of Judge: Hon. Margaret M. Mann

# ORDER ON MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE LIQUIDATING TRUSTEE, ACE AMERICAN INSURANCE COMPANY AND LANSDOWNE INSURANCE COMPANY, LTD. REGARDING RETURN OF CERTAIN COLLATERAL AND WAIVER OF CLAIMS

**IT IS ORDERED THAT** the relief sought as set forth on the continuation pages attached and numbered two (2) through 2 with exhibits, if any, for a total of 2 pages, is granted. Motion/Application Docket Entry No. 1636.

**COURT MODIFIED**

//
//
//
//
//
//

DATED: January 9, 2017

_/s/ Margaret M Mann_

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the relief
granted by the court.

Submitted by:

PACHULSKI STANG ZIEHL & JONES LLP
(Firm name)

By: /s/ Jeffrey L. Kandel
Attorney for ☒ Movant ☐ Respondent

CSD 1001A
DOCS_LA:303188.1 76892/003

American LegalNet, Inc.
www.USCourtForms.com

CSD 1001A [11/15/04] (Page 2)

ORDER ON **MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE LIQUIDATING TRUSTEE, ACE AMERICAN INSURANCE COMPANY AND LANSDOWNE INSURANCE COMPANY, LTD. REGARDING RETURN OF CERTAIN COLLATERAL AND WAIVER OF CLAIMS**

DEBTOR: San Diego Hospice and Palliative Care Corporation         CASE NO: 13-01179-MM11

---

Upon consideration of the *Motion for Order Approving Settlement Agreement by and Among the Liquidating Trustee, ACE American Insurance Company and Lansdowne Insurance Company, Ltd. Regarding Return of Certain Collateral* [Docket No. 1636] (the "Motion") to approve a settlement by and among Richard M Kipperman, the Liquidating Trustee of the Liquidating Trust of San Diego Hospice & Palliative Care Corporation, debtor in the above-captioned case, ACE American Insurance Company and Lansdowne Insurance Company, Ltd. (with respect to its Separate Account SDHPC), the memorandum of points and authorities and the declaration of the Liquidating Trustee[1] in support thereof, and the record and pleadings on file in this Case; and it appearing that the relief requested in the Motion is in the best interests of the Liquidating Trust, its beneficiaries, and other parties in interest, and notice of the Motion having been sufficient,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted in its entirety.
2. The Settlement Agreement [attached hereto as Exhibit A] is approved in its entirety.
3. The Liquidating Trustee is hereby authorized to perform his obligations under the Motion and the Settlement Agreement including transferring, assigning and conveying absolutely to ACE any and all Credits now or hereafter arising, due or owing.
4. Upon and following the Effective Date, the Liquidating Trustee (on behalf of the Liquidating Trust), the Estate and Lansdowne shall no longer have any right, title or interest whatsoever in the Released Assets.
5. Upon and following the Effective Date, ACE shall no longer have any right, title or interest in the Retained Amount.
6. Subject to and pursuant to the terms of the Settlement Agreement and without further order of the Bankruptcy Court, ACE is hereby authorized and directed to (a) draw on the Letter of Credit in the amount of the LOC Proceeds, (b) retain the LOC Proceeds, (c) return the Letter of Credit (in the amount of the Retained Amount) to Lansdowne, (d) draw against, hold and/or apply the Released Assets and (e) to take other actions contemplated by the Agreement without further order of the Bankruptcy Court.
7. As of the Return Date, Lansdowne shall hold the Letter of Credit and, pursuant to the Termination Agreement, shall distribute the Retained Amount to the Liquidating Trust.
8. The Liquidating Trustee is hereby authorized to draw against the Retained Amount pursuant to the Termination Agreement between the Liquidating Trustee and Lansdowne, hold and/or utilize the Retained Amount and the proceeds thereof and take other actions contemplated by the Agreement without further notice to the ACE Companies or Lansdowne, or order of the Bankruptcy Court.
9. The Stays, if and to the extent applicable, are lifted to permit ACE to perform Claims Administration or participate therein.
10. The releases set forth in paragraphs 15, 16, 17 and 18 of the Agreement are approved and granted in their entirety.
11. Comerica is hereby authorized to terminate the Letter of Credit after it honors all draw requests contemplated by the Agreement.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

CSD 1001A
DOCS_LA:303188.1 76892/003

American LegalNet, Inc.
www.USCourtForms.com

Signed by Judge Margaret M. Mann January 9, 2017

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of the 30th day of September, 2016 by and among Richard M Kipperman, the Liquidating Trustee (the "Liquidating Trustee") of the Liquidating Trust of San Diego Hospice & Palliative Care Corporation (the "Debtor"), ACE American Insurance Company[1] ("ACE" and together with its affiliates and successors, the "ACE Companies"), and Lansdowne Insurance Company, Ltd. (with respect to its Separate Account SDHPC,[2] "Lansdowne"). The Liquidating Trustee, ACE and Lansdowne are referred to herein individually, as a "Party" and collectively, as the "Parties."

## RECITALS

**WHEREAS**, on February 4, 2013 (the "Petition Date"), the Debtor filed its voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of California (the "Court") commencing Case No. 13-01179-sMM11 (the "Bankruptcy Case");

**WHEREAS**, prior to the Petition Date, ACE issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtor (or its predecessor) as named insured;

**WHEREAS**, prior to the Petition Date, ACE and the Debtor also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Program Agreements");

**WHEREAS**, pursuant to the Policies and Program Agreements (collectively, the "ACE Program"), ACE provides, *inter alia*, certain workers' compensation and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein; and the Debtor, as named insured, is required, *inter alia*, to pay and/or reimburse to ACE certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Program (hereinafter defined) (the "Obligations") which are to be secured by certain collateral;

---

[1] For the avoidance of doubt, the term "ACE" (and thus, the terms "ACE Program" and "Proof of Claim") shall be limited to each as each existed prior to January 14, 2016 (the date on which ACE and its affiliates completed its acquisition of the Chubb group of insurance companies). Accordingly, the releases granted herein shall not apply to any policies issued and agreements entered into (and any obligations owed in relation to such policies and agreements) by any of the Chubb group of insurance companies prior to January 14, 2016. Similarly, the terms, "Obligations" and "Letter of Credit" shall relate to the ACE Program as the ACE Program existed prior to January 14, 2016.

[2] For the avoidance of doubt, the term "Lansdowne" includes "Lansdowne Insurance Company, Ltd. in relation to its Separate Account Lansdowne-SDHPC", as Applicant under Letter of Credit No. 594349-01, with date of issue October 20, 2004.

DOCS_LA:298160.1
DOCS_LA:298160.9

EXHIBIT A

WHEREAS, the Obligations do not include any self-insured retention ("SIR") for which the named insured has responsibility;

WHEREAS, as of the date of this Agreement, the Obligations are secured by Letter of Credit No. 594349-01 in the outstanding amount of $2,060,785.87 as of September 7, 2016 issued by Comerica Bank (the "LOC Issuer") and the proceeds thereof (as amended, confirmed, supplemented or replaced, the "Letter of Credit");

WHEREAS, the applicant for the Letter of Credit is Lansdowne;

WHEREAS, pursuant to Lansdowne Deductible Reimbursement Policy No. DRP/2012/027 and substantively similar deductible reimbursement policies issued by Lansdowne for other years (collectively, the "Reimbursement Policy") Lansdowne provides reimbursement coverage for deductible payments due from the Debtor for obligations relating to ACE under the terms of the Policies;

WHEREAS, ACE, on behalf of the ACE Companies, filed a proof of claim against the Debtor alleging that it holds claims (the "Proof of Claim") against the Debtor arising under the ACE Program;

WHEREAS, on September 23, 2013, the Court entered an order (the "Confirmation Order") confirming the First Amended Liquidating Plan for San Diego Hospice and Palliative Care Corporation (June 24, 2013), as Modified on August 27, 2013 and September 18, 2013, Jointly Proposed by the Debtor and the Official Committee of Unsecured Creditors (the "Plan");

WHEREAS, pursuant to the Confirmation and the Plan, the Debtor transferred to the Liquidating Trust all of the Debtor's right, title and interest in and to the remaining Debtor's Assets (as defined in the Plan) free and clear of all claims, liens encumbrances, charges and all other interests;

WHEREAS, as of the Effective Date (as defined in the Plan) of the Plan, the Liquidating Trustee was appointed as the representative of the Estate (as defined in the Plan) and succeeded to all of the rights and powers of the Debtor and the Estate with respect to all Assets transferred to the Liquidating Trust;

WHEREAS, pursuant to various stipulations and orders of the Court, the deadline for the Liquidating Trust to object to the Proof of Claim was extended through September 15, 2016; and

WHEREAS, the Liquidating Trustee, Lansdowne and ACE are entering into this Settlement Agreement, and the Liquidating Trustee and Lansdowne are entering into a separate Termination and Release: Subscription & Shareholder Agreement (hereinafter the "Termination Agreement"), to settle and resolve any and all claims, disputes and issues with respect to the matters addressed herein between the Estate (through the Liquidating Trustee as its representative), Lansdowne and ACE.

NOW, THEREFORE, in consideration of the foregoing, the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are

DOCS_LA:298160.1

DOCS_LA:298160.9

hereby acknowledged, and intending to be legally bound hereby, the Parties enter into this Agreement and agree to be bound by its terms.

## AGREEMENT

1. <u>Incorporation</u>.  The Recitals set forth above are incorporated herein as though fully set forth at length.

2. <u>The Settlement.</u>

    (a) The monetary amount of the settlement due to ACE (the "<u>Settlement Amount</u>") shall consist of the following:

    (i) the difference between the balance of the Letter of Credit on the Draw Date (as defined herein) and $625,000.00 (the "<u>Retained Amount</u>") [such difference shall be referred to herein as the "LOC Proceeds"] and

    (ii) the value of any and all credits, adjustments, return premium, funds and other amounts of any kind (collectively, the "<u>Credits</u>") that are or would otherwise be due from ACE to the Debtor or the Liquidating Trustee.

    (b) The Settlement Amount shall be due and/or transferred to ACE as follows:

    (i) On the Effective Date (as defined herein) (or as soon thereafter as practicable for ACE in their sole discretion) (the "<u>Draw Date</u>"), ACE shall draw on the Letter of Credit in the amount of the LOC Proceeds as calculated under Section 2(a)(i) above and retain the LOC Proceeds; and

    (ii) On the Effective Date, the Liquidating Trustee shall transfer, assign, and convey absolutely to ACE any and all Credits now or hereafter arising, due or owing.

    (c) On the Effective Date (as defined herein) (or as soon as practicable after the Draw Date, the "<u>Return Date</u>"), ACE shall return to Lansdowne the Letter of Credit (the balance of which shall be equal to the Retained Amount, *i.e.*, $625,000, in accordance with sections 2(a)(i) and 2(b)(i), above) free and clear from any claims of ACE, to be distributed pursuant to the Termination Agreement.

    (d) As of the Return Date, Lansdowne shall hold the Letter of Credit and pursuant to the Termination Agreement, shall distribute the Retained Amount to the Liquidating Trust.

3

3.  Records To Be Transferred From The Liquidating Trustee to ACE.

   (a)  Claim Information. Within thirty (30) calendar days of the Effective Date, the Liquidating Trustee shall use reasonable efforts to provide ACE with the following (collectively, the "Claim Information") (1) to the extent that such Claim Information is either in (A) the possession, custody or control of the Liquidating Trustee and/or (B) in the possession of third parties, the Liquidating Trustee shall authorize and direct the applicable third parties to provide such Claim Information to ACE and (2) in whatever form such Claim Information currently exists. Claim Information includes all files and other documentation relating to the claims listed on the most recent monthly claims report generated by TRISTAR Risk Management (the "Claim List"). By way of example and not limitation, the Liquidating Trustee shall provide ACE with all pleadings, correspondence, expense and indemnity payment information, and the identity of and contact information for defense counsel

   (b)  Excess or other coverage. Within twenty (20) days of the Effective Date, the Liquidating Trustee shall provide ACE with a list of excess or other coverage that was in place for or during the policy years during which ACE provided coverage, of which the Liquidating Trustee has actual knowledge upon a reasonable review of the Debtor's records. The provision of this list shall not impose upon ACE any obligation to or with respect to carriers that may have issued excess or other coverage.

4.  Liquidating Trustee Divested of All Right, Title and Interest in the Released Assets. On the Effective Date, the Liquidating Trustee does hereby forever waive and release all of its and the Estate's right, title and interest in and to the LOC Proceeds, the Credits and all proceeds of the foregoing (collectively, the "Released Assets"). For the avoidance of doubt, upon and following the Effective Date, the Liquidating Trustee and the Estate shall have no right, title or interest whatsoever in the Released Assets.

5.  Lansdowne Divested of All Right, Title and Interest in the Released Assets. On the Effective Date, Lansdowne does hereby forever waive and release all of its right, title and interest in and to the Released Assets. For the avoidance of doubt, upon and following the Effective Date, Lansdowne shall have no right, title or interest whatsoever in the Released Assets.

6.  ACE Companies' Divested of All Right, Title and Interest in the Retained Amount. On the Effective Date, ACE Companies do hereby forever waive and release all of its right, title and interest in and to the Retained Amount. For the avoidance of doubt, upon and following the Effective Date, ACE Companies, its reinsurers and retrocessionaires, and all their heirs and assigns shall have no right, title or interest whatsoever in the Retained Amount.

DOCS_LA:298160.1

DOCS_LA:298160.9

7. <u>Liquidating Trustee's Right, Title and Interest in the Retained Amount</u>. Upon and following the Effective Date, the Liquidating Trustee shall have all right, title and interest in the Retained Amount as set forth in the Termination Agreement. For the avoidance of doubt, upon and following the Effective Date and when permitted by the Termination Agreement, (i) the Liquidating Trustee shall have the right to draw against the Retained Amount, hold and/or utilize the Retained Amount and the proceeds thereof and take other actions without further notice to the ACE Companies or order of the Bankruptcy Court and (ii) for these purposes, any injunction or release provision in the Plan, Confirmation Order or other document (collectively, the "<u>Stays</u>"), if and to the extent applicable, shall be lifted without further order of the Bankruptcy Court.

8. <u>ACE Companies' Right, Title and Interest in the Released Assets</u>. Upon and following the Effective Date, ACE shall have all right, title and interest in the Released Assets. For the avoidance of doubt, upon and following the Effective Date, (i) ACE shall have the right to draw against the Released Assets (including, without limitation, the LOC Proceeds), hold and/or apply the Released Assets and the proceeds thereof and take other actions without further notice to the Liquidating Trustee, Lansdowne, any other party or order of the Bankruptcy Court and (ii) for these purposes, the Stays, if and to the extent applicable, shall be lifted without further order of the Bankruptcy Court.

9. <u>Claims Handling.</u>

(a) <u>The ACE Companies' Right To Handle Claims</u>. Upon and following the Effective Date and subject to the Reservation of Rights (as defined herein), (i) ACE shall have the right to select defense counsel and to handle, administer, adjust, settle and/or pay any claim covered under the Policies (each, an "<u>Insured Claim</u>") and the defense costs and other costs associated with the administration and handling of any such Insured Claim in ACE's sole discretion (collectively, "<u>Claim Administration</u>"), (ii) the Stays, to the extent applicable, shall be lifted to permit ACE to perform Claim Administration, and (iii) the Liquidating Trustee waives any right to perform Claims Administration or to participate therein.

(b) <u>The Liquidating Trustee Shall Have No Claims Handling Duties or Obligations</u>. ACE acknowledges that the Trustee shall have no claims handling duties or obligations with respect to any Insured Claim, and is absolved from any further duties and obligations regarding the ACE Program, except with respect to Records to be Transferred (see Section 3, supra). ACE shall be responsible for any and all financial or other obligations incurred at ACE's direction by TRISTAR Risk Management or other third party administrator for Claims Administration related to the ACE Program, whether incurred prior to or following the Effective Date. Nothing in this Agreement shall make ACE liable for any obligations of the Liquidating Trustee to TRISTAR Risk Management or any other third party administrator for Claims Administration.

5

(c) <u>Failure to Pay Deductible</u>. Without altering or waiving any terms and conditions of the ACE Program, ACE hereby agrees that it will not assert the Debtor's or Lansdowne's failure to pay amounts within the deductible as a defense to coverage for claims that are otherwise covered by the ACE Program.

(d) <u>No Modification of ACE Program</u>. Except as specifically set forth herein, nothing herein alters, amends or otherwise modifies the terms and conditions of (and any coverage provided by) the ACE Program.

10. <u>Prior to the Effective Date</u>. Without altering any of the other terms of this Settlement Agreement, ACE has the right to draw upon the Letter of Credit prior to the Effective Date for amounts due and owing to ACE.

11. <u>Withdrawal of the Proof of Claim</u>. On the Effective Date, the Proof of Claim shall be deemed withdrawn with prejudice without further action required by either of ACE or the Liquidating Trustee.

12. <u>Bankruptcy Court Approval</u>. The Liquidating Trustee shall prepare a motion (the "<u>9019 Motion</u>") seeking approval of this Agreement as executed by the Parties pursuant to Federal Rule of Bankruptcy Procedure 9019. The 9019 Motion and accompanying proposed form of order shall be subject to review and approval by ACE in all respects. The Liquidating Trustee shall provide a draft of the 9019 Motion and proposed form of order to counsel for ACE before each is filed with the Bankruptcy Court.

13. <u>Bankruptcy Court Order</u>. The order approving the 9019 Motion (the "<u>Bankruptcy Court Order</u>") shall, *inter alia*,: (i) be in form and substance acceptable to ACE in all reasonable respects, (ii) approve this Agreement and authorize the Liquidating Trustee to perform his obligations hereunder, (iii) provide that the Liquidating Trustee no longer has any right, title or interest in the Released Assets or the proceeds thereof, (iv) provide that ACE no longer has any right, title or interest in the Retained Amount or the proceeds thereof, (v) authorize and direct ACE to draw upon the Released Assets and the Retained Amount, hold the Released Assets, transfer the Retained Amount to the Trustee and take other actions without further order of the Bankruptcy Court, (vi) authorize the Liquidating Trustee to draw against the Retained Amount, hold and/or utilize the Retained Amount and the proceeds thereof and take other actions without further notice to the ACE Companies or order of the Bankruptcy Court, (vii) provide that the Stays, to the extent applicable, are lifted to permit ACE to handle, administer, adjust, settle and/or pay Insured Claims, (viii) restate and specifically grant the releases set forth in paragraphs 15, 16, 17 and 18 herein (collectively, the "<u>Releases</u>"), (ix) authorize Comerica to terminate the Letter of Credit after it honors all draw requests contemplated by this Agreement; and (x) have become final, without any appeal or modification thereof, all applicable appeal periods shall have expired and no appeals shall be pending (the "<u>Final Order</u>"). The Parties may agree in writing to waive the inclusion of one or more of the above provisions in the Bankruptcy Court Order.

14. <u>Effective Date</u>. The first business day after the Bankruptcy Court Order becomes the Final Order and this Agreement has been signed by the Parties shall be the "<u>Effective Date</u>"

DOCS_LA:298160.1

DOCS_LA:298160.9

of this Agreement. The Effective Date shall occur no later than November 30, 2016. This Agreement is null and void if the Effective Date does not occur on or prior to November 30, 2016; provided, however, that the Parties may agree in writing to an extension of this deadline.

15. <u>Release by the Liquidating Trustee</u>. In consideration of the promises contained herein, upon the Effective Date, the Liquidating Trustee, on behalf of itself and all parties claiming by, through or under it, the Estate, and the agents, employees, representatives, officers, attorneys, shareholders, directors, successors, assigns, trustees and predecessors in interest of each of the foregoing (collectively, the "<u>Estate Entities</u>") hereby waives, releases, acquits, and forever discharges ACE and each of its respective agents, employees, representatives, officers, attorneys, shareholders, directors, parents, subsidiary corporations, affiliates, successors, assigns, trustees and predecessors in interest (collectively, the "<u>ACE Releasees</u>"), and Lansdowne and each of its respective agents, employees, representatives, officers, attorneys, shareholders, directors, parents, subsidiary corporations, affiliates, successors, assigns, trustees and predecessors in interest (collectively, the "<u>Lansdowne Releasees</u>"), from any and all claims (including, but not limited to, any and all claims pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees or any other agreed fees or agreed expenses, either asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which exist or may exist, that the Estate Entities may have against any or all of the ACE Releasees and the Lansdowne Releasees from the beginning of time through the Effective Date arising out of or related to the ACE Program, the Obligations, the Letter of Credit, the Released Assets, the Retained Amount or the Proof of Claim; <u>provided, however</u>, that the release set forth in this paragraph shall not apply to the obligations expressly contained in this Agreement.

16. <u>Release by ACE</u>. In consideration of promises contained herein, upon the Effective Date, ACE, on behalf of itself and all parties claiming by, through, or under it, waives, releases, acquits, and forever discharges each of the Estate Entities and the Lansdowne Releasees from any and all claims (including, but not limited to, any and all claims pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, or any other agreed fees or agreed expenses, either asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which exist or may exist, that ACE may have against any or all of the Estate Entities or the Lansdowne Releasees from the beginning of time through the Effective Date arising out of or related to the ACE Program, the Obligations, the Letter of Credit, the Released Assets, the Retained Amount, or the Proof of Claim; <u>provided, however</u>, that the release set forth in this paragraph shall not apply to the obligations expressly contained in this Agreement.

17. <u>Release by Lansdowne</u>. In consideration of promises contained herein, upon the Effective Date, Lansdowne, on behalf of itself and all parties claiming by, through, or under it, waives, releases, acquits, and forever discharges each of the Estate Entities and ACE Releasees from any and all claims (including, but not limited to, any and all claims pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, or any other agreed fees or agreed expenses, either asserted or unasserted, known or unknown,

fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which exist or may exist, that Lansdowne may have against any or all of the Estate Entities or ACE Releasees from the beginning of time through the Effective Date arising out of or related to the ACE Program, the Obligations, the Letter of Credit, the Released Assets, the Retained Amount, or the Proof of Claim; <u>provided, however</u>, that the release set forth in this paragraph shall not apply to the obligations expressly contained in this Agreement.

18. <u>Section 1542 Release</u>. With respect to the matters released herein, the Parties expressly waive any and all rights under § 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

19. <u>Covenant Not to Sue</u>. The Estate Entities covenant and agree not to commence or prosecute any action or proceeding against the ACE Releasees or the Lansdowne Releasees arising out of or relating to the claims released hereby. The ACE Releasees covenant and agree not to commence or prosecute any action or proceeding against the Estate Entities or the Lansdowne Releasees arising out of or relating to the claims released hereby. The Lansdowne Releasees covenant and agree not to commence or prosecute any action or proceeding against the ACE Releasees or the Estate Entities arising out of or relating to the claims released hereby.

20. <u>Further Cooperation</u>. Each Party to this Agreement shall execute all instruments and documents and take all actions, whether at or after the Effective Date, as either may reasonably request from time to time or as may be reasonably required to effectuate this Agreement, including without limitation with respect to the transfer or release of the Retained Amount to the Liquidating Trustee, the termination of the Reimbursement Policy or the termination of the Estate Entities' relationship with Lansdowne; provided that no such cooperation shall create any material obligation or material liability of such party not otherwise created by this Agreement.

21. <u>Reservation of Rights</u>. Nothing in this Agreement (i) expands, contracts or otherwise alters the coverage provided by the ACE Program, the rights and obligations of ACE thereunder or the coverage provided thereunder including, but not limited to, provisions in the ACE Program stating that ACE shall not have any duty to defend or pay allocated loss adjustment expenses; (ii) permits the holder of an Insured Claim to recover twice or more from ACE Companies and again from any other person or entity, including the Debtor, (iii) creates or permits a direct right of action by any holder of an Insured Claim against ACE unless such direct right exists in the absence of this Agreement; (iv) precludes or limits, in any way, the rights of ACE to contest and/or litigate with any holder of an Insured Claim the existence, primacy and/or scope of available coverage under any alleged applicable policy; (v) is a determination as to coverage under the ACE Program or (vi) relieves any holder of an Insured Claim from any obligation to file a proof of claim. This paragraph shall be referred to as the "<u>Reservation of Rights</u>."

8

DOCS_LA:298160.1
DOCS_LA:298160.9

22. <u>Entire Agreement.</u> To the extent of any inconsistency between (i) this Agreement and the Final Order approving this Agreement and (ii) any other document, agreement or order (including, but not limited to, the Plan, Disclosure Statement or confirmation order), the terms of this Agreement and the Final Order approving the Agreement shall control. This Agreement contains the entire understanding of the Parties with respect to the subject matter hereof, and supersedes all prior agreements and understandings between the Parties with respect to the subject matter hereof.

23. <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

24. <u>Jurisdiction.</u> Any dispute concerning the construction, interpretation and enforcement of the terms of this Agreement shall be subject to the jurisdiction of the Bankruptcy Court.

25. <u>Construction.</u> For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective Parties and their counsel, and any rule of construction of contracts that would otherwise provide ambiguities are to be construed against the drafting party shall not be applied against any person.

26. <u>Successors and Assigns.</u> This Agreement is binding upon, and shall inure to the benefit of, the Parties, and their respective administrators, successors and assigns. However, except as expressly stated herein nothing herein is intended to benefit any third party.

27. <u>Representations and Warranties.</u> Each Party hereto represents and warrants that it has carefully read this Agreement in its entirety; that it has had an adequate opportunity to consider it and to consult with any advisor of its choice about it; that it understands all of its terms; that it has consulted with independent counsel of its choice, who answered to its satisfaction all questions that it had regarding this Agreement; that its undersigned representative is duly authorized to enter into this Agreement on its behalf; that it voluntarily assents to all the terms and conditions contained herein; that by signing this Agreement it is bound by the terms and conditions contained herein; and that it is signing this Agreement voluntarily and of its own free will.

28. <u>Additional Representations and Warranties</u>.

(a) <u>Released Claims</u>. The Liquidating Trustee, ACE, and Lansdowne each represents and warrants that it has not assigned, transferred or conveyed or purported to assign, transfer or convey, and will not assign, transfer or convey any claim, cause of action, right or interest in the same to any person or entity who has not, by his or its signature on this Agreement, likewise released same. Without limiting the foregoing, the Liquidating Trustee specifically represents and warrants that it is the representative of the Debtor's Estate with respect to the matters addressed in this Agreement including, but not limited to, the Letter of Credit, the LOC

9

Proceeds, the Credits, the Released Assets, Claims Administration and the Releases.

(b)  Claim List.  The Liquidating Trustee represents and warrants to ACE that he has no actual knowledge, upon a reasonable review of the Debtor's records, of any formal or informal claims relating to the ACE Program other than those included in the Claim List.

(c)  Credits.  ACE represents and warrants to the Liquidating Trustee that to the best of its actual knowledge, no Credits are currently due from ACE to the Debtor or the Liquidating Trustee.

(d)  Termination Agreement.  The Liquidating Trustee and Lansdowne each represent and warrant that the Termination Agreement does not in any way modify, alter or otherwise affect the rights and obligations of ACE under, or the terms of, this Agreement (including, but not limited to, the releases set forth herein) or the ACE Program.

29.  Costs and Expenses.  Each Party agrees to be responsible for and to bear its own costs, expenses and attorneys' fees incurred in connection with the Agreement and the negotiations related to and the preparation and performance of this Agreement, and not to seek from each other reimbursement of any such costs, expenses and attorneys' fees.

30.  Notices.  All notices, requests, waivers, consents and other communications hereunder shall be in writing and shall be mailed first class certified mail or by nationally recognized overnight courier service, or by personal delivery, with postage or other applicable delivery fees prepaid and addressed as follows:

If to ACE:

Pamela Bachstadt
Assistant Vice President, Chubb Credit Management
436 Walnut St.
Philadelphia, PA 19106

and

Wendy M. Simkulak, Esquire
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19103
Tel: 215-979-1547

If to the Liquidating Trustee:

Richard M Kipperman
c/o Corporate Management, Inc.

Signed by Judge Margaret M. Mann January 9, 2017

       P.O. Box 3010
       La Mesa, CA 91944-3010
       Tel: 619/668-4500

  and

       Jeffrey L. Kandel
       Pachulski Stang Ziehl & Jones LLP
       10100 Santa Monica Blvd., 13th Floor
       Los Angeles, CA 90067
       Tel: 310/277-6910

       <u>If to Lansdowne</u>:
       Lansdowne Insurance Company, Ltd.
         c/o Jeffrey L. De Silva, Vice President
       CT Insurance Management (Bermuda) Ltd.
       Charles Taylor plc
       Swan Building, 2nd Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
       P.O. Box HM 2904, Hamilton HM LX, Bermuda
       T: 441 278 7762

    31.    <u>Headings</u>. The underlined headings of the paragraphs contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

    32.    <u>Governing Law</u>. To the extent not subject to federal law, this Agreement shall be construed, and the rights and obligations of the Parties hereunder determined, in accordance with the law of the Commonwealth of Pennsylvania.

    33.    <u>No Amendment or Modification</u>. It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect whatsoever with the sole exception of by a writing duly executed by authorized representatives of each of the Parties, and the Parties further acknowledge and agree that they will make no claim at any time or place that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever. No failure on the part of any Party to this Agreement to exercise, and no delay on its part in exercising, any right or remedy under this Agreement will operate as a waiver thereof, nor will any single or partial exercise of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy.

    34.    <u>No Admission</u>. The Parties acknowledge and agree that this Agreement is being entered into for the purpose of avoiding the expense, delay and uncertainty of litigation and nothing contained herein shall constitute, be introduced, treated, deemed or otherwise interpreted or construed as (a) an admission, waiver, evidence or concession by any of the Parties hereto of any fact, liability or wrongdoing, or (b) evidence in any judicial or arbitration proceeding, except to enforce or defend the terms herein.

DOCS_LA:298160.1

DOCS_LA:298160.9

35. <u>Non-Contravention</u>. Each Party represents and warrants to the other that the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated thereby will not contravene such Party's organizational documents and will not conflict with or result in (i) a breach of or default under any agreement or order applicable to such Party, or (ii) a breach by such Party of any applicable law.

36. <u>Survival</u>. The representations, warranties, covenants and other provisions set forth herein shall survive the execution of this Agreement and the effectiveness of the releases granted hereunder.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year first above written.

ACE AMERICAN INSURANCE COMPANY

By: *[signature]*
Name: Pamela Bachstadt
Title:  Assistant Vice President,
        Chubb Credit Management

THE LIQUIDATING TRUSTEE

By: *[signature]*
Name: Richard M Kipperman

LANSDOWNE INSURANCE COMPANY, LTD.
With respect to its Separate Account SDHPC

By: *[signature]*
Name: William Wood
Title: Director

12

Signed by Judge Margaret M. Mann January 9, 2017

# ADDENDUM TO SETTLEMENT AGREEMENT

This *Addendum to Settlement Agreement* (the "Addendum") is attached to, forms a part of and is intended to amend that certain *Settlement Agreement* (the "Agreement") entered into as of the 30th day of September, 2016 by and among Richard M Kipperman, the Liquidating Trustee (the "Liquidating Trustee") of the Liquidating Trust of San Diego Hospice & Palliative Care Corporation (the "Debtor"), ACE American Insurance Company[1] ("ACE" and together with its affiliates and successors, the "ACE Companies"), and Lansdowne Insurance Company, Ltd. (with respect to its Separate Account SDHPC,[2] "Lansdowne"). The Liquidating Trustee, ACE and Lansdowne are referred to herein as the "Parties."

    1.    **AMENDED PARAGRAPH 13.** Paragraph 13 of the Agreement is hereby deleted and replaced in its entirety by the following:

    Bankruptcy Court Order. The order approving the 9019 Motion (the "Bankruptcy Court Order") shall, inter alia,: (i) be in form and substance acceptable to ACE in all reasonable respects, (ii) approve this Agreement and authorize the Liquidating Trustee to perform his obligations hereunder, (iii) provide that the Liquidating Trustee, the Estate and Lansdowne no longer have any right, title or interest in the Released Assets, (iv) provide that ACE no longer has any right, title or interest in the Retained Amount, (v) authorize and direct ACE to draw upon the Released Assets, hold the Released Assets and take other actions with respect to the Released Assets without further order of the Bankruptcy Court, (vi) authorize the Liquidating Trustee to draw against the Retained Amount, hold and/or utilize the Retained Amount and take other actions with respect to the Retained Amount in accordance with the Termination Agreement between the Liquidating Trustee and Lansdowne, (vii) provide that the Stays, to the extent applicable, are lifted to permit ACE to perform Claims Administration, (viii) specifically grant the releases set forth in paragraphs 15, 16, 17 and 18 herein (collectively, the "Releases"), (ix) authorize Comerica to terminate the Letter of Credit after it honors all draw requests contemplated by this Agreement; and (x) have become final, without any appeal or modification thereof, when all applicable appeal periods shall have expired and no appeals shall be pending (the "Final Order"). The Parties may agree in writing to waive the inclusion of one or more of the above provisions in the Bankruptcy Court Order.

    2.    **EFFECT OF ADDENDUM.** To the extent of any inconsistency between the terms and provisions of this Addendum and those of the Agreement, the terms and provisions of this Addendum shall govern and control. Except to that extent, the Agreement and its terms and provisions shall be unchanged hereby.

---

[1] For the avoidance of doubt, the term "ACE" shall be limited as it existed prior to January 14, 2016 (the date on which ACE and its affiliates completed its acquisition of the Chubb group of insurance companies).

[2] For the avoidance of doubt, the term "Lansdowne" includes "Lansdowne Insurance Company, Ltd. in relation to its Separate Account Lansdowne-SDHPC", as Applicant under Letter of Credit No. 594349-01, with date of issue October 20, 2004.

Page 1 of 1

DOCS_LA:302351.1 76892/003

IN WITNESS WHEREOF, the Parties have executed this Addendum as of November 16, 2016.

ACE AMERICAN INSURANCE COMPANY

By: *[signature]*
Name: Pamela Bachstadt
Title: Assistant Vice President,
Chubb Credit Management

THE LIQUIDATING TRUSTEE

By: *[signature]*
Name: Richard M Kipperman

LANSDOWNE INSURANCE COMPANY, LTD.
With respect to its Separate Account SDHPC

By: *[signature]*
Name: William Wood
Title: Director

Page 2 of 2

DOCS_LA:302351.1 76892/003